## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-03417-WJM

REBECCA BRIGHAM,

      Plaintiff,

v.

FRONTIER AIRLINES, INC.,

      Defendant.

---

## DEFENDANT FRONTIER AIRLINES, INC.'S MOTION FOR SUMMARY JUDGMENT

---

Defendant Frontier Airlines, Inc. ("Defendant" or "Frontier"), respectfully submits this Motion for Summary Judgment, stating as follows:

### I.   <u>INTRODUCTION</u>

In this disability discrimination case, former flight attendant and recovering alcoholic Rebecca Brigham ("Plaintiff" or "Ms. Brigham") claims that Frontier was required as a reasonable accommodation to excuse her from the seniority bidding requirements of the collective bargaining agreement between Frontier and the flight attendants' union, so that she could avoid all flights with layovers (which she worried hypothetically would jeopardize her sobriety). Short of that, Ms. Brigham claims that Frontier was required to create light-duty work for her on the ground. Under well-established precedent, Ms. Brigham's requests were not reasonable accommodation requests under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, *et seq.* (the "ADA"), and Frontier was well within its legal rights to terminate her employment based on her extensive attendance infractions. Ms. Brigham's claims fail as a matter of law.

At the outset, Ms. Brigham's own unequivocal deposition testimony demonstrates that her alcoholism has not limited her life activities at all, much less substantially, and never impacted her ability to do her job as a flight attendant.  That fact alone is fatal to her claims, given that mere status as an alcoholic or recovering alcoholic does not *per se* render Ms. Brigham a qualified individual with a disability for purposes of protection under the ADA as a matter of law.

Further, according to Ms. Brigham herself, she could not perform the essential functions of her job as a flight attendant with or without an accommodation. It is undisputed that covering flights with layovers was an essential part of Ms. Brigham's job as a flight attendant. Ms. Brigham, however, insisted and continues to insist that she could not cover flights with layovers because they jeopardized her sobriety. Therefore, the accommodation Ms. Brigham sought would not have enabled Ms. Brigham to do her job as a flight attendant; it would have *removed* an essential function of the job. Frontier was not required to fundamentally alter Ms. Brigham's position as a flight attendant as a matter of law. In addition, it is undisputed that regular attendance and obeying Frontier's related policies and procedures regarding attendance was another essential function of Ms. Brigham's flight attendant position. Therefore, the accommodation Ms. Brigham sought— permission not to show up for scheduled flights with layovers—would not have enabled Ms. Brigham to do her job as a flight attendant either, but rather removed yet another essential function.

Even if Ms. Brigham could demonstrate that she was a qualified individual with a disability in that she could perform the essential functions of the flight attendant position with or without an accommodation, Ms. Brigham lost that status and disqualified herself from the protection offered by the ADA when she rejected the reasonable alternative accommodations Ms. Brigham admits Frontier proposed, including continuous leave, increasing her Intermittent FMLA Leave, and/or

transferring internally within the company to an open, vacant position for which she was minimally qualified.

Moreover, in addition to eliminating fundamental elements of Ms. Brigham's job as a flight attendant, the primary accommodation Ms. Brigham requested was also unreasonable and therefore, not required under the ADA, because it would have sacrificed the bona fide seniority rights of other flight attendants as set forth in the collective bargaining agreement between flight attendants and Frontier.

Finally, the evidence overwhelmingly demonstrates that Frontier terminated Ms. Brigham's employment because she violated its attendance policies and related protocols—a legitimate, non-discriminatory and non-retaliatory reason—and there is simply no evidence to suggest this reason was mere pretext for discrimination or retaliation. Ms. Brigham does not dispute that she was repeatedly warned regarding her attendance issues, that ultimately, her unexcused absences exceeded the number Frontier allowed under its attendance policy, and that she failed to abide by the company's protocols for calling out, warranting her termination pursuant to the express terms of the applicable policies.

Ms. Brigham also does not dispute that Frontier had allowed her to exceed her Intermittent FMLA Leave without penalizing her and had reminded her yet again that she could apply for a continuous leave, additional Intermittent FMLA Leave, and/or another position within the company just weeks prior to her refusal to show up for a scheduled flight with layovers and failure to follow the company's call out procedures, leading to the termination of her employment. There is no evidence that Frontier treated similarly situated flight attendants with similar violations of its attendance policies more favorably than Ms. Brigham or has ever offered the accommodation Ms. Brigham requested to any other active flight attendant.

For these reasons and those set forth below, Frontier should be granted summary judgment on each of the claims asserted in Ms. Brigham's Complaint and Jury Demand [Dkt. No. 1] ("the Complaint").

## II.   MOVANT'S STATEMENT OF MATERIAL FACTS

### A.   FRONTIER FLIGHT ATTENDANTS

1.     Frontier flight attendants must be willing "to work flexible hours/schedules including nights, weekends and holidays," including layovers. *See* Declaration of Gerardo Arellano, attached as Exhibit A at ¶ 5; Excerpts from Pl. Dep. Tr., attached as Exhibit B at 118:10-18.

2.     During Plaintiff's employment with Frontier, flight schedules for active flight attendants were determined by a bidding process based upon seniority as set forth in the flight attendants' collective bargaining agreement with Frontier (the "CBA"), which required all active Frontier flight attendants to bid for the flights posted and accumulate a minimum of 60 credit hours. *See* Ex. A (Arellano Decl.) at ¶ 35; *see also,* Ex. B (Pl.'s Dep. Tr.) at 79:20-80:11.

3.     After the bidding process closed, awards were determined by seniority such that if multiple flight attendants bid for the same trip, the flight attendant with the greatest seniority was awarded the trip. *See* Ex. A (Arellano Decl.) at ¶ 36.

4.     After awards were determined, flight attendants had the ability to add, drop, and/or swap their scheduled flights on a first-come first-served basis using flights available in "Open Time," but were prohibited from dropping below forty-five (45) credit hours. *See* Ex. A (Arellano Decl.) at ¶ 37.

5.     Pursuant to the CBA, flight attendants were considered inactive and therefore, ineligible to bid if they have been granted Frontier-approved continuous leaves such as Leave of

Absence ("LOA"), Medical Leave ("MED"), Family Medical Leave Act ("FMLA") Leave, On the Job Injury ("OJI") Leave, etc. *See* Ex. A (Arellano Decl.), Ex. 3 (CBA) at FRONTIER AIRLINES (R. BRIGHAM) – 0000857.

6.      If a flight attendant returning from a Frontier-approved leave missed the above-described bid period, the flight attendant was permitted, for the remainder of that month, to pick up Open Time to build a schedule and/or be assigned Reserve days. *See* Ex. A (Arellano Decl.), Ex. 3 (CBA) at FRONTIER AIRLINES (R. BRIGHAM) – 0000868.

7.      Flight attendants returning from continuous leaves of absence and therefore, inactive during the bidding period, were the only Frontier flight attendants who were excused from the bidding process and permitted for the remainder of that month, to pick up Open Time to build a schedule. *See* Ex. A (Arellano Decl.), Ex. 3 (CBA) at FRONTIER AIRLINES (R. BRIGHAM) – 0000868.

***Attendance Policies Applicable to Flight Attendants***

8.      In addition to having the ability to work a full and flexible schedule determined by the CBA's seniority-based bidding process, Frontier flight attendants were also required to demonstrate their dependability by maintaining regular attendance. *See* Ex. A (Arellano Decl.) at ¶ 8.

9.      During the time period relevant to this litigation, Frontier's attendance policy, the "Dependability Policy," stated that employees incurring eight (8) unexcused absences, "Occurrences," within a twelve (12) month period would be subject to termination. *See* Ex. A (Arellano Decl.) at ¶ 10.

10.     The importance of reliable attendance was also reflected in the CBA, which required flight attendants who were unable to report for work because of illness or off-the-job injury to

notify Crew Scheduling at least two (2) hours prior to their assigned report time. *See* Ex. A (Arellano Decl.) at ¶ 11.

***Frontier's Leaves of Absence Policies***

11.     To accommodate unexpected circumstances that may require an employee to be absent from work for a period of time, Frontier offered and continues to offer various types of leaves including, FMLA Medical Leave, Intermittent FMLA Medical Leave, Non-FMLA Medical Leave, and Personal Leave. *See* Ex. A (Arellano Decl.) at ¶ 13.

12.     In addition, Frontier allowed employees to take FMLA Medical Leave on an intermittent basis ("Intermittent FMLA Leave"). *See* Ex. A (Arellano Decl.) at ¶ 13.

13.     Pursuant to the Intermittent FMLA Leave policy in place during the time period relevant to this lawsuit, employees were required to "make reasonable efforts to schedule leave…so as not to unduly disrupt the employer's operations," obtain approval for their leave from Frontier's LOA Department, and adhere to Frontier's policy for reporting absences or be subject to disciplinary action, including termination. *See* Ex. A (Arellano Decl.) at ¶ 14.

14.     When their need is foreseeable, employees were asked to provide 30 days advance notice of the need to take FMLA leave and when 30 day notice was not possible, asked to provide notice as soon as practicable --usually the same day or day after learning of the need for leave -- and to comply with Frontier's normal call-in procedures. *See* Ex. A (Arellano Decl.) at ¶ 15.

15.     An employee who failed to provide adequate notice of an unforeseeable leave or failed to comply with Frontier's absence-reporting procedures could be denied leave and/or subject to appropriate disciplinary action, up to and including termination of employment. *See* Ex. A (Arellano Decl.) at ¶ 16.

**B.   PLAINTIFF'S EMPLOYMENT & ATTENDANCE ISSUES**

16.   Plaintiff began her employment with Frontier as a flight attendant in 2007. *See* Dkt. No. 1 at ¶ 1.

17.   Shortly after commencing her employment with Frontier, Plaintiff began demonstrating a pattern of attendance issues to which Frontier responded as follows:

|      |                                          |
|------|------------------------------------------|
| i.   | November 17, 2008: coaching and counseling. |
| ii.  | December 29, 2008: coaching and counseling. |
| iii. | February 16, 2009: coaching and counseling. |
| iv.  | October 21, 2009: coaching and counseling. |
| v.   | January 12, 2010: coaching and counseling. |
| *vi.* | March 29, 2012: written warning. |
| vii. | July 3, 2013: documented verbal warning. |
| viii. | September 3, 2013: written warning. |
| ix.  | September 28, 2013: final warning. |
| x.   | October 18, 2013: final warning. |
| xi.  | March 6, 2015: documented verbal warning. |
| xii. | March 12, 2015: written warning. |
| xiii. | March 16, 2015: written warning. |
| xiv. | May 12, 2015: written warning. |
| xv.  | May 26, 2015: final warning. |
| xvi. | July 3, 2015: final warning. |
| xvii. | August 7, 2015: final warning. |
| xviii. | November 3, 2015: investigatory meeting. |
| xix. | November 11, 2015: termination. |

*See* Ex. A (Arellano Decl.) at ¶¶ 17-18; *see also*, Excerpts from Pl.'s Dep. Tr., attached as Exhibit B at 45:10-48:9.

**C.   PLAINTIFF SELF-DISCLOSES ALCOHOLISM.**

18.   On or around September 7, 2014, Plaintiff disclosed to Frontier that she had entered an inpatient rehabilitation program for alcoholism. *See* Dkt. No. 1 at ¶ 4; Ex. A (Arellano Decl.) at ¶ 19.

19.     Frontier granted Plaintiff continuous FMLA Leave to complete the sixty (60) day inpatient program. *See* Ex. A (Arellano Decl.) at ¶¶ 20-21; *see also,* Ex. B (Pl.'s Dep. Tr.) at 64:1-8; 65:10-12.

20.     After completing the in-patient program in October, Plaintiff was cleared to return to work without restrictions by her healthcare provider. *See* Ex. A (Arellano Decl.) at ¶¶ 22-23.

21.     Despite her entry into a rehabilitation program, Plaintiff's alcoholism ***never*** substantially limited her ability to perform her job as a flight attendant. *See* Ex. B (Pl.'s Dep. Tr.) at 67:20-68:4; Tr. 68:17-20; 70:23-71:5.

22.     Since September 5, 2014 (Plaintiff's "sobriety date") through the end of her employment with Frontier, Plaintiff was always able to perform the essential functions of her job as a flight attendant while on duty. *See* Ex. B (Pl.'s Dep. Tr.) at 67:20-68:4; Tr. 68:17-20; 70:2-12; 70:21-71:5.

23.     Since September 5, 2014, Plaintiff has been sober and alcoholism has not impacted her daily life activities or inhibited her ability to function. *See* Ex. B (Pl.'s Dep. Tr.) at 67:5; 69:16:20; 70:21-71:5.

### D.     PLAINTIFF'S REQUEST FOR AN ADDITIONAL ACCOMMODATION

24.     Not long after her return to Frontier, Plaintiff began calling out as "sick," incurring Occurrences under the Dependability Policy. *See* Ex. A (Arellano Decl.) at ¶ 24.

25.     A few days after receiving a written warning from Frontier, Plaintiff obtained paperwork from her medical care provider for purposes of certifying her for Intermittent FMLA Leave for four (4) days per month. *See* Ex. A (Arellano Decl.) at ¶¶ 25-26.

26.     Plaintiff, however, continued to call out "sick" after exceeding the number of authorized Intermittent FMLA Leave days per month and failed to abide by the two (2) hours

minimum notice requirement. *See* Ex. A (Arellano Decl.) at ¶ 27; Ex. B (Pl.'s Dep. Tr.) at 42:21-23; 43:21-24; 45:10-48:9; 180:13-16.

27.     On June 4, 2015, Plaintiff met with Cassie Micklich, Drug & Alcohol Specialist, Frontier, and Gerardo ("Jerry") Arellano, Sr. Employee/Labor Relations Manager/Special Projects, Frontier, to discuss her continued exhaustion of Intermittent FMLA, which Plaintiff recorded. *See* Ex. A (Arellano Decl.) at ¶¶ 29-31;  Ex. B (Pl.'s Dep. Tr.) at 161:8-25.

28.     Plaintiff asked if Frontier could adjust her flight schedule so that she could avoid flights with layovers, including overnight layovers, which she said tempted her to drink and therefore, jeopardized her sobriety. *See* Ex. A (Arellano Decl.) at ¶ 32.

29.     Mr. Arellano indicated that Frontier wanted to support Plaintiff, but could not adjust Plaintiff's schedule to avoid flights with layovers or allow her to create her own schedule because doing so would violate the CBA. *See* Ex. A (Arellano Decl.) at ¶ 33.

30.     Union representative, Adrienne Prince, confirmed that it would not have authorized Frontier to grant Plaintiff's requested accommodation because doing so would have violated the CBA. *See* Excerpts from Prince Dep. Tr., attached as Exhibit C at 58:17-59:7.

31.     Further, allowing Plaintiff to build her own schedule from Open Time would necessarily penalize other flight attendants, regardless of seniority, by taking away alternative and/or additional flight opportunities from other flight attendants looking to modify their schedules. *See* Ex. A (Arellano Decl.) at ¶ 39.

32.     Mr. Arellano told Plaintiff that she could apply for other accommodations, including a personal leave or non-FMLA leave or explore other positions with the company. *See* Ex. A (Arellano Decl.) at ¶ 40.

33.     Plaintiff did not want to apply for any continuous personal or non-FMLA leave because she was concerned the leaves would be unpaid and therefore, did not apply for those leaves. *See* Ex. B (Pl.'s Dep. Tr.) at 64:1-65:7.

34.     Plaintiff did not want to transfer internally within Frontier because she preferred being a flight attendant and did not want to relocate and/or give up her seniority rights in exchange for a new position. *See* Ex. A (Arellano Decl.) at ¶ 41; Ex. B (Pl.'s Dep. Tr.) at 75:19-23.

35.     Ms. Micklich directed Plaintiff to review the sections of the CBA addressing seniority to the extent she would consider transferring internally within Frontier, but was concerned about losing seniority. *See* Email from Ms. Micklich to Ms. Brigham dated June 4, 2015, attached as Exhibit D; Ex. B (Pl.'s Dep. Tr.) at 167:2-168:6.

36.     Plaintiff did not consult the CBA for purposes of determining whether an internal transfer would actually negatively impact her seniority, but had she, she would have learned that if she were to transfer to a position within the Inflight Services Department, she would have retained and continued to accrue seniority for a period of two (2) years such that if she transferred back to a flight attendant position within that two (2) year period, she would have had her seniority reinstated as if she had never transferred. *See* Ex. B (Pl.'s Dep. Tr.) at 170:1-25; Ex. A (Arellano Decl.) at Ex. 3 (CBA) at FRONTIER AIRLINES (R. BRIGHAM) – 0000915-16.

37.     Plaintiff also asked whether she could temporarily work at the General Office ("GO") doing administrative work without losing her seniority like Frontier employees on On-the-Job ("OJI") Leave were permitted to do. *See* Ex. A (Arellano Decl.) at ¶ 42.  The CBA included a collectively-bargained for OJI provision, allowing Frontier the discretion to provide flight attendants injured on the job – but only flight attendants injured on the job – with temporary light duty assignments in the GO.  *See* Ex. A (Arellano Decl.) at ¶ 43.  These assignments were not open

job positions.  *See* Ex. A (Arellano Decl.) at ¶ 43.  Rather, when a flight attendant injured on the job was temporarily unable to work, he or she would be permitted to help others in the GO with their own light-duty responsibilities.  *See* Ex. A (Arellano Decl.) at ¶ 43.

38.    Consistent with the CBA, work at the GO was only provided as an accommodation to flight attendants in Frontier's OJI program. *See* Ex. A (Arellano Decl.) at ¶ 44; *see also,* Ex. D (Email from Ms. Micklich to Ms. Brigham dated June 4, 2015); Ex. B (Pl.'s Dep. Tr.) at 79:14-16; 167:2-168:6

39.    In addition, Plaintiff did not know when or if she would be ever able to handle layovers again. *See* Ex. B (Pl.'s Dep. Tr.) at 76:19-77:22.

40.    Shortly after the June 4, 2015 meeting, Plaintiff submitted a revised Intermittent FMLA Certification Form, increasing the number of authorized Intermittent FMLA Leave from four (4) days per month twelve (12). *See* Ex. A (Arellano Decl.) at ¶¶ 45-46.

41.    Plaintiff, however, continued to exhaust her Intermittent FMLA Leave and incurred Occurrences for calling out "sick." *See* Ex. A (Arellano Decl.) at ¶¶ 47-48.

42.    On October 9, 2015, Plaintiff met with Jeff Varney, Manager, Inflight Services, Kari Thompson, Manager, Inflight Services, and Mr. Arellano and recorded the meeting. *See* Ex. A (Arellano Decl.) at ¶¶ 49-51; Ex. B (Pl.'s Dep. Tr.) at 172:24-173:7.

43.    Plaintiff reiterated how she loved being a flight attendant, particularly because of the job's flexibility and asked whether as an accommodation, she could start with a blank schedule and be responsible for building her own schedule up to 60 hours. *See* Ex. A (Arellano Decl.) at ¶ 52.

44.    Mr. Arellano explained that that practice was reserved for flight attendants returning from continuous leaves of absence who had not been active flight attendants during the

bidding period the month they returned from leave and therefore, could not have bid and that allowing Plaintiff to craft her own schedule would violate the CBA's seniority provisions, creating the impression that Frontier was "cherry-picking" flight attendants to have the benefit of building their own schedules without regard to seniority. *See* Ex. A (Arellano Decl.) at ¶ 53.

45.     Ms. Thompson echoed Mr. Arellano stating, "there is a lot of people that would like to start with a clean slate for the month. And build their schedule – right?" *See* Ex. A (Arellano Decl.) at ¶ 54; *see also*, Ex. A (Arellano Decl.), Ex. 13 (Pl.'s transcription of recorded meeting on Oct. 9, 2015) at BRIGHAM LM 00000035.

46.     At this point, Frontier had already been allowing Plaintiff to use Intermittent FMLA for purposes other than those included in her certifications (i.e. relapse prevention counseling and support group meetings) by allowing her to use Intermittent FMLA Leave to avoid flights with overnight layovers. *See* Ex. A (Arellano Decl.) at ¶¶ 55-56; Ex. B (Pl.'s Dep. Tr.) at 161:3-6.

47.     Mr. Arellano emphasized to Plaintiff that ultimately, Frontier needed "employees who can come to work," but reminded Plaintiff that she could apply for a personal leave as a further accommodation, additional Intermittent FMLA Leave, and/or for another internal position within the company. *See* Ex. A (Arellano Decl.) at ¶ 57.

48.     Mr. Arellano notified Plaintiff that a Flight Training Coordinator position was coming available, but Plaintiff repeated her concerns about losing her seniority. *See* Ex. A (Arellano Decl.) at ¶ 58.

49.     Ms. Thompson encouraged Plaintiff to check for other internal opportunities on the company's internal Ultipro system on a weekly basis. *See* Ex. A (Arellano Decl.) at ¶ 59; see also, Ex. A (Arellano Decl.), Ex. 13 (Pl.'s transcription of recorded meeting on October 9, 2015) at BRIGHAM LM 00000020.

50.     While Plaintiff "occasionally" looked at internal opportunities posted online, she had no intention of actually applying for any other position (other than potentially a work-from-home position) because she wanted to remain a flight attendant. *See* Ex. B (Pl.'s Dep. Tr.) at 175:2-178:14.

51.     Less than ten (10) days after the October 9, 2015 meeting, Plaintiff failed to report for a four (4) day trip.  *See* Ex. A (Arellano Decl.) at ¶¶ 60-61; Ex. B (Pl.'s Dep. Tr.) at 179:24-180:16.

52.     Plaintiff failed to contact the LOA Department for approval to use Intermittent FMLA Leave for the four (4) day trip until the day following the first day of the trip in violation of Frontier policy. *See* Ex. A (Arellano Decl.) at ¶¶ 60-61; Ex. A (Arellano Decl.), Ex. 11 (Pl.'s leave file) at FRONTIER AIRLINES (R. BRIGHAM) – 0004882; Ex. B (Pl.'s Dep. Tr.) at 179:24-180:16.

53.     Frontier's LOA Department denied Plaintiff's request to use Intermittent FMLA Leave for the four (4) day trip for her lack of timely notice. *See* Ex. A (Arellano Decl.) at ¶¶ 63-64.

54.     On October 30, 2015, Frontier sent Plaintiff a letter indicating that pursuant to the CBA, an Investigatory Meeting had been scheduled for November 3 for Plaintiff to attend to discuss her violations of the Dependability Policy. *See* Ex. A (Arellano Decl.) at ¶ 65.

55.     On November 3, 2015, Plaintiff, Stephanie Coppedge, Supervisor of Inflight Services, Frontier, Andrea Warfield, Sr. Human Resource Manager, Frontier, and union representative, Adrienne Prince met to discuss Plaintiff's violations of the Dependability Policy, which Plaintiff recorded. *See* Ex. B (Pl.'s Dep. Tr.) at182:1-9; 182:23-183:7; Pl. Dep. Ex. 44, attached as Exhibit E; Ex. B (Pl.'s Dep. Tr.) at 112:21-23.

56.     During that meeting Plaintiff admitted that she had forgotten to email Frontier's LOA Department immediately regarding her decision to call out "sick" for the four (4) day trip beginning October 23, 2015 as required by company policy. *See* Ex. E (Pl. Dep. Ex. 44) at BRIGHAM LM 00000040-41; Ex. C (Ms. Prince's Dep. Tr.) at 60:14-65:22.

57.     Plaintiff also reiterated that she needed to avoid flights with layovers, which tempted her to drink and therefore, jeopardized her recovery. *See* Ex. E (Pl. Dep. Ex. 44) at BRIGHAM LM 00000045.

58.     During the meeting, Plaintiff stated, "There was not one single layover that I did not drink. It was just what you did...I had never stepped on an airplane drunk luckily but that could have been my next step." Ex. E (Pl. Dep. Ex. 44) at BRIGHAM LM 00000045.

59.     Plaintiff also reiterated her request to remove her from overnights or allow her to build her own schedule out of Open Time. *See* Ex. E (Pl. Dep. Ex. 44) at BRIGHAM LM 00000045; Pl. Dep. Ex. 20, attached as Exhibit F; Ex. B (Pl.'s Dep. Tr.) at 112:11-25.

60.     However, pursuant to the CBA, active Frontier flight attendants, including Plaintiff, were required to bid for purposes of determining their flight schedules. *See* Ex. A (Arellano Decl.) at ¶ 35; Ex. C (Prince Dep. Tr.) at 20:1-21:3; Excerpts from Arellano Dep. Tr., attached as Exhibit G at 121:2-6; 124:7-9; 124:16-19; 205:8-20; Ex. B (Pl.'s Dep. Tr.) at 80:16-18.

61.     Therefore, allowing Plaintiff, an active Frontier flight attendant, to be excused from bidding and build her own schedule would have violated the CBA. *See* Ex. C (Prince Dep. Tr.) at 58:17-24; *see also,* Ex. A (Arellano Decl.) at ¶ 35.

62.     Similarly, removing Plaintiff from flights with long layovers and/or overnight layovers would also have violated the CBA. *See* Ex. C (Prince Dep. Tr.) at 58:25-59:4; *see also,* Ex. A (Arellano Decl.) at ¶ 35.

63.     Frontier had never allowed any active Frontier flight attendant to build their own schedule as Plaintiff was requesting. *See* Ex. A (Arellano Decl.) at ¶ 38; Ex. C (Prince Dep. Tr.) at 20:15-21:3.

64.     On November 11, 2015, Frontier informed Plaintiff that it was terminating her employment effective immediately for incurring ten (10) Occurrences within a twelve (12) month period in violation of the Dependability Policy under which eight (8) Occurrences subjected an employee to termination. *See* Ex. A (Arellano Decl.) at ¶¶ 67-68.

65.     Plaintiff does not dispute that she was absent on more than eight (8) occasions within the twelve (12) month period preceding her discharge. *See* Ex. B (Pl.'s Dep. Tr.) at 40:5-10; 41:21-42:7.

66.     Plaintiff did not look for any flight attendant positions after her separation from employment with Frontier because she would have lost seniority and therefore, started out as a reserve—a position which would have required her to cover flights with layovers. *See* Ex. B (Pl.'s Dep. Tr.) at 54:16-55:5.

## III.    <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate where the "pleadings, depositions, answers to interrogatories, admissions on file, or affidavits [show] that there is no genuine issue as to any material fact." *See Zoutomou v. Copper*, 550 F. App'x 647, 650 (10th Cir. 2013) (citing FED. R. CIV. P. 56(c)). "Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one party must prevail as a matter of law." *E.E.O.C. v. Western Trading Co., Inc.*, No. 10–cv–02387–WJM–MEH, 2012 WL 1460025 at *1 (D. Colo. April 27, 2012), citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248–49 (1986). "A fact is 'material' if it pertains to an

element of a claim or defense; a factual dispute is 'genuine' if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party." *Western Trading Co.*, 2012 WL 1460025 at *1, citing *Anderson,* 477 U.S. at 248.

"The burden of showing that no genuine issue of material fact exists is borne by the moving party" and the Court must resolve factual ambiguities against the moving party. *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000). However, conclusory allegations or testimony will not establish an issue of fact sufficient to defeat summary judgment and the moving party may meet its summary judgment burden by merely "point[ing] to an absence of evidence to support the non-movant's claim." *Arabalo v. City of Denver*, 625 F. App'x 851, 861 (10th Cir. 2015) (internal alterations, quotations and citations omitted).

## IV.   <u>LEGAL ARGUMENT</u>

### A.   **Defendant is Entitled to Summary Judgment on Plaintiff's Claim for Failure to Engage in the Interactive Process (Count II).**

Frontier is entitled to summary judgment on Plaintiff's claim for failure to engage in the interactive process as a matter of law because the Tenth Circuit has expressly held that the failure to engage in the interactive process is not independently actionable under the ADA. *See Valdez v. McGill*, 462 Fed. Appx. 814, 819 (10th Cir. 2012) (affirming the trial court's decision to grant the defendant's motion for summary judgment on the plaintiff's claim for failure to engage in the interactive accommodation process on the grounds that such failure "is not actionable discrimination" under the ADA, explaining "The interactive process ensures a reasonable accommodation is identified, *if one is available*"…An employer "is not required to engage an employee in a futile interactive process where…no reasonable accommodation was possible."); *see also, McBride v. BIC Consumer Prods.,* 583 F.3d 92, 101 (2d Cir. 2009) ("[A]n employer's

failure to engage in a sufficient interactive process does not form the basis of a claim under the ADA.").

**B.      Defendant is Entitled to Summary Judgment on Plaintiff's Claim for Discrimination in Violation of the ADA (Count IV).**

In the absence of direct evidence of discrimination, the court applies the *McDonnell Douglas* burden-shifting framework to claims under the ADA. *Williams v. FedEx Corp. Servs.,* 849 F.3d 889 (10th Cir. 2017). Under *McDonnell Douglas*'s three-part analysis, a plaintiff must first establish a prime facie case of ADA discrimination by proving "(1) he is disabled (or perceived as disabled) as defined by the ADA, (2) he is qualified to perform the essential functions of his job with or without reasonable accommodation, and (3) he suffered discrimination as a result of his disability." *Williams,* 849 F.3d at 896; *see also, Nagle v. Mink,* No. 10-CV-01935-PAB- MEH, 2012 WL 3150520, at *4 (D. Colo. Aug. 2, 2012) (emphasis added). If the plaintiff establishes a prima facie case, "the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions." *Id.* If the defendant does so, "the burden shifts back to the plaintiff to show that the defendant's stated reasons are merely 'pretextual.' " *Id.*

A person is "disabled" under the ADA only if they suffer from "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). *Allen v. SouthCrest Hosp., 455 F. App'x 827, 831* (10th Cir. 2011), quoting *Berry v. T– Mobile USA, Inc.*, 490 F.3d 1211, 1216 (10th Cir. 2007) (internal quotation marks omitted) (emphasis added). "For a physical or mental impairment to be "substantially limiting" the individual must be: '(i) Unable to perform a major life activity that the average person in the general population can perform; or (ii) Significantly restricted as to the condition, manner or duration under which [the] individual can perform a particular major life activity as compared to the condition, manner,

or duration under which the average person in the general population can perform that same major life activity.'" *Burris v. Novartis Animal Health U.S., Inc.,* 309 F. App'x 241, 250 (10th Cir. 2009), citing *Nielsen v. Moroni Feed Co*., 162 F.3d 604, 611 n. 11 (10th Cir. 1998), quoting 29 C.F.R. § 1630.2(j)(1)). Major life activities "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2). "Not all impairments are serious enough to be considered disabilities under the statute" and therefore, whether an individual's "impairment substantially limits a major life activity requires an individualized assessment." *Moore,* 2020 WL 972711, at *4, quoting 29 C.F.R. § 1630.2(j)(1)(i) & (iv).

### 1.      Plaintiff Did Not Have A Qualifying Disability.

"[T]here is no *per se* rule that categorizes recovering alcoholics ... as disabled" and "mere status as an alcoholic or substance abuser does not necessarily imply [the requisite] 'limitation' [for a disability determination]." *Kitchen v. BASF,* 343 F. Supp. 3d 681, 688–89 (S.D. Tex. 2018), *report and recommendation adopted,* No. 3:17-CV-00040, 2018 WL 5723147 (S.D. Tex. Nov. 1, 2018), *aff'd,* 952 F.3d 247 (5th Cir. 2020). Instead, a case-by-case evaluation is necessary "to determine whether a particular plaintiff, who is a recovering alcoholic, qualifies as disabled, because of his addiction." *Id.,* quoting *Radick v. Union Pac. Corp.*, No. 4:14-CV-02075, 2016 WL 639126, at *5 (S.D. Texas Jan. 25, 2016).

Courts, including the Tenth Circuit, have granted summary judgment where a recovering alcoholic has failed to produce evidence demonstrating that their alcoholism substantially limited their ability to perform a major life activity. For example, in *Burris v. Novartis Animal Health U.S., Inc.*, the Tenth Circuit affirmed the trial court's decision to grant summary judgment for the

defendant on the plaintiff's ADA discrimination claim on the grounds that the plaintiff's testimony that his alcoholism limited his "ability to take care of himself on a daily basis," required him to "exclude himself from daily situations that are healthy for a non-alcoholic," but which could trigger him to relapse, and required him to attend AA meetings was insufficient for purposes of demonstrating that his alcoholism substantially limited one or more of his major life activities. 249. 309 F. App'x 241, 251 (10th Cir. 2009). Instead, the Court found that the plaintiff's additional testimony that his alcoholism did not have anything to do with a peak or valley in his sales numbers or impair his ability to go to work, that he could perform his job functions before he decided to seek treatment and had been successful as a salesman even before seeking treatment, and that "as long as he continued with his AA meetings he could function 'somewhat normally' at work and as a father" demonstrated that the plaintiff's condition was not substantially limiting. *Id.* at 250.

Similarly, in *Burch v. Coca-Cola Co.,* the Fifth Circuit found the plaintiff's testimony that he drank heavily during his off hours, experiencing hangover-like symptoms at work, and that his ability to walk, talk, think, and sleep were affected when he drank too much insufficient for purposes of demonstrating that his alcoholism, even untreated, substantially limited any major life activity. 119 F.3d 305, 322 (5th Cir. 1997). The Court reasoned that the plaintiff had testified that ***he never drank during work hours*** and that his inebriation was only temporarily incapacitating and therefore, no different from an overindulging social drinker. *Id.* at 316. According to the Court, "in both situations, the natural result of overindulgence is the ***temporary*** impairment of senses, dulled reactions, and the prospect of a restless sleep followed by an unpleasant morning. Although Burch's alcoholism assuredly affected how he lived and worked, '***far more is required to trigger coverage under § 12102(2)(A)***.'" *Id.* (emphasis added) (quoting *Ellison v. Software Spectrum*, 85 F.3d 187, 191 (5th Cir. 1996) (emphasis added; *see also, Moore v. Centralized Mgmt. Servs., LLC,*

No. 19-1592, 2020 WL 972711, at *4 (E.D. La. Feb. 28, 2020) ("episodic relapse" or an "occasional manifestation" of alcoholism did not satisfy the permanency requirement to constitute a substantially limiting impairment under the ADA.)

        **i.**        **Plaintiff Concedes That Her Alcoholism Was Not Substantially Limiting After September 5, 2014.**

During her deposition, Plaintiff testified unequivocally that her alcoholism has ***not*** substantially limited her ability to perform a major life activity since September 5, 2014. *See* SOMF at ¶ 21. Given that Plaintiff's ADA claims all rely upon alleged conduct occurring after September 5, 2014, this testimony alone, is undeniably fatal to her claims.

        **2.**        **Plaintiff Could Not Perform Essential Functions Of Her Job As A Flight Attendant With Or Without An Accommodation And Therefore, Was Not A "Qualified Individual" Under The ADA.**

Even assuming that Plaintiff was disabled at the time of the alleged misconduct (which she was not), Defendant is still entitled to summary judgment because Plaintiff has not and cannot demonstrate that she was otherwise qualified to perform the essential functions of her job as a flight attendant.

A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable accommodation, ***can perform essential functions of the employment position*** held or desired." *Mason v. Avaya Commc'ns, Inc.,* 357 F.3d 1114, 1119 (10th Cir. 2004) (emphasis added). "Essential functions" are "the fundamental job duties of the employment position." 29 C.F.R. § 1630.2(n)(1). Evidence considered in determining whether a particular function is essential includes: (1) the employer's judgment as to which functions are essential; (2) written job descriptions prepared before advertising or interviewing applicants for the job; (3) the amount of time spent on the job performing the function; (4) the consequences of not requiring the incumbent to perform the function; and (5) the work experience of past incumbents

in the job. 29 C.F.R. § 1630.2(n)(3); *see also Wells v. Shalala,* 228 F.3d 1137, 1144 (10th Cir. 2000).

> i.      **Plaintiff Does Not Dispute That Layovers Were An Essential Function Of Plaintiff's Position As A Flight Attendant.**

It is undisputed that covering flights requiring layovers was an essential function of her position as a flight attendant. *See* SOMF at ¶ 1. According to Plaintiff, however, layovers jeopardized her sobriety and therefore, to do her job as a flight attendant, she needed to be excused from them as an accommodation. *See* SOMF at ¶ 28, 57.  Plaintiff's admitted inability to do her job without an accommodation that would remove an essential function of that job disqualifies her for protection under the ADA as a matter of law. *See Gardenhire v. Manville*, 722 Fed. Appx. 835, 839 (10th Cir. 2018) (An employee's request to be relieved from an essential function of his position is not, as a matter of law, a reasonable or even plausible accommodation."); *see also, Ruiz v. Woodward, Inc.*, No. 17-CV-03046-MSK-KLM, 2019 WL 6893039, at *8 (D. Colo. Dec. 18, 2019) ("The 10th Circuit has repeatedly made clear that a proposed accommodation that reallocates or removes essential functions from an employee's job is not, as a matter of law, a "reasonable" accommodation").

Further, inherent in *all* flights is the risk of experiencing inclement weather and/or mechanical issues, which could require a layover. Therefore, even if the accommodation Plaintiff requested was reasonable and all flights with layovers were removed from Plaintiff's flight schedule, given that flight schedules are inevitably impacted by inclement weather and airplane mechanical issues, Frontier could never have guaranteed that Plaintiff would never be required to handle a flight with a layover. Therefore, given Plaintiff's testimony that she could not handle flights with layovers and maintain her sobriety, Plaintiff's request, would not have enabled her to perform the essential functions of her job as a flight attendant, precluding her ability to

demonstrate that she was a "qualified individual with a disability" for purposes of the ADA as a matter of law. *See e.g., US Airways, Inc. v. Barnett,* 535 U.S. 391, 400, 122 S. Ct. 1516, 1522, 152 L. Ed. 2d 589 (2002) ("An *ineffective* 'modification' or 'adjustment' will not *accommodate* a disabled individual's limitations."); *Santiago v. Executive Airlines*, 41 F. Supp. 2d (D. Puerto Rico 1999) (plaintiff's demand for an accommodation allowing her only to fly in aircrafts with pressurized cabins "was not viable" because "unforeseen circumstances may force last minute changes from a scheduled pressurized flight for an unpressurized one which requires that assigned crews be qualified to work in both"). Therefore, Plaintiff cannot demonstrate that she is a qualified individual with a disability under the ADA as a matter of law.

      ii.      **Plaintiff Does Not Dispute That Compliance With Frontier's Attendance Policy And Protocols Was An Essential Function Of Frontier's Flight Attendant Position.**

"[P]hysical attendance in the workplace is itself an essential function of most jobs" and therefore, an employee who is unable to satisfy an employer's attendance expectations or comply with its attendance policy—even due to a disability—is not a "qualified individual" for purposes of ADA protection. *Mason v. Avaya Comms., Inc.,* 357 F.3d 1114, 119 (10th Cir. 2004) (internal citations and quotations omitted); *Boileau v. Capital Bank Fin. Corp.,* No. 15-5820, 2016 WL 1622349, at *4 (6th Cir. Apr. 25, 2016) (plaintiff was not qualified for her position because she could not meet the attendance requirement); *Banks v. Bosch Rexroth Corp.,* 610 Fed.Appx. 519, 528 (6th Cir. 2015) ("inability to satisfy basic attendance requirements and excessive absenteeism are bases for finding that a particular disabled individual is not a qualified individual with respect to the ADA's framework"); *see also, Steele v. Stallion Rockies Ltd,* 106 F. Supp. 3d 1205, 1212 (D. Colo. 2015) ("antidiscrimination law does not extend so far as to shield a disabled employee from the implementation of his employer's standard policies against employee misconduct.")

(internal citations and quotations omitted); *Dennis v. Fitzsimons,* No. 18-CV-0128-MSK-STV, 2019 WL 4201476, at *4 (D. Colo. Sept. 5, 2019) ("***unsatisfactory conduct caused by alcoholism…does not receive protection under the ADA***…") (emphasis added); *Williams v. Widnall,* 79 F.3d 1003, 1007 (10th Cir. 1996) (Employers are not required to accept egregious behavior by an alcoholic employee when that same behavior, exhibited by a nondisabled employee, would require termination.); *Moore,* 2020 WL 972711, at *6 ("The ADA explicitly allows an employer to 'hold an employee who ... is an alcoholic to the same qualification standards for employment or job performance and behavior that such entity holds other employees, ***even if any unsatisfactory performance or behavior is related to the ... alcoholism of such employee***' ") (emphasis added), citing 42 U.S.C. § 12114(c)(2), (4).

Courts have not hesitated to dismiss ADA claims where a plaintiff's irregular attendance compromised essential job functions, even when the attendance issues stemmed from a disability. *See Dennis v. Fitzsimons,* No. 18-cv-0128, 2019 WL 4201476 (D. Colo. Sept. 5, 2019) ("unsatisfactory conduct caused by alcoholism…does not receive protection under the ADA…"); *Shim v. United Air Lines, Inc.,* No. CIV. 11-00162 JMS, 2012 WL 6742529, at *8 (D. Haw. Dec. 13, 2012) ("Both before and since the passage of the ADA, a majority of circuits have endorsed the proposition that in those jobs where performance requires attendance at the job, irregular attendance compromises essential job functions.") (internal citation and quotation omitted).

For example, in *Vandenbroek v. PSEG Power, CT LLC,* the Second Circuit affirmed the trial court's decision to grant the defendant's motion for summary judgment on the grounds that the plaintiff had failed to adduce sufficient evidence to permit a jury to find that he was "otherwise qualified" to perform his job as a boiler utility operator where the plaintiff had repeatedly violated the defendant's "no call/no show" policy despite the fact that his absenteeism

was the result of his alcoholism. 356 F. App'x 457, 461 (2d Cir. 2009). The court reasoned that "absenteeism resulting from alcoholism is a factor that bears on whether an employee is 'otherwise qualified' " and given that "employees in the boiler utility operator position had to be present to monitor the boiler and respond to any alarms,…[r]eliable employee attendance was essential to ensuring against a power outage or even an explosion." *Id.* at 459-60. The court also observed that the importance of reliable employee attendance was reflected in the "no call/no show" policy itself, which stated that even after a first offense, an employee could be discharged. *Id.*

Similarly, in *Stephens v. ExpressJet Airlines, Inc.* the court held that the plaintiff was not a "qualified individual" for purposes of performing her job as a flight attendant where she could not work longer than twenty-four (24) to forty-eight (48) consecutive hours of travel given her mental health conditions, which included anxiety. No. 4:16-CV-0890, 2018 WL 8459309, at *6 (S.D. Tex. May 4, 2018). The court explained that the defendant had established that "regular attendance for a full schedule" was an "essential function" of the plaintiff's position as a flight attendant, ***particularly given the airline industry's complicated scheduling systems, which largely depend upon customer demand, seasonal travel, aircraft maintenance, and weather***. *Id.* at *6. In support, the court pointed to (i) the defendant's flight attendant job description, which included an ability to withstand a work environment that may include "rotating schedule with variable hours that could include up to 16-hour duty days, holidays, and weekends," (ii) the defendant's flight attendant handbook which required that absent flight attendants make call-outs no less than two hours before their scheduled duty-in, (iii) the flight attendants' collective bargaining agreement, which required flight attendants "be available for a full schedule" and while not defining "full schedule," provided that trips may be scheduled for six consecutive days

of travel, and (iv) the seniority-based bidding system under which the defendant did not
customize trips for any flight attendants or control what trips an active flight attendant bids on.
*Id.*

Here, it is undisputed that regular attendance for a full flight schedule, including flights
with layovers, was an essential function of Plaintiff's job as a Frontier flight attendant. It is also
undisputed that Plaintiff refused to work flights with layovers, calling in "sick" and/or using her
Intermittent FMLA Leave to avoid them. As a result, Plaintiff admittedly exceeded the number
of unexcused absences permitted under Frontier's attendance policy. Therefore, as demonstrated
by *Stephens* and *Vanderbroek*, Plaintiff's refusal to work a full schedule as a flight attendant,
which necessarily included flights with layovers, and therefore, admitted inability to abide by
Frontier's attendance policy is fatal to her ADA claims. *See Id.* at *9 (an employee who is unable
to satisfy an employer's attendance expectations or comply with its attendance policy—even due
to a disability—is not a "qualified individual" for purposes of ADA protection).

### iii.     Plaintiff Rejected Reasonable Alternative Accommodations.

Even assuming, *arguendo*, that Plaintiff could somehow demonstrate that she is a qualified
individual with a disability under the ADA, Plaintiff lost that status and disqualified herself from
the protection offered by the ADA as a matter of law when she rejected alternative reasonable
accommodations proposed by Frontier. *See, e.g.*, *Kuehl v. Wal-Mart Stores, Inc.*, 909 F. Supp. 794,
803 (D. Colo. 1995) (holding employee lost any status she may have had under the ADA as a
qualified individual with a disability by rejecting reasonable alternative accommodations offered
by her employer).

Plaintiff did not want to sacrifice her compensation by taking an unpaid leave and did not
want to transfer to another position because she enjoyed the flexibility of being a flight attendant

(and was clearly, trying to get more of it). Plaintiff was also concerned that if she transferred to another position within the company, she would lose her seniority, which would be disadvantageous if she intended to return to her position as a flight attendant. Plaintiff's concern, however, was unfounded. Pursuant to the express terms of the CBA, which Plaintiff's supervisor identified for her, Plaintiff would have maintained and continued to accrue her seniority for up to two (2) years if she transferred to another position within Frontier's Inflight group. Offering no explanation, Plaintiff also did not request additional Intermitted FMLA Leave prior to exhausting the number of days she had been approved for. Plaintiff, however, was not entitled to the most optimal or her preferred accommodation as a matter of law. *See Equal Employment Opportunity Comm'n v. JBS USA, LLC*, 339 F. Supp. 3d 1135, 1178 (D. Colo. 2018), *reconsideration denied,* No. 10-CV-02103-PAB-KLM, 2019 WL 4778796 (D. Colo. Sept. 30, 2019) ("an employee is entitled to a reasonable accommodation, not the accommodation that he or she prefers") (internal citation omitted).

### 3. No Evidence Suggests Frontier Terminated Plaintiff's Employment *Because Of* Her Alcoholism.

Even assuming that the Court concludes that Plaintiff was disabled and qualified to perform the essential functions of her job as a flight attendant at the time of the alleged misconduct (which she was not), Frontier is still entitled to summary judgment because Plaintiff has not and cannot demonstrate that Frontier terminated her employment on the basis of her disability and therefore, cannot state a prima facie case for discrimination in violation of the ADA. *See Hennagir v. Utah Dep't of Corr.*, 587 F. 3d 1255, 1261 (10th Cir. 2009) ("It is not enough that an adverse employment action is suffered by an individual with a disability; rather, the disabled individual must show that the adverse action was '***on the basis of*** the disability") (emphasis added); *Punt v. Kelly Servs.*, 862 F.3d 1040, 1048 (10th Cir. 2017).

Many courts, including this Court, have held that to establish a causal connection between a disability and adverse employment action, a plaintiff must do more than show that the misconduct resulting in the adverse employment action is merely related to the plaintiff's disability. For example, in *Kitchen v. BASF,* the Fifth Circuit granted summary judgment in favor of the defendant on the plaintiff's ADA claims where the plaintiff had been discharged for failing a breath alcohol test despite the fact that he was an alcoholic, concluding that there was no causal connection between the plaintiff's discharge and the plaintiff's alcoholism. 952 F.3d 247, 253 (5th Cir. 2020). The court rejected the plaintiff's argument that the fact that the plaintiff was discharged for failing a breath alcohol test effectively meant that he was discharged because of his alcoholism and instead, emphasized the fact that the evidence demonstrated that the defendant had a post-rehabilitation alcohol testing policy and that the plaintiff had signed a Final Written Warning informing him that testing positive for alcohol while at work could result in his termination. *See also, Curry v. MillerCoors, Inc.*, No. 12-CV-02471-JLK, 2013 WL 4494307 (D. Colo. Aug. 21, 2013) ("though [the plaintiff] may never have used medical marijuana absent his disability, [the defendant] did not unlawfully terminate him 'because of' his disability" when it terminated the plaintiff's employment after the employee failed a drug test, violating the defendant's drug-free workplace policy).

### i. Plaintiff Concedes That She Violated Frontier's Attendance Policy And Protocols.

Like the employer in *Kitchen*, Frontier terminated Plaintiff's employment because of her violation of company policy—a legitimate, non-discriminatory reason, not because she was a recovering alcoholic. Therefore, Plaintiff cannot demonstrate a causal connection between her discharge and her alcoholism for purposes of stating a prima facie case of disability discrimination under the ADA.

At the time that Frontier terminated Plaintiff's employment, its Dependability Policy stated that an employee who accumulates eight (8) Occurrences of absenteeism/tardiness ("Dependability Occurrences") within a rolling twelve (12) month period "will be subject to termination of employment with Frontier." *See* SOMF at ¶ 9. Plaintiff does not dispute that she was in fact absent on more than eight (8) occasions within a twelve (12) month period, and that she failed to follow Frontier's procedure for calling out or using intermitted FMLA. *See* SOMF at ¶ 65. Therefore, it is undisputed that Plaintiff violated the Dependability Policy as it was written. Even assuming that some of Plaintiff's absences were directly related to her alcoholism or treatment plan, as demonstrated by the holding in *Kitchen*, that connection alone is insufficient for purposes of establishing that Frontier terminated Plaintiff's employment **on the basis of** her alcoholism. *See* 42 U.S.C.A. § 12114 (expressly permitting employers to terminate employees for violating reasonable policies and procedures even if the "unsatisfactory performance or behavior is related to the drug use or alcoholism of such employee.").

Further, the connection between Plaintiff's alleged disability, misconduct, and termination from employment is much more attenuated than that in *Kitchen*, further undermining any causal connection. Unlike in *Kitchen* where the plaintiff directly engaged in conduct that directly violated their employer's policies to treat or cope with a disability, in this case, Plaintiff was refusing to show up to work in order to avoid the relapse of a condition she admits has not limited her ability to perform daily life activities since September 5, 2014 and *never* limited her ability to perform her job as a flight attendant.  *See* SOMF at ¶ 21.

        **4.**      **Frontier Terminated Plaintiff's Employment For Legitimate, Non-Discriminatory and Non- Retaliatory Reasons That Were Not Pretextual.**

Even assuming that Plaintiff produces sufficient evidence to establish a prima facie case

of disability discrimination under the ADA (which she cannot), the undisputed material facts demonstrate that Frontier terminated Plaintiff's employment for violating its attendance policy—a legitimate, non-discriminatory reason—that was not pretextual and therefore, Plaintiff cannot sustain her burden under *McDonnell Douglas*.

Only when a plaintiff demonstrates that an employer's proffered reasons are "unworthy of credence," may a jury "infer the ultimate fact of discrimination" or retaliation. *Smothers v. Solvay Chemicals, Inc.*, 740 F.3d 530, 546 (10th Cir. 2014), citing *Swackhammer v. Sprint/United Mgmt. Co.,* 493 F.3d 1160, 1167 (10th Cir. 2007); *see also, Sybrandt v. Home Depot*, 560 F.3d 553, 561 (6th Cir. 2009) (plaintiff's burden is to demonstrate that defendant's decision was "so unreasonable as to be disbelieved"). "Plaintiffs may show that an employer's proffered reasons for an adverse employment action are pretext for discrimination if the reasons '(1) have no basis in fact; (2) did not actually motivate the action; or (3) were insufficient to warrant the action.' " *Sloan v. Tate & Lyle Ingredients Americas LLC,* No. 3:14-CV-406-TAV-HBG, 2016 WL 4179959, at *13 (E.D. Tenn. Aug. 5, 2016) (internal citations and quotations omitted). Evidence of pretext may include evidence the plaintiff "was treated differently from other similarly-situated employees who violated work rules of comparable seriousness." *Smothers v. Solvay Chemicals, Inc.,* 740 F.3d 530, 539 (10th Cir. 2014) (internal citations and quotations omitted).

In *Morgan v. Wells Fargo Bank, Nat. Ass'n,* the court held that the plaintiff failed to demonstrate that the defendant's proffered legitimate, nondiscriminatory reasons for terminating her were pretextual, such that a rational factfinder could find them worth of credence where the plaintiff's only argument was that the defendant treated similarly situated employees differently, but set forth no evidence in support. No. 7:13CV137, 2014 WL 688129, at *4 (W.D. Va. Feb.

21, 2014). In that case, the plaintiff alleged that the defendant had violated the ADA by terminating her employment as a call center worker because of her alleged disability—alcoholism. *Id.* at *1. The defendant moved for summary judgment on the grounds that it terminated the plaintiff's employment for a legitimate non-discriminatory and non-retaliatory reason—because she failed to adhere to the defendant's mandatory attendance policy, which the defendant considered essential to the call center's productivity. *Id.*

After exhausting the number of days permitted under the defendant's attendance policy and receiving a warning form her supervisor, the plaintiff continued to miss work ultimately resulting in the termination of her employment. During the termination conversation, however, the plaintiff told her supervisor that she was checking into a rehabilitation center for alcoholism. The defendant rescinded the termination and granted the plaintiff leave to seek treatment. *Id.* The company also reevaluated her absences, excusing certain absences as short-term disability leave and others as certified medical leave. *Id.* When the plaintiff returned to work, her supervisor indicated that she needed to contact Leave Management to establish whether any of her remaining absences could be excused otherwise, the plaintiff would remain in violation of the attendance policy and subject to termination. *Id.* The plaintiff contacted Leave Management and requested that it excuse two (2) of her absences as certified medical leave. *Id.* Leave Management denied the request because an employee qualifies for certified medical leave only after her condition caused her to miss five (5) consecutive workdays, but advised her to contact the Accommodations team to review her doctor's note. *Id.* The plaintiff did not contact them and therefore, remained in violation of the defendant's attendance policy. As a result, the defendant terminated her employment. *Id.*

Granting the defendant's motion for summary judgment on the plaintiff's ADA claim, the

court noted that the plaintiff did not contest her absences, that her absences exceeded those permitted under the company's attendance policy, that the plaintiff did not seek to have the unscheduled absences exceeding those permitted under the policy excused by the Accommodations team, and that the plaintiff knew the consequences of violating the company's attendance policy. *Id.* at *3. The court also noted that while the plaintiff claimed that the defendant deviated from its policies and treated similarly situated employees differently, she had failed to marshal any evidence in support of that argument. *Id.* at *4.

Here, like the plaintiff in *Morgan,* Plaintiff does not dispute that she was absent from work on eight (8) occasions, incurring ten (10) Occurrences under the Dependability Policy. *See* SOMF at ¶ 64. Plaintiff also does not dispute that incurring ten (10) Occurrences violated Frontier's Dependability Policy as it was written (although she may disagree with it). In addition, Plaintiff does not dispute that she failed to follow the "call out" protocols set forth in the Employee Handbook and CBA. *See* SOMF at ¶¶ 26, 56. Further, like the plaintiff in *Morgan,* Plaintiff has not and cannot adduce any evidence demonstrating that Frontier treated other flight attendants who had violated the Dependability Policy to a similar degree as Plaintiff more favorably than Plaintiff or adduced any other evidence demonstrating that Frontier's proffered reasons for terminating her employment—Plaintiff's admitted violation of its attendance policy—is "unworthy of credence." Accordingly, Frontier is entitled to summary judgment. *See Arabalo*, 625 F. App'x at 861 (moving party may meet its summary judgment burden by merely "point[ing] to an absence of evidence to support the non-movant's claim.").

### C.  Defendant is Entitled to Summary Judgment on Plaintiff's Claim for Failure to Accommodate Claim (Count I).

In order to establish a *prima facie* case of failure to accommodate under the ADA, a plaintiff must demonstrate that "1) she was disabled, 2) she was otherwise qualified, 3) she

requested a plausibly reasonable accommodation, and 4) the [defendant] refused to accommodate her disability." *Aubrey v. Koppes,* No. 19-1153, 2020 WL 5583649, at *5 (10th Cir. Sept. 18, 2020).

For the reasons set forth in Sections IV.B.1 and IV.B.2 *supra*, Plaintiff was not disabled and was not otherwise qualified to perform the essential functions of her job as a flight attendant with or without an accommodation and therefore, cannot state a prima facie case for failure to accommodate under the ADA. Even if those arguments fail, however, Plaintiff's failure to accommodate claim will still fail because Frontier *did* accommodate Plaintiff's alcoholism and because the additional accommodation Plaintiff sought was unreasonable as a matter of law.

### 1.   Frontier Reasonably Accommodated Plaintiff.

Plaintiff's failure to accommodate is futile because Frontier not only tried, but went to great lengths to actually accommodate Plaintiff's alcoholism as best it could. Specifically, it is undisputed that Frontier unquestioningly approved Plaintiff's use of FMLA Leave to complete a sixty (60) day in-patient rehabilitation program and over the course of ***more than a year***, unquestioningly approved of her use of Intermittent FMLA Leave, allowed her to use more Intermittent FMLA Leave than had been certified by Plaintiff's healthcare provider, and allowed her to use Intermittent FMLA Leave for purposes other than those certified by her healthcare provider.   *See* SOMF at ¶ 46. Frontier not only tried, but went to great lengths to actually accommodate Plaintiff's alcoholism as best it could.

### 2.   Frontier Had No Obligation Under The ADA To Excuse Plaintiff From Layovers.

"[T]he term 'reasonable accommodation' refers to those accommodations which presently, or in the near future, enable the employee to perform the essential functions of his job." *Aubrey,* 2020 WL 5583649, at *7.  According to the ADA,   reasonable accommodations may

include:

> (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and
>
> (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

*Id.,* quoting 42 U.S.C. § 12111(9).

The determination of whether a requested accommodation is reasonable "must be made on the facts of each case taking into consideration the particular individual's disability and employment position." *Punt v. Kelly Servs.,* 862 F.3d 1040, 1050–51 (10th Cir. 2017), quoting *Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 1114, 1123–24 (10th Cir. 2004).

### i.   The Accommodation Plaintiff Sought Would Have Removed An Essential Function Of The Flight Attendant Position.

As discussed in Section IV.B.2 *supra,* the ADA does *not* require an employer to transfer any of the essential functions of a disabled employee's job in order to make reasonable accommodation for their disability. *Coats v. Goodyear Tire & Rubber Co.,* No. H-01-1322, 2002 WL 32123913, at *21 (S.D. Tex. Oct. 16, 2002). Therefore, Frontier cannot be held liable for denying Plaintiff's request for an accommodation that would excuse her from flying layovers— a request that Frontier remove an essential function of Plaintiff's position—as a matter of law. *See Stephens,* 2018 WL 8459309 at *6.

### ii.   The Accommodation Plaintiff Sought Would Have Sacrificed The Bona Fide Seniority Rights Of Other Flight Attendants.

In addition, "the ADA does not require an employer to take action inconsistent with the contractual rights of other workers under a collective bargaining agreement." *Coats,* 2002 WL 32123913, at *21 (internal citations and quotations omitted); *see US Airways, Inc.*, 122 S.Ct. at

1524 ("lower courts have unanimously found that collectively bargained seniority trumps the need for reasonable accommodation in the context of the linguistically similar Rehabilitation Act"); *Eckles v. Consolidated Rail Corp.* , 94 F.3d 1041, 1051 5 AD Cases 1367 (7th Cir. 1996), *cert. denied*, 520 U.S. 1146 6 ADCases 928 (1997) ("the ADA does not require disabled individuals to be accommodated by sacrificing the collectively bargained, bona fide seniority rights of other employees"); *Milton*, 53 F.3d at 1125. An employer's demonstration that a requested accommodation conflicts with seniority rules "is ordinarily sufficient to show that accommodation is not reasonable." *US Airways, Inc. v. Barnett,* 535 U.S. 391, 122 S. Ct. 1516, 152 L. Ed. 2d 589 (2002) (Emphasizing "the importance of seniority to employee-management relations," stating "the typical seniority system provides important employee benefits by creating, and fulfilling, employee expectations of fair, uniform treatment," including "job security and an opportunity for steady and predictable advancement based on objective standards" and includes "an element of due process," limiting "unfairness in personnel decisions" and "encourage[ing] employees to invest in the employing company, accepting less than their value to the firm early in their careers" in return for greater benefits in later years") (internal citations omitted).

For example, in *Santiago v. Executive Airlines*, the court granted the defendant airline's motion for summary judgment on the plaintiff flight attendant's ADA claim where the accommodation sought by the plaintiff would have encroached upon "the vested rights of other Flight Attendants with more seniority than plaintiff," explaining "an employer's obligation does not extend to contravening rights secured by other employees through a collective bargaining agreement." *Id.* at 135.  41 F. Supp. 2d 129, 135 (D. Puerto Rico 1999). In that case, the plaintiff requested to be scheduled exclusively in aircrafts with pressurized cabins due to an ear condition. *Id.* The airline denied the accommodation request and instead, reassigned her to a ramp-escort

position. *Id.* at 133. After the defendant terminated the plaintiff for excessive absences and violating the company's travel policies, the plaintiff claimed that the defendant's dismissal was based upon her disability and that the defendant had wrongly denied the accommodation she had requested. *Id.* The court disagreed, relying on the undisputed evidence presented by the defendant that given the limited number of airplanes with pressurized cabins and the desirability of those planes by flight attendants, granting the plaintiff the opportunity to work only in pressurized airplanes would have transgressed the rights of other flight attendants with more seniority than plaintiff and therefore, was not required. *Id.* at 137; *see also, Stephens*, 2018 WL 8459309, at *6 (plaintiff could not state a prima facie case for failure to accommodate where plaintiff's requested accommodation would violate the rules of a seniority system set forth in a collective bargaining agreement); *Moritz v. Frontier Airlines, Inc.,*147 F.3d 784, 788 (8th Cir. 1998) ( "[i]t is well settled that an employer is under no obligation to reallocate the essential functions of a position that a qualified individual must perform…As a result, Frontier is not required to revise its bidding system...").

Like the accommodation requested in *Santiago,* the accommodation Plaintiff sought— exemption from flights with layovers would have required excusing Plaintiff from the mandatory seniority-based bidding process set forth in the CBA, encroaching upon the vested rights of other flight attendants with more seniority than Plaintiff and violating the CBA's requirements that all active flight attendants bid for flights and accumulate a minimum of 60 credit hours, and that flight attendants never drop below forty-five (45) credit hours when making schedule adjustments using Open Time. *See* SOMF at ¶¶ 2, 4. In addition, excusing Plaintiff from the bidding process would have done far more than enable Plaintiff to obtain the ***same*** workplace opportunities than those without disabilities automatically enjoy and at the expense of her fellow flight attendants.

*See Aubrey v. Koppes,* No. 19- 1153, 2020 WL 5583649, at *7 (10th Cir. Sept. 18, 2020) (emphasis added). Further, allowing Plaintiff to build her own schedule from Open Time would necessarily penalize other flight attendants, regardless of seniority, by taking away alternative and/or additional flight opportunities from other flight attendants looking to modify their schedules. *See* SOMF at ¶ 31.

Regardless of whether or not Plaintiff's requested accommodation violated the terms of the CBA, like the airline in *Stephens*, which could not guarantee that the plaintiff would never be required to take a flight totaling greater than forty-eight (48) hours and the airline in *Santiago*, which could not guarantee that the plaintiff would never be required to take a flight in an aircraft without a pressurized cabin, given that flight attendant schedules were often unavoidably altered based upon unforeseen weather conditions and aircraft maintenance (among other variables), Frontier simply could not have promised that Plaintiff would never end up with a layover. Therefore, Plaintiff's request to build her own schedule from Open Time to avoid flights with layovers was simply not reasonable, particularly given Plaintiff's own repeated testimony that if she had to do layovers and overnights, she would not have her sobriety. *See* IV.B.2 *supra*.

In addition, any argument that Frontier is liable under the ADA for denying Plaintiff's request to work at the GO until she was more secure in her sobriety is a red herring. Granting this request would have resulted in the same above-described issues in that it would have excused Plaintiff, an active flight attendant, from the mandatory, seniority-based bidding process set forth in the CBA. Further, allowing Plaintiff the opportunity to indefinitely work in the GO would not have enabled Plaintiff to fly layovers, but rather removed an essential function of Plaintiff's position, which Frontier was not required to do. In addition, Plaintiff did not know when her condition would improve such that she could fly layovers and therefore, return to her position as a

flight attendant. Frontier was not required to accommodate Plaintiff, allowing her to work at the GO indefinitely. *See* SOMF at ¶ 39; *see also., Aubrey,* 2020 WL 5583649, at *7 (the ADA covers people who can perform their essential job functions *in the present or near future)*; *Boykin v. ATC/VanCom of Colorado, L.P.,* 247 F.3d 1061, 1065 (10th Cir. 2001)*; Taylor v. Pepsi–Cola Co.,* 196 F.3d 1106, 1110 (10th Cir.1999) (keeping plaintiff on indefinite leave unreasonable accommodation where he had informed employer he "could *not* advise when and under what conditions he could return to any work"); *Hoskins v. Oakland County Sheriff's Dept.,* 227 F.3d 719, 729 (6th Cir.2000) (unreasonable to require employer to assign employee to new position that became available "well over a year" after employer became aware of disability); *Sloan v. Tate & Lyle Ingredients Americas LLC*, No. 3:14-CV-406-TAV-HBG, 2016 WL 4179959, at *9 (E.D. Tenn. Aug. 5, 2016) (A "reasonable accommodation does not require the employer to wait indefinitely for an employee's medical condition to be corrected").

Regardless, the ADA does not require an employer to create a new position, light duty or otherwise. *See, Mannan v. Colorado*, No. 18-CV-01844-MSK-SKC, 2020 WL 533734, at *5 (D. Colo. Feb. 2, 2020) (ADA does not "require an employer to create a new position" or provide a permanent or indefinite light duty position). Frontier's creation of temporary light duty assignments at the GO for employees injured on the job did not change that fact or somehow obligate Frontier to do the same for Plaintiff, an active flight attendant whose alcoholism did not equate to an injury on the job and therefore, did not qualify her for Frontier's OJI program.

Indeed, Frontier did not maintain open light-duty job positions for flight attendants injured on the job, nor were light duty assignments job "positions" – instead, Frontier would temporarily assign those injured on the job to perform other employees' duties.  *See* SOMF at ¶¶ 37, 38. Based on well-settled case law, Frontier was not required to do the same for Plaintiff. *See Benson v. Wal-*

37

*Mart Stores E., L.P.,* No. 2:16-CV-114-DBH, 2017 WL 2729491, at *3 (D. Me. June 23, 2017) (granting summary judgment on plaintiff's ADA claim where plaintiff failed to identify any vacant position to which she could transfer as an accommodation and relied only on the fact that defendant created a temporary position for workers injured on the job, emphasizing that an employee must demonstrate that there is an actual vacant position to which she can transfer and that an employer is not required by the ADA to create a new job for an employee); *Severson v. Heartland Woodcraft, Inc.,* No. 14-C-1141, 2015 U.S. Dist. LEXIS 153872, at *25-26 (E.D. Wis. Nov. 12, 2015) ("Heartland may voluntarily create light-duty positions for employees recovering from workplace injuries without becoming compelled to create such positions for employees who are protected by the ADA."); *see also,* Enforcement Guidance: Workers' Compensation and the ADA, Equal Employment Opportunity Commission, No. 915.002 (Sept. 3, 1996) at Question No. 27, available at https://www.eeoc.gov/laws/guidance/enforcement-guidance-workers-compensation-and-ada (if an employer creates light duty positions for employees injured on the job, it does not have do the same as an accommodation for employees who were not injured on the job); *Wade v. Brennan*, 647 F. App'x 412, 415 (5th Cir. 2016) (employer not required to exempt employee from performance of essential function of the job, to find or create a new job for employee or to disadvantage other employees as a result of reassignment).

### D. Frontier is Entitled to Summary Judgment on Plaintiff's Retaliation Claim (Count III).

To establish prima facie case of retaliation under ADA, an employee must show: "(1) he or she engaged in protected activity; (2) he or she was subjected to adverse employment action subsequent to or contemporaneous with the protected activity; and (3) causal connection between the protected activity and the adverse employment action." *Anderson v. Coors Brewing Co.,* 181 F.3d 1171 (10th Cir. 1999). Once the plaintiff establishes a prima facie case, *McDonnell Douglas*

burden-shifting described in Section IV.B *supra* applies.

For the reasons set forth in Section IV.B.3 *supra,* Plaintiff has not and cannot show any causal connection between Plaintiff's requests for accommodation and the termination of her employment. At the time that Frontier terminated Plaintiff's employment, the company had been engaging in the interactive process with Plaintiff and accommodating her alcoholism for ***over a year*** and Plaintiff had admittedly violated the company's Dependability Policy just weeks prior. *See* SOMF at ¶¶ 51, 52, 56; *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1203 (10th Cir. 2006) ("the timing of the termination actually cuts against a finding of pretext by strongly suggesting that [the employer] acted in response to specific and continuing disciplinary problems"). Although Frontier had denied Plaintiff's request to excuse her from flights with layovers, the company had reminded her that she could apply for a continuous leave or additional Intermittent FMLA Leave. *See* SOMF at ¶ 47; *Trujillo-Cummings v. Pub. Serv. Co. of N.M.*, 1999 WL 169336, at *3 (10th Cir. Mar. 29, 1999) (unpublished) (concluding that intervening positive employment actions, including employer's approval of work-at-home arrangement, undermined plaintiff's retaliation claim). Plaintiff did neither and instead, just weeks later, admittedly failed to show up for a scheduled four (4) day trip and admittedly failed to follow Frontier's call-out procedures. *See* SOMF at ¶¶ 51, 52, 56; *Anderson v. Coors Brewing Co.,* 181 F.3d 1171, 1179 (10th Cir. 1999) (intervening acts of misconduct disrupt the causal connection that could be established by proximity). No reasonable jury could conclude that these undisputed material facts amounted to retaliation.

## V.   **CONCLUSION**

For the foregoing reasons, Frontier respectfully requests that this Court grant summary judgment in its favor on Plaintiff's Complaint in its entirety.

Respectfully submitted this 17th day of November, 2020.

/s/ Danielle L. Kitson
Danielle L. Kitson
Carolyn B. Theis
LITTLER MENDELSON, P.C.
1900 Sixteenth Street, Suite 800
Denver, CO  80202
Telephone: 303.629.6200
Facsimile: 303.629.0200
Email:  dkitson@littler.com
        catheis@littler.com

*Attorneys for Defendant Frontier Airlines, Inc.*

## CERTIFICATE OF SERVICE

I certify that on this 17th day of November 2020, I filed and served the foregoing

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** via CM/ECF to the following:

John R. Crone
The Law Office of John R. Crone, LLC
4550 E. Cherry Creek Drive South, #1003
Glendale, Colorado 80246
john@crone-law.com

*Attorney for Plaintiff*

s /Danielle Kitson