## DECLARATION OF GERARDO ARELLANO

I, Gerardo Arellano, declare as follows:

1. I make this declaration based on my personal knowledge. If called to testify under oath, I could do so truthfully and competently.

2. I am employed by Frontier Airlines, Inc. ("Frontier") as the Senior Manager of Talent Acquisition and Employee Relations.

3. I was personally involved in the interactive process that Frontier engaged in with Plaintiff for purposes of attempting to accommodate her alcoholism.

4. I was also personally involved in the decision to terminate Plaintiff's employment with Frontier for violating company policy.

**FLIGHT ATTENDANTS' ESSENTIAL JOB FUNCTIONS**

### Flexible Hours & Schedules

5. A true and correct copy of the Flight Attendant Job Description, is attached as Exhibit 1.

6. Frontier flight attendants are, and at the time of Plaintiff's employment, were expected to work flexible hours/schedules including nights, weekends and holidays, and to travel to all current and future international destinations served by Frontier.

7. This availability was and remains an essential function of the flight attendant position given the airline industry's complicated scheduling systems, which largely depend upon factors beyond the airline's control, including customer demand, seasonal travel, aircraft maintenance, and weather. Inclement weather alone could require consecutive days of travel, including a layover, for crew members, including flight attendants.

### Regular & Reliable Attendance

# EXHIBIT A

8. Given the nature of the airline industry as described above, regular and dependable attendance was and remains critical to Frontier's operations and remains an essential job function of Frontier's flight attendant position. The importance of this expectation was reflected in Frontier's Employee Handbook. See Ex. 2 (Employee Handbook) at FRONTIER AIRLINES (R. BRIGHAM) – 0000365-69.

9. A true and correct copy of Frontier's 2015 Employee Handbook is attached as Exhibit 2.

10. During the time period relevant to this litigation, Frontier's attendance policy, the "Dependability Policy," stated that employees incurring eight (8) unexcused absences, "Occurrences," within a twelve (12) month period would be subject to termination. See Ex. 2 (Employee Handbook) at FRONTIER AIRLINES (R. BRIGHAM) – 0000365-69. A flight attendant who failed to report an absence prior to the scheduled start of their shift incurred two Occurrences. See id.

11. The importance of reliable attendance was also reflected in Frontier's collective bargaining agreement with the Association of Flight Attendants ("AFA") (the "CBA"), which required flight attendants who were unable to report for work because of illness or off-the-job injury to notify Crew Scheduling at least two (2) hours prior to their assigned report time. See Ex. 3 (CBA) at FRONTIER AIRLINES (R. BRIGHAM) – 0000906-07.

12. A true and correct copy of Frontier's collective bargaining agreement with the CBA is attached Exhibit 3.

<u>Compliance with Leaves of Absence Policies</u>

13. To accommodate unexpected circumstances that may require an employee to be absent from work for a period of time, Frontier offered and continues to offer various types of

leaves including, intermittent leave under the Family Medical Leave Act ("FMLA"). *See* Ex. 2 (Employee Handbook) at FRONTIER AIRLINES (R. BRIGHAM) – 0000307-18.

14. Frontier's Leave of Absence Policy emphasized the importance of making reasonable efforts to schedule leave in advance to avoid disrupting Frontier's operations, obtaining approval for their leave from Frontier's Leave of Absence ("LOA") Department, and adhering to Frontier's policy for reporting absences or be subject to disciplinary action, including termination. *See* Ex. 2 (Employee Handbook) at FRONTIER AIRLINES (R. BRIGHAM) – 0000312.

15. When flight attendants' needs were foreseeable, employees were asked to provide thirty (30) days advance notice of the need to take FMLA leave and when thirty (30) day notice was not possible, asked to provide notice as soon as practicable--usually the same day or day after learning of the need for leave--and to comply with Frontier's normal call-in procedures. *See* Ex. 2 (Employee Handbook) at FRONTIER AIRLINES (R. BRIGHAM) – 0000312-13.

16. An employee who failed to provide adequate notice of an unforeseeable leave or failed to comply with Frontier's absence-reporting procedures could be denied leave and/or subject to appropriate disciplinary action, up to and including termination of employment. *See* Ex. 2 (Employee Handbook) at FRONTIER AIRLINES (R. BRIGHAM) – 0000313.

**PLAINTIFF'S EMPLOYMENT WITH FRONTIER**

17. Shortly after commencing her employment with Frontier in 2007, Plaintiff began demonstrating a pattern of attendance issues.

18. True and correct copies of Frontier's letters to Plaintiff regarding concerns about her attendance issues, including written warnings, are attached as Exhibit 4.

<u>Plaintiff's Self-Disclosure & Frontier's Accommodations</u>

19. On or around September 7, 2014, Plaintiff disclosed to Frontier that she had entered an inpatient rehabilitation program for alcoholism.

20. Frontier granted Plaintiff continuous FMLA Leave to complete the sixty (60) day inpatient program.

21. A true and correct copy of Frontier's FMLA Designation Notice for Plaintiff dated September 16, 2014 is attached as Exhibit 5.

22. After completing the in-patient program in October, Plaintiff was cleared to return to work without restrictions by her healthcare provider.

23. A true and correct copy of the Fitness for Duty Certification form, dated November 8, 2014, that Frontier received from Plaintiff is attached as Exhibit 6.

24. Not long after her return to Frontier, Plaintiff began calling out as "sick," incurring Occurrences under the Dependability Policy. *See* Ex. 4 (Attendance Warnings) at FRONTIER AIRLINES (R. BRIGHAM) – 0001725.

25. A few days after receiving a written warning from Frontier, Plaintiff obtained paperwork from her medical care provider for purposes of certifying her for Intermittent FMLA Leave for four (4) days per month.

26. A true and correct copy of the Intermittent FMLA Certification form dated March 10, 2015 that Frontier received from Plaintiff is attached as Exhibit 7.

27. Plaintiff, however, continued to call out "sick" after exceeding the number of authorized Intermittent FMLA Leave days per month and failed to abide by the two (2) hours minimum notice requirement. *See* Ex. 4 (Attendance Warnings) at FRONTIER AIRLINES (R. BRIGHAM) – 0001128, 1729.

<u>Plaintiff's Requests to Customize her Schedule</u>

28. Plaintiff requested the ability to customize her flight schedule to avoid flights with layovers, which she said jeopardized her sobriety.

29. This request was discussed during a meeting I had on June 4, 2015, with Cassie Micklich, Drug & Alcohol Specialist and Plaintiff to discuss Plaintiff's continued exhaustion of Intermittent FMLA, which Plaintiff recorded.

30. Frontier used a court reporter to transcribe Plaintiff's recording and a true and correct copy of that transcript is attached as Exhibit 8.

31. I understand that Plaintiff also had her recording of the June 4, 2015 meeting transcribed. The transcript attached as Exhibit 9 accurately reflects the conversation that took place during that meeting to the best of my recollection.

32. During that meeting, Plaintiff specifically asked if Frontier could adjust her flight schedule so that she could avoid flights with layovers, including overnight layovers, which she said tempted her to drink and therefore, jeopardized her sobriety. *See* Ex. 8 (Frontier's transcript of June 4, 2015 recording) at FRONTIER AIRLINES (R. BRIGHAM) –0004282, 4285, 4293; Ex. 9 (Pl.'s transcript of June 4, 2015 recording) at BRIGHAM LM 00000002, 3, 6.

33. I told Plaintiff that Frontier wanted to support Plaintiff, but could not adjust Plaintiff's schedule to avoid flights with layovers because doing so would violate the seniority-based bidding requirements in the CBA. *See* Ex. 8 (Frontier's transcript of June 4, 2015 recording) at FRONTIER AIRLINES (R. BRIGHAM) –0004283-84; Ex. 9 (Pl.'s transcript of June 4, 2015 recording) at BRIGHAM LM 00000003.

34. Flight attendants' schedules were and remain determined by seniority-based bidding pursuant to the terms of the CBA. Frontier does not and did not customize trip schedules for flight attendants.

35. Pursuant to the CBA at issue in this case, all active Frontier flight attendants were required to bid for the flights posted by Frontier and accumulate a minimum of 60 credit hours. *See* Ex. 3 (CBA) at FRONTIER AIRLINES (R. BRIGHAM) – 0000857-58; 869.

36. After the bidding process closed, awards were determined by seniority such that if multiple flight attendants bid for the same trip, the flight attendant with the greatest seniority was awarded the trip. *See* Ex. 3 (CBA) at FRONTIER AIRLINES (R. BRIGHAM) – 0000915-16.

37. After awards were determined, flight attendants had the ability to add, drop, and/or swap their scheduled flights on a first-come first-served basis using flights available in "Open Time," but were prohibited from dropping below forty-five (45) credit hours. *See* Ex. 3 (CBA) at Frontier Airlines (R. Brigham) 0000869.

38. Frontier has never excused an active flight attendant from the seniority-based bidding rules set forth in the CBA to allow that flight attendant to create their own schedule out of Open Time to avoid certain types of flights.

39. In addition, it was Frontier's understanding that allowing Plaintiff to build her own schedule from Open Time would necessarily penalize other flight attendants, regardless of seniority, by taking away alternative and/or additional flight opportunities from other flight attendants looking to modify their schedules.

40. I told Plaintiff that she could apply for other accommodations, including a personal leave or non-FMLA leave or explore other positions with the company. *See* Ex. 8 (Frontier's Transcript of June 4, 2015 Recorded Meeting) at FRONTIER AIRLINES (R. BRIGHAM) – 0004283, 4284; Ex. 9 (Pl.'s Transcript of June 4, 2015 Recording) at BRIGHAM LM 00000003.

41. Plaintiff indicated that she did not want to transfer internally within Frontier because she preferred being a flight attendant and did not want to relocate and/or give up her

6

seniority rights in exchange for a new position. *See* Ex. 8 (Frontier's Transcript of June 4, 2015 Recorded Meeting) at FRONTIER AIRLINES (R. BRIGHAM) – 0004286-87, 4316; Ex. 9 (Pl.'s Transcript of June 4, 2015 Recording) at BRIGHAM LM 00000013-14.

Plaintiff's Request to Work in Frontier's General Office

42.Plaintiff also asked whether she could temporarily work at the General Office ("GO") doing administrative work without losing her seniority like Frontier employees on On-the-Job ("OJI") program were permitted to do. This request was also discussed during the June 4, 2015 meeting. *See* Ex. 8 (Frontier's Transcript of June 4, 2015 Recorded Meeting) at FRONTIER AIRLINES (R. BRIGHAM) – 0004317; Ex. 9 (Pl.'s Transcript of June 4, 2015 Recording) at BRIGHAM LM 00000014.

43.The CBA included a collectively-bargained for OJI provision, allowing Frontier the discretion to provide flight attendants injured on the job – but only flight attendants injured on the job – with temporary light duty assignments in the GO. *See* Ex. 3 (CBA) at FRONTIER AIRLINES (R. BRIGHAM) – 0000922. These assignments were not open job positions. Rather, when a flight attendant injured on the job was temporarily unable to work, he or she would be permitted to help others in the GO with their own light-duty responsibilities.

44.Consistent with the CBA, work at the GO was only provided as an accommodation to flight attendants in Frontier's OJI program, which I explained to Plaintiff. *See* Ex. 3 (CBA) at FRONTIER AIRLINES (R. BRIGHAM) – 0000922-23.

45.Shortly after the June 4, 2015 meeting, Plaintiff submitted a revised Intermittent FMLA Certification Form, increasing the number of authorized Intermittent FMLA Leave from four (4) days per month twelve (12).

46. A true and correct copy of the Intermittent FMLA Certification form dated May 28, 2015 that Frontier received from Plaintiff is attached as Exhibit 10.

47. Plaintiff, however, continued to exhaust her Intermittent FMLA Leave and incurred Occurrences for calling out "sick." *See* Ex. 4 at FRONTIER AIRLINES (R. BRIGHAM) – 0001133; *see also,* Ex. 11 (Pl.'s Leave File) at FRONTIER AIRLINES (R. BRIGHAM) – 0004842-4871.

48. A true and correct copy of Plaintiff's leave file is attached as Exhibit 11.

49. On October 9, 2015, I met with Plaintiff again along with Jeff Varney, Manager, Inflight Services and Kari Thompson, Manager, Inflight Services, which Plaintiff recorded.

50. Frontier had a court reporter transcribe Plaintiff's recording of the October 9, 2015 meeting and a true and correct copy of that transcription is attached as Exhibit 12.

51. I understand that Plaintiff also had her recording of the October 9, 2015 meeting transcribed. The transcript attached as Exhibit 13 accurately reflects the conversation that took place during that meeting to the best of my recollection.

52. Plaintiff reiterated how she loved being a flight attendant, particularly because of the job's flexibility and asked whether as an accommodation, she could start with a blank schedule and be responsible for building her own schedule up to 60 hours. *See* Ex. 12 (Frontier's transcript of October 9, 2015 recording) at FRONTIER AIRLINES (R. BRIGHAM) – 0004343; Ex. 13 (Pl.'s transcription of October 9, 2015 recording) at BRIGHAM LM 00000032; BRIGHAM LM 00000030; BRIGHAM LM 00000032, 34.

53. I explained that that practice was reserved for flight attendants returning from continuous leaves of absence who had not been active flight attendance during the bidding period and therefore, could not have bid and that allowing Plaintiff to craft her own schedule would

8

violate the CBA's seniority provisions, creating the impression that Frontier was "cherry-picking" flight attendants to have the benefit of building their own schedules without regard to seniority. *See* Ex. 12 (Frontier's transcription of October 9, 2015 recording) at FRONTIER AIRLINES (R. BRIGHAM) – 0004387, 4392, 4395; Ex. 13 (Pl.'s transcription of October 9, 2015 recording) at BRIGHAM LM 00000032

54. I also recall that Ms. Thompson explained to Plaintiff that a lot of flight attendants would have also wanted to start with a clean slate for the month and be allowed to create their own schedule.

55. At this point, Frontier had already been allowing Plaintiff to use Intermittent FMLA for purposes other than those included in her certifications (i.e. relapse prevention counseling and support group meetings) by allowing her to use Intermittent FMLA Leave to avoid flights with overnight layovers. *See* Ex. 6 (Fitness for Duty Certification form dated Nov. 8, 2014); Ex. 7 (FMLA Certification form, dated March 10, 2015); Ex. 10 (Intermittent FMLA Certification form, dated May 28, 2015); Ex. 11 (Pl.'s leave file) at FRONTIER AIRLINES (R. BRIGHAM) – 0004845.

56. A true and correct copy of the email I sent to Ms. Coppedge dated Oct. 15, 2015 regarding making exceptions for Plaintiff is attached as Exhibit 14.

57. I emphasized to Plaintiff that ultimately, Frontier needed employees who could come to work, but reminded her that she could apply for a personal leave as a further accommodation, additional Intermittent FMLA Leave, and/or for another internal position within the company.

58. I also notified Plaintiff that a Flight Training Coordinator position was coming available. Plaintiff, however, repeated her concerns about losing her seniority. *See* Ex. 12

(Frontier's transcription of October 9, 2015 recording) at BRIGHAM LM 0000004397; Ex. 13 (Pl.'s transcription of October 9, 2015 recording) at BRIGHAM LM 00000035, 36.

59. In addition, I recall Ms. Thompson encouraging Plaintiff to regularly check for other internal opportunities on the company's internal Ultipro system.

***Frontier's Termination of Plaintiff's Employment***

60. Less than ten (10) days after the October 9, 2015 meeting, Plaintiff failed to report for a four (4) day trip.

61. A true and correct copy of the email that Frontier received from Plaintiff on October 26, 2015 regarding Plaintiff's admitted failure to notify the LOA Department that she was choosing to use Intermittent FMLA Leave for a four (4) day trip scheduled to begin on October 23, 2015 is attached as Exhibit 15.

62. Regardless, Plaintiff had exhausted her available Intermittent FMLA Leave by October 19, 2015. *See* Ex. 11 (Plaintiff's leave file) at FRONTIER AIRLINES (R. BRIGHAM) – 0004885.

63. Frontier denied Plaintiff's request to use Intermittent FMLA Leave for the four (4) day trip for her lack of timely notice.

64. A true and correct copy of the email that I received from Shelly Leyner on Oct. 27, 2015 regarding the denial of Plaintiff's request to use Intermittent FMLA Leave for lack of timely notice to the LOA Department is attached as Exhibit 16.

65. On or around October 30, 2015, Frontier sent Plaintiff a letter indicating that pursuant to the CBA, an Investigatory Meeting had been scheduled for November 3, 2015 for Plaintiff to attend to discuss her violations of the Dependability Policy. A true and correct copy of that letter is attached as Exhibit 17.

66. Ultimately, based upon Plaintiff's violation of Frontier's Dependability Policy and policy concerning use of intermittent FMLA leave as well as Plaintiff's violation of the CBA's requirements for "Sick Calls," Frontier believed that Plaintiff was not a dependable or reliable employee. *See* Ex. 4 (Attendance Warnings); Ex. 11 (Pl.'s Leave File).

67. On November 11, 2015, Frontier informed Plaintiff that it was terminating her employment effective immediately for incurring ten (10) Occurrences within a twelve (12) month period in violation of the Dependability Policy under which eight (8) Occurrences subjected an employee to termination.

68. A true and correct copy of the termination letter Frontier sent to Plaintiff is attached as Exhibit 18.

*I have read this declaration and declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.*

Dated: November 17, 2020

/s/ Gerardo Arellano
Gerardo Arellano