**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 19-cv-03417-WJM-STV

REBECCA BRIGHAM,

      Plaintiff,

v.

FRONTIER AIRLINES, INC.,

      Defendant.

---

**DEFENDANT'S RESPONSE TO PLAINTIFF'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

      Defendant Frontier Airlines, Inc. ("Defendant" or "Frontier"), respectfully submits this Response in Opposition to Plaintiff Rebecca Brigham's ("Plaintiff" or "Brigham") Motion for Partial Summary Judgment (Dkt. No. 36) ("Plaintiff's Motion"), stating as follows:

**I.      INTRODUCTION**

      This Court should deny Plaintiff's Motion because no reasonable jury could conclude, based upon the record in this case and Plaintiff's own admissions in deposition, that Plaintiff's alcoholism substantially limited her in any major life activity that would render her disabled for purposes of protection under the Americans with Disabilities Act as Amended ("ADAAA"). Even assuming Plaintiff suffered from a qualifying disability (which she did not), Plaintiff rejected Frontier's proposed reasonable accommodations that would have enabled her to perform the essential functions of her job as a flight attendant—additional intermittent leave under the Family and Medical Leave Act ("IFMLA"), a continuous leave of absence until Plaintiff was

1

more secure in her sobriety, and/or internal placement in a vacant position within Frontier for which she was minimally qualified. Plaintiff therefore was not a "qualified individual" for purposes of the ADAAA's protection.

Instead, Plaintiff continued to insist on her <u>preferred</u>, unreasonable accommodations, namely that she be excused from the Collective Bargaining Agreement's ("CBA") seniority bidding requirements and relieved of flying any flights with layovers (an essential function of her job as a flight attendant); that Frontier create a position for her in its General Office ("GO"); and/or that she be given temporary light-duty work in the GO. Regarding the GO, Frontier did not have open positions for which Plaintiff was minimally qualified at the time, a fact not in dispute. As a result, transferring Plaintiff to the GO would have required Frontier to create a new position for Plaintiff. The creation of a new position is not considered a "reasonable accommodation" under the ADAAA as a matter of law. Accordingly, Frontier's denial of Plaintiff's request to transfer to the GO did not violate the ADAAA as Plaintiff claims.

Additionally, it is undisputed that Frontier only offered temporary light duty assignments in the GO to those flight attendants injured on the job, in accordance with the CBA's provisions and Frontier's on-the-job-injury program. It is well settled under the law – including the EEOC's enforcement guidance – that Frontier was not required to provide Plaintiff with a light-duty assignment under the undisputed facts here, where Frontier limited such assignments to flight attendants injured on the job.

Regarding Plaintiff's request to be relieved of the seniority bidding requirements in the CBA, and relieved of all flights with layovers, the law is clear that a request to violate seniority bidding requirements is unreasonable. In addition, allowing Plaintiff to skip seniority bidding

(which is not allowed for in the CBA) and build her own flight schedule to avoid flights with layovers, or removing such flights from Plaintiff schedule post-bidding, would have relieved Plaintiff of an essential function of her job. Relieving an employee from an essential function of their job is also not considered a "reasonable accommodation" under the ADAAA as a matter of law. For these reasons and those set forth below, this Court should deny Plaintiff's Motion [Dkt. No. 36].

## II.   DEFENDANT'S RESPONSE TO MOVANT'S STATEMENT OF MATERIAL FACTS

1.      Admitted.

2.      Denied.[1] It is undisputed that, shortly after commencing her employment with Frontier, Plaintiff began demonstrating a pattern of attendance issues to which Frontier responded with the following written warnings:

|     |                                             |
| --- | ------------------------------------------- |
| i.      | November 17, 2008: coaching and counseling. |
| ii.     | December 29, 2008: coaching and counseling. |
| iii.    | February 16, 2009: coaching and counseling. |
| iv.     | October 21, 2009: coaching and counseling.  |
| v.      | January 12, 2010: coaching and counseling.  |
| vi.     | March 29, 2012: written warning.            |
| vii.    | July 3, 2013: documented verbal warning.    |
| viii.   | September 3, 2013: written warning.         |
| ix.     | September 28, 2013: final warning.          |
| x.      | October 18, 2013: final warning.            |
| xi.     | March 6, 2015: documented verbal warning.   |
| xii.    | March 12, 2015: written warning.            |
| xiii.   | March 16, 2015: written warning.            |
| xiv.    | May 12, 2015: written warning.              |
| xv.     | May 26, 2015: final warning.                |

---

[1] While Frontier disputes Plaintiff's characterization of her performance prior to her self-disclosure, the dispute is not material to any legal claim – Frontier did not base its termination or accommodation decisions on any past performance deficiencies. *See Zoutomou v. Copper*, 550 F. App'x 647, 650 (10th Cir. 2013) (citing FED. R. CIV. P. 56(c)) (summary judgment is only appropriate where there are genuine issues of <u>material</u> fact).

     xvi.       July 3, 2015: final warning.
     xvii.     August 7, 2015: final warning.
     xviii.    November 3, 2015: investigatory meeting.
     xix.      November 11, 2015: termination.

*See* Dkt. No. 38-1 (Arellano Decl.) at ¶¶ 17-18; *see also,* Dkt. No. 38-21 (Excerpts from Pl.'s Dep. Tr.) at 45:10-48:9; Dkt. No. 36 (Plaintiff's Motion) at p. 4, ¶ 3 (conceding Frontier issued written warnings to Plaintiff regarding her attendance issues).

3.     Denied as to the first sentence. Frontier issued written warnings to flight attendants, including Plaintiff, consistent with its Dependability Policy; such warnings were disciplinary in nature as the Policy itself states. *See* Dkt. No. 38-4 (Frontier Employee Handbook) at Frontier Airlines (R. Brigham) – 0000368 (describing verbal warnings, written warnings, final suspension, and termination as "Corrective Action" under the Dependability Policy). As to the second sentence, Frontier objects that the material cited to support Plaintiff's characterization of the opinions of others cannot be presented in a form that would be admissible at trial. Fed. R. Civ. P. 56(c)(2). Frontier denies that flight attendants viewed the Dependability Policy as unreasonable.[2]

4.     Admitted.

5.     Admitted upon information and belief.

6.     Admitted upon information and belief.

7.     Denied. During her deposition, Plaintiff testified unequivocally that her alcoholism has not substantially limited her ability to perform a major life activity since September 5, 2014, the date on which she became sober; she has not had a drink since. *See* Dkt. No. 38-21 (Excerpts from Pl.'s Dep. Tr.) at 67:20-68:4; Tr. 68:17-20; 70:23-71:5. Plaintiff's own

---

[2] Again, any dispute with respect to these facts is immaterial to the legal analysis.

deposition testimony further establishes that her alcoholism never substantially limited her ability to perform her job as a flight attendant, and that she was always able to perform the essential functions of her job while on duty. *See* Dkt. No. 38-21 (Excerpts from Pl.'s Dep. Tr.) at 67:20-68:4; Tr. 68:17-20; 70:2-12; 70:21-71:5; Dkt. No. 36-3 (Excerpts from Pl.'s Dep. Tr.) at 67:20-68:16; *see also,* Dkt. No. 38-24 (Transcript of Recorded Meeting on Nov. 3, 2015) at BRIGHAM LM 00000045.

8.      Admitted upon information and belief that Plaintiff did not violate any rules surrounding alcohol. Denied that Plaintiff undertook "great efforts" to do so, based on her own deposition testimony that her alcoholism has not substantially limited her ability to perform a major life activity since September 5, 2014. *See* Dkt. No. 38-21 (Excerpts from Pl.'s Dep. Tr.) at 67:20-68:4; Tr. 68:17-20; 70:23-71:5.

9.      Frontier objects on the grounds that Paragraph 9 states a legal conclusion regarding the phrase "capable of performing all essential functions of her job with reasonable accommodation." Denied that Plaintiff was capable of performing her essential job functions, given her inability to fly layovers and ultimate termination of employment due to attendance infractions. *See* Dkt. No. 38-21 (Excerpts from Pl.'s Dep. Tr.) at 67:5-68:4; Tr. 68:17-20; 70:2-12; 70:21-71:5; *see also*, Dkt. No. 38-1 (Arellano Decl.) at ¶¶ 5-7; Dkt. No. 38-2 (Frontier Airlines Job Description); Dkt. No. 36 (Plaintiff's Motion) at p. 7 at ¶¶ 4, 9; Dkt. No. 38 at p. 11 at ¶ 39.

10.     Denied. Frontier was aware that Plaintiff suffered from alcoholism, and that alcoholism could be considered a disability under the ADAAA, but Frontier did not consider Plaintiff to be substantially limited in any major life activity or herself disabled under the

ADAAA – Frontier believed, as Plaintiff represented, that she had not had a single drink after September 5, 2014. *See* Declaration of Gerardo ("Jerry") Arellano, attached as Exhibit A at ¶ 5.

11.     Denied that Plaintiff had a disability or was regarded as having a disability. *See* RSOF ¶ 10 *supra*.  Frontier admits the remainder of Paragraph 11 upon information and belief.

12.     Frontier admits that Plaintiff has accurately quoted the document cited. Frontier denies that Plaintiff's treatment plan "required" her to avoid overnight trips or trips longer than a given work day. The treatment plan identifies Plaintiff's "Treatment, Modality, and Frequency" as follows: "1. Individual treatment, one to two times monthly for six months (to be evaluated at that time). 2. Group therapy, weekly for six months (to be evaluated at that time)," notably making no mention of avoiding layovers as part of Plaintiff's "treatment." Dkt. No. 36-8 (Treatment Plan). Under the section titled "Additional Information," the treatment plan states "*Rebecca* has identified triggers to cravings and opportunities to consume alcohol and those are on overnight trips or anything longer than a given work day in her professional arena. At this time *it would not be a good idea to encourage a vulnerable situation* with a work schedule that serves as a temptation, *if possible*." *See* Dkt. No. 36-8 (Treatment Plan) (emphasis added); *see also,* Dkt. No. 38-24 (Transcript of Recorded Meeting on Nov. 3, 2015) at BRIGHAM LM 00000045 (Plaintiff's testimony that she drank off-duty during layovers). The "Additional Note" is nothing more than a suggestion, not requiring anything. Frontier does not dispute that the treatment plan states that the plan and Plaintiff's progress towards meeting her goals as they are reflected in the plan "will be reviewed every 90 days." Dkt. No. 36-8 (Treatment Plan).

13.     Frontier denies that Plaintiff's non-compliance with her treatment plan would have required or necessarily resulted in Frontier's termination of her employment. *See* Ex. A

(Arellano Decl.) at ¶ 11. Frontier admits, however, that Frontier had the discretion to discipline Plaintiff for any non-compliance with the treatment plan, and that such discipline could include the termination of employment. *See* Dkt. No. 36-9.

14.    Admitted.

15.    Frontier denies that anything proposed by Plaintiff constituted an "accommodation" for purposes of the ADAAA in that to be an accommodation, the adaptation must actually be effective. *Equal Employment Opportunity Comm'n v. JBS USA, LLC,* 115 F. Supp. 3d 1203, 1231 (D. Colo. 2015) ("in ordinary English the word 'reasonable' does not mean 'effective.' It is the word 'accommodation,' not the word 'reasonable,' that conveys the need for effectiveness."), quoting *U.S. Airways v. Barnett,* 535 U.S. 391, 400 (2002).[3] Plaintiff requested one specific accommodation—that she be excused from handling flights with layovers. Frontier does not dispute that Plaintiff proposed three ways Frontier could facilitate the accommodation, which Frontier admits are accurately described by Plaintiff as (1) transferring Plaintiff to the General Office ("GO"), which would have excused her from handling any type of flight, including flights with layovers, (2) allowing Plaintiff to skip the bidding process required by the CBA and start each month with a blank schedule, so that she could build her own flight schedule from Open Time or the Trade Board that would avoid flights with layovers, and (3) having Frontier remove overnight trips from her schedule post-bidding. *See* Dkt. No. 36-3 (Excerpts from Pl.'s Dep. Tr.) at 72:1-4; 72:8-15; 72:18-24; 76:10-16.

16.    Frontier objects to the allegations in Paragraph 16 on the grounds that they are immaterial, in that Plaintiff's request to transfer to the GO was unreasonable because there were

---

[3] Frontier is not conceding that the requests identified by Plaintiff were in fact "accommodations" for purposes of the ADAAA.

no vacant positions in the GO, Plaintiff had already been sober for approximately nine (9) months, and Plaintiff did not and could not have provided Frontier with a date by which Plaintiff expected to be secure enough in her sobriety as a flight attendant. *See* Dkt. No. 38-1 (Arellano Decl.) at ¶ 43 ("These assignments were not open job positions"); Dkt. No. 38-21 (Excerpts from Pl.'s Dep. Tr.) at 77:14-17; Dkt. No. 38-21 38-21 (Excerpts from Pl.'s Dep. Tr.) at 76:19-77:22. Therefore, Frontier's decision to deny the request did not violate the ADAAA. Frontier admits that Frontier denied Plaintiff's request because there were no vacant positions in the GO, and because Plaintiff was not eligible for a temporary light-duty assignment under Frontier's On-The-Job-Injury ("OJI") Program. *See* Dkt. No. 38-1 (Arellano Decl.) at ¶ 42-44.

17.   Frontier denies that the CBA permitted the temporary assignment of active flight attendants to light-duty work in the GO, other than through the OJI Program.[4] *See* Dkt. No. 38-5 (CBA "On-the-Job Injury" Section).

18.   Denied.   The CBA's OJI provisions allow for light-duty assignments only for flight attendants injured on the job. *See* Dkt. No. 38-5 (CBA "On-the-Job Injury" Section). Further, Frontier did not maintain open light-duty job positions for flight attendants injured on the job, nor were light duty assignments job "positions" – instead, Frontier would temporarily assign those injured on the job to perform other employees' duties. *See* Dkt. No. 38-1 (Arellano Decl.) at ¶ 43.

---

[4] Flight attendants were considered inactive and therefore, ineligible to bid if they have been granted Frontier-approved continuous leaves such as Leave of Absence ("LOA"), Medical Leave ("MED"), Family Medical Leave Act ("FMLA") Leave, OJI Leave, etc. *See* Dkt. No. 38-1 (Arellano Decl.) at p. 4 at ¶¶ 5-7.

19.     Denied.  As the spreadsheet itself makes clear, with to respect to <u>flight attendants</u>, as it turns out, Frontier since 2012 has never provided light duty assignments to any flight attendant (injured on the job or not) as an accommodation, nor has Frontier placed any flight attendant (injured on the job or not) into a vacant ground position as an accommodation, although Frontier's On-the-Job Injury Program ("OJI") would have allowed for temporary light duty assignments if requested by flight attendants injured on the job *See* Dkt. No. 36-11 at Tab 2012 at Lines 12, 15, 22; Tab 2013 at Lines 11-13, 20-12; Tab 2014 at 18, 30; Tab 2015 at 8-13; Tab 2016 at 9-13, 16; Ex. 1 at Response to Request for Production No. 17 and Frontier Airlines (R. Brigham – 0004809-CONFIDENTIAL). In addition, as reflected in Dkt. No. 36-11 and Ex. 1, since 2012, Frontier has never transferred a flight attendant to a temporary ground assignment in Frontier's General Office ("GO") as an accommodation. Further, the spreadsheet makes clear that no <u>flight attendants</u> were offered modified work schedules. *Id.* Instead, only non-comparable workers in ground positions (who were not subject to a collective bargaining agreement) were offered schedule modifications. *See* Ex. A (Arellano Decl.) at ¶ 16. Flight attendants' schedules are controlled exclusively by the CBA, and governed by the seniority bidding requirements of the CBA, unlike non-unionized employees working on the ground. *See* Ex. A (Arellano Decl.) at ¶ 16.

20.     Denied. Plaintiff was not comparable to non-unionized employees offered temporary light duty assignments and/or modified schedules because, among other things, (1) she did not have a temporary on-the-job injury; and (2) she was a flight attendant subject to a CBA and the requirements of a seniority bidding system (unlike those ground workers not subject to a CBA). *See* Ex. A (Arellano Decl.) at ¶ 16. Plaintiff happened to be the only

individual reflected on the spreadsheet who was diagnosed with alcoholism, but that was certainly not the only difference between Plaintiff and others on the spreadsheet. *See* RSOF 19 *supra*; Ex. A (Arellano Decl.) at ¶¶ 14, 16; Excerpts from Arellano (Corp. Rep.) Dep. Tr., attached as Ex. B, at 95:17-23; 123:21-124:9; 149:21-150:7; Dkt. No. 38-23 (Email) ("the GO is only to accommodate OJI").

21.     Denied that Frontier did not reasonably accommodate Plaintiff. Frontier provided Plaintiff with both continuous and intermittent leave and proposed additional reasonable accommodations, which Plaintiff rejected, including transferring to a vacant or soon-to-be vacant position within Frontier, applying for additional IFMLA, or applying for a continuous leave until Plaintiff was more secure in her sobriety. *See* Dkt. No. 38 at p. 8-10 at ¶¶ 19, 25, 32-36. Admitted that Plaintiff accrued absences leading to termination of employment under Frontier's attendance policy, but denied that she was "required" to comply with the suggestion in her treatment plan that she may not want to fly layovers. *See* RSOF ¶ 12 *supra*. Frontier admits that in the event that Plaintiff failed to follow her treatment plan, the company had the discretion to take corrective action, including termination. *See* Dkt. No. 36-9. Frontier denies, however, that Plaintiff's treatment required Frontier to terminate Plaintiff's employment in the event that she failed to abide by the terms of her treatment plan. *See* RSOF ¶ 12 *supra*. Frontier also denies that the treatment plan prohibited Plaintiff from taking flights with layovers. *See* RSOF ¶ 12 *supra*. The treatment plan, which was not provided to Frontier until approximately 6 months after Plaintiff had been discharged from her in-patient treatment program and returned to Frontier— only indicated to Frontier, that to the extent possible, Frontier should not "encourage" Plaintiff to take overnight flights, because Plaintiff herself had indicated to her therapist, the treatment

plan's author, that she was tempted to drink while on layovers. *See* RSOF ¶ 12; *see* Ex. A (Arellano Decl.) at ¶¶ 8-11. Frontier admits that Plaintiff accrued absences constituting violations of Frontier's attendance policy, which ultimately culminated in Frontier's decision to terminate her employment.

22.     Frontier objects that the declaration and matters cited in support cannot be presented in a form that would be admissible at trial. Instead, it constitutes inadmissible "me too" evidence, which this Court has held is only admissible "if the plaintiff can demonstrate that 'such past discriminatory behavior by the employer is close in time to the events at issue in this case, the same decisionmakers were involved, the witness and the plaintiff were treated in a similar manner, and the witness and the plaintiff were otherwise similarly situated.'" *Parker v. Nat'l R.R. Passenger Corp.,* 214 F. Supp. 3d 19, 30 (D.D.C. 2016), aff'd, 696 F. App'x 522 (D.C. Cir. 2017), quoting *Nuskey v. Hochberg*, 723 F. Supp. 2d 229, 233 (D.D.C. 2010) and citing *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 385 (2008); *Hendricks v. Geithner*, 568 F.3d 1008, 1010 (D.C. Cir. 2009); s*ee* Fed. R. Civ. P. 56(c)(2). Here, according to Mr. St, Hilaire's own declaration, he was (i) supervised by Christopher Benedict, (ii) lied to Frontier about the fact that he had received treatment for alcoholism from a treatment facility, (iii) was required by Frontier to take routine drug tests, (iv) refused a drug test in violation of Frontier policy, (v) never requested an accommodation, and (vi) voluntarily left Frontier in April 2016, approximately five (5) months after the termination of Plaintiff's employment. *See* Dkt. No. 36-12 (St. Hilaire Decl.) at ¶¶ 6, 7, 12, 14. In contrast, Plaintiff was not supervised by Mr. Benedict, self-disclosed her alcoholism and treatment, never refused to take a drug test, requested an accommodation, and was involuntarily discharged for attendance infractions. *See* Ex. A

(Arellano Decl.) at ¶¶ 18-19. In sum, as reflected by both Plaintiff's allegations and Mr. St. Hilaire's declaration, Plaintiff was not similarly situated to or treated similarly to Mr. St. Hilaire. The "me too" evidence concerning Mr. St. Hilaire's employment with Frontier is not probative and therefore, inadmissible at trial. In any event, Frontier denies the allegations in Paragraph 22 – Frontier did not unlawfully discriminate against or harass Mr. St. Hilaire. *See* Ex. A (Arellano Decl.) at ¶ 20.

23.     Frontier objects to the allegations set forth in Paragraph 23 on the grounds that what constitutes a "reasonable accommodation" is a legal issue, not a fact issue. In addition, Frontier objects on the grounds that the declaration cited in support cannot be presented in a form that would be admissible at trial. *See* Fed. R. Civ. P. 56(c)(2). Ms. Kernen's affidavit constitutes "me too" evidence, which this Court has held is only admissible "if the plaintiff can demonstrate that 'such past discriminatory behavior by the employer is close in time to the events at issue in this case, the same decisionmakers were involved, the witness and the plaintiff were treated in a similar manner, and the witness and the plaintiff were otherwise similarly situated.'" *Parker,* 214 F. Supp. 3d at 30, quoting *Nuskey*, 723 F. Supp. 2d at 233 and citing *Sprint,* 552 U.S. at 385; *Hendricks*, 568 F.3d at 1010. At the outset, the accommodations identified in Ms. Kernen's declaration related to pregnancy and lactation, which are not disabilities recognized under the ADAAA.  *See* Dkt. No. 36-13 (Kernen Decl.) at ¶¶ 20, 26. Further, Ms. Kernen voluntarily left Frontier in July 2016—approximately 8 months after Frontier terminated Plaintiff's employment. *See* Dkt. No. 36-13 (Kernen Decl.) at ¶ 28; Ex. A (Arellano Decl.) at ¶ 23. Further, the accommodation Ms. Kernen claims she requested—a leave of absence—was *offered* to Plaintiff who rejected it. *See* Dkt. No. 38-1 (Arellano Decl.) at ¶¶ 32-36. Ms. Kernen did not suffer from

the same or similar medical condition, did not request the same accommodations, and was not discharged due to attendance infractions (or at all). Ms. Kernen was not similarly situated to or treated similarly to Plaintiff. Therefore, "me too" evidence concerning Ms. Kernen's employment with Frontier is not probative and therefore, inadmissible at trial. In any event, Frontier denies the allegations in Paragraph 23 – Frontier did not unlawfully deny Ms. Kernen reasonable accommodations. *See* Ex. A (Arellano Decl.) at ¶ 24.

24.    Frontier objects to the allegations set forth in Paragraph 24 on the grounds that the EEOC determination cited cannot be presented in a form that would be admissible at trial. *See* Fed. R. Civ. P. 56(c)(2). To begin, unlike a discrimination case pending before the judiciary, the EEOC needs only "reasonable cause" to issue a determination favorable to the complainant. This lesser standard means that the complainant need not actually prove their case as required in a court of law. For this reason and others, EEOC Determinations are not automatically admissible at trial; instead, like any evidence, their admissibility is subject to the general balancing test set forth in the Federal Rules of Evidence. *See Tuffa v. Flight Servs. & Sys., Inc.,* 644 F. App'x 853, 857 (10th Cir. 2016) ("Rule 803(8) addresses hearsay, but does not vitiate Rule 403 or imply that agency findings will always be more probative than prejudicial"), citing *Coleman v. Home Depot, Inc.,* 306 F.3d 1333, 1345 (3d Cir. 2002) ("[W]e decline Coleman's invitation to conclude that, based on the presumption of admissibility under Rule 803(8)(C), EEOC Letters of Determination are *per se* more probative than prejudicial under Rule 403...."); *Cortes v. Maxus Expl. Co.,* 977 F.2d 195, 201 (5th Cir.1992) (concluding that an EEOC determination, to be admissible, must pass the test under Rule 403 even if the EEOC determination satisfies the hearsay exception in Rule 803(8)); *see also, E.E.O.C. v. Loral*

*Aerospace Corp.,* 162 F.3d 1172, 1998 WL 769820, 2 (10th Cir. 1998) (finding no abuse of the trial court's discretion in excluding an EEOC Determination at trial); *Palage v. HCA-HealthONE, LLC,* No. 11-CV-01285-LTB-CBS, 2012 WL 5493998, at *10 (D. Colo. Nov. 13, 2012) ("EEOC Determinations are not admissible in this case")*; Simms v. Oklahoma ex rel. Dept. of Mental Health & Substance Abuse Servs.,* 165 F.3d 1321, 1331 (10th Cir.1999) ("when the independent facts before the district court judge fail to establish a genuine issue of material fact, a favorable EEOC letter of determination does not create one") (abrogated on other grounds).

Here, the Determination is inadmissible because it lacks probative value and is instead, highly prejudicial. As facially evident from the Determination itself, the EEOC failed to address the threshold inquiry for all ADAAA claims—whether Plaintiff was in fact disabled. *See* Exhibit 14 to Plaintiff's Motion. The EEOC also failed to make any determination with respect to whether Plaintiff was actually qualified to perform the essential functions of her job as a flight attendant with or without a reasonable accommodation. *See id*. Instead, the EEOC concluded that because Plaintiff had "presented [Frontier] with medical documentation, a treatment plan, and her own explanation of why this accommodation was necessary for her continued employment" as well as "several possible accommodations…which had the support of the Vice President of the Flight Attendants' union," Frontier's decision to deny Plaintiff "a reasonable accommodation" and ultimately discharge her employment violated the ADA. Not only did the EEOC fail to engage in any legal analysis, the EEOC's determination was based on false assumptions that have not been borne out by the actual evidence in this case. For instance, the EEOC's determination relies upon the mistaken fact that the union supported the accommodation

sought by Plaintiff, which the union's representative unequivocally denied in deposition. *See* Dkt. No. 38-22 (Excerpts from Prince Dep. Tr.) at 58:17-59:7. Finally, Plaintiff herself has admitted that Frontier representatives met with Plaintiff on multiple occasions to discuss potential accommodations Frontier could provide Plaintiff and that during these meetings, Frontier encouraged Plaintiff to look for and apply for other internal positions within Frontier that would not require her to fly, apply for additional intermittent FMLA, and/or apply for another continuous leave of absence, all of which Plaintiff concedes she refused to do. *See* Dkt. No. 38-1 (Arellano Decl.) at ¶ 40; Dkt. No. 38-21 (Excerpts from Pl.'s Dep. Tr.) at 64:1-65:7; Dkt. No. 38-15 (Transcript of Recorded Meeting on October 9, 2015) at BRIGHAM LM 00000020-21. In sum, given the likelihood (or even the mere possibility) that a jury would find the EEOC's Determination persuasive despite its lack of probative value, the EEOC Determination is inadmissible at trial.

### III.     STANDARD OF REVIEW

Summary judgment is appropriate where the "pleadings, depositions, answers to interrogatories, admissions on file, or affidavits [show] that there is no genuine issue as to any material fact." *See Zoutomou v. Copper*, 550 F. App'x 647, 650 (10th Cir. 2013) (citing FED. R. CIV. P. 56(c)). "Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one party must prevail as a matter of law." *E.E.O.C. v. Western Trading Co., Inc.*, No. 10–cv–02387–WJM–MEH, 2012 WL 1460025 at *1 (D. Colo. April 27, 2012), citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248–49 (1986). "A fact is 'material' if it pertains to an element of a claim or defense; a factual dispute is 'genuine' if the evidence is so contradictory

that if the matter went to trial, a reasonable party could return a verdict for either party." *Western Trading Co.*, 2012 WL 1460025 at *1, citing *Anderson,* 477 U.S. at 248.

"The burden of showing that no genuine issue of material fact exists is borne by the moving party" and the Court must resolve factual ambiguities against the moving party. *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000).

## IV.    ARGUMENT

### A.    Plaintiff Was Not Disabled Within The Meaning Of The ADAAA.

Plaintiff's claim that "there can be no reasonable dispute that Ms. Brigham was 'disabled' within the meaning of the ADA," ignores both the law and record, including Plaintiff's own testimony. *See infra* at Section IV.A.2. For the reasons set forth below and those set forth in Frontier's Motion for Summary Judgment (Dkt. No. 38) at pp. 18-20, which Frontier incorporates by reference, the Court should deny Plaintiff's Motion because no reasonable jury could conclude based on the evidence that Plaintiff was disabled for purposes of the ADAAA.

### 1.    Status As An Alcoholic Does Not Automatically Render A Person Disabled Under The ADAAA.

A plaintiff's status as an alcoholic does not automatically render her disabled, and therefore protected, under the ADAAA. *Kitchen v. BASF,* 343 F. Supp. 3d 681, 688–89 (S.D. Tex. 2018), *report and recommendation adopted,* No. 3:17-CV-00040, 2018 WL 5723147 (S.D. Tex. Nov. 1, 2018), *aff'd,* 952 F.3d 247 (5th Cir. 2020) ("[T]here is no *per se* rule that categorizes recovering alcoholics ... as disabled" and "mere status as an alcoholic or substance abuser does not necessarily imply [the requisite] 'limitation' [for a disability determination]."). Instead, the plaintiff must demonstrate that their alcoholism substantially limited their ability to perform a major life activity. *See id.* (a case-by-case evaluation is necessary "to determine

whether a particular plaintiff, who is a recovering alcoholic, qualifies as disabled, because of his addiction."), quoting *Radick v. Union Pac. Corp.*, No. 4:14-CV-02075, 2016 WL 639126, at *5 (S.D. Texas Jan. 25, 2016).

> **2.      Plaintiff Herself Testified That Her Alcoholism Was Not Substantially Limiting.**

A person is "disabled" under the ADAAA only if they suffer from "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). *Allen v. SouthCrest Hosp.,* 455 F. App'x 827, 831 (10th Cir. 2011), quoting *Berry v. T– Mobile USA, Inc.*, 490 F.3d 1211, 1216 (10th Cir. 2007) (internal quotation marks omitted) (emphasis added). "For a physical or mental impairment to be "substantially limiting" the individual must be: '(i) Unable to perform a major life activity that the average person in the general population can perform; or (ii) Significantly restricted as to the condition, manner or duration under which [the] individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.'" *Burris v. Novartis Animal Health U.S., Inc.,* 309 F. App'x 241, 250 (10th Cir. 2009), citing *Nielsen v. Moroni Feed Co*., 162 F.3d 604, 611 n. 11 (10th Cir. 1998), quoting 29 C.F.R. § 1630.2(j)(1)). Major life activities "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2). "Not all impairments are serious enough to be considered disabilities under the statute" and therefore, whether an individual's "impairment substantially limits a major life activity requires an individualized assessment." *Moore v. Centralized Mgmt. Servs., LLC,* No. CV 19-

1592, 2020 WL 972711, at *4 (E.D. La. Feb. 28, 2020), reconsideration denied, No. CV 19-1592, 2020 WL 2037191 (E.D. La. Apr. 28, 2020), at *4, quoting 29 C.F.R. § 1630.2(j)(1)(i) & (iv).

To demonstrate that an impairment is substantially limiting, a plaintiff must show that he is "unable to perform the activity or is significantly restricted in the ability to perform the major life activity compared to the general population." *Gomez v. Sam's W., Inc.,* No. 16-CV-02240-CMA-STV, 2018 WL 3475167, at *6 (D. Colo. July 19, 2018), citing *Lusk v. Ryder Integrated Logistics,* 238 F.3d 1237, 1240 (10th Cir. 2001). "Where an impairment is not so severe that it is 'substantially limiting on its face,' the plaintiff must present 'evidence comparing [his] ... restrictions to that of an average person.'" *Id.* (internal citations and quotation omitted). Unless a plaintiff can show that her impairment reduces his capabilities significantly below those of the average person, she is not deemed "disabled" under the Act." *Id.* (internal citations and quotation omitted)*.*

During her deposition, Plaintiff testified unequivocally that (i) her alcoholism has ***never*** substantially limited her ability to perform her job as a flight attendant; (ii) since September 5, 2014 (Plaintiff's "sobriety date") through the end of her employment with Frontier, Plaintiff was always able to perform the essential functions of her job as a flight attendant while on duty; and (iii) since September 5, 2014, Plaintiff has been sober and alcoholism has not impacted her daily life activities or inhibited her ability to function. RSOF at ¶ 7. This testimony alone not only undermines her argument that it is undisputed that Plaintiff was disabled for purposes of the ADAAA, but is undeniably fatal to her claims.

While Plaintiff's counsel unsuccessfully attempted to rehabilitate his client, he obtained

only the conclusory testimony that Plaintiff "had trouble caring for [herself], eating, sleeping, concentrating, and working." SOF at ¶ 7. Such testimony is insufficient for purposes of satisfying Plaintiff's burden of demonstrating that her alcoholism substantially limited her ability to perform daily activities. *See Burch v. Coca-Cola Co.,* 119 F.3d 305, 316 (5th Cir. 1997) (holding plaintiff's testimony that he experienced hangovers and that his ability to talk, walk, think, remember things, and sleep were affected by his drinking were insufficient for purposes of demonstrating that his alcoholism substantially limited his daily activities, explaining "Although Burch's alcoholism assuredly affected how he lived and worked, far more is required to trigger coverage under § 12102(2)(A).") *Id* at. 316 (internal citation and quotation omitted).

### 3. The Testimony Plaintiff Relies Upon Is Mischaracterized And Directly Contradicted By Plaintiff Herself.

Plaintiff claims that Frontier conceded that Plaintiff was disabled under the ADAAA, citing to testimony where Frontier's corporate representative confirmed that Frontier considers alcoholism to be a disability that could be covered by the ADAAA. *See* Dkt. No. 36 (Plaintiff's Motion) at p. 19. To begin, testimony that Frontier acknowledges alcoholism as a possible disability is insufficient for purposes of demonstrating that Frontier believed Plaintiff's alcoholism substantially limited her ability to perform daily activities, and therefore was disabling for purposes of the ADAAA. *See Burch,* 119 F.3d at 315 (expert testimony that alcoholics are disabled under the ADA was insufficient for purposes of demonstrating that the plaintiff, an alcoholic, was disabled under the ADA because the expert "testified only in general terms about alcoholics as a class" and as a result "shed no light on the individualized inquiry required by the ADA"); *see also, Moore v. Centralized Mgmt. Servs., LLC*, No. CV 19-1592,

2020 WL 972711, at *7 (E.D. La. Feb. 28, 2020), *reconsideration denied*, No. CV 19-1592, 2020 WL 2037191 (E.D. La. Apr. 28, 2020) (concluding that communications between the plaintiff and defendants' human resources consultant in which the consultant asked the plaintiff for documentation of his treatment to substantiate his ADA claim and stating that she believed recovering alcoholics seeking treatment are protected by the ADA do not prove that the defendants regarded the plaintiff as disabled, explaining "There is nothing in them indicating that Defendants perceived Moore as having a substantial limitation as that term is understood under the ADA. Rather, these text messages acknowledge only that Moore is seeking protection under the ADA *and belie the non-lawyer Schram's incomplete comprehension of the law regarding whether alcoholism is a disability under the ADA"*) (emphasis added).

Further, despite the fact that Mr. Arellano is not a lawyer and testified that he had no medical training, Plaintiff's counsel never asked Mr. Arellano if he knew that the ADAAA has a specific definition for the term "disability" or whether Mr. Arellano was familiar with the ADAAA's specific definition of the term "disability." *See* RSOF at ¶ 10. Had he done so, he would have learned that Mr. Arellano was unaware that the ADAAA has its own definition of the term "disability" and that as a result, he had simply understood the question as asking whether Frontier believed that alcoholism was an impairment recognized by the ADAAA and therefore, answered in the affirmative. *See* RSOF at ¶ 10.

In addition, Plaintiff's counsel never actually asked Mr. Arellano whether Frontier believed that Plaintiff was in fact disabled or whether Plaintiff's alcoholism—as she experienced it—substantially impaired her ability to perform daily life activities. *See* Dkt. No. 36 (Plaintiff's Motion) at p. 7 at ¶ 10 and RSOF at ¶ 10. Even if he had and even if Mr. Arellano had testified in

the affirmative, that testimony would not nullify Plaintiff's own admissions as discussed above or "obviate the requirement, explicit in the ADA and its implementing regulations, that purported conditions be examined to ascertain whether a specific condition substantially limited a major life activity." *Burch,* 119 F.3d at 317.

### 4.      Plaintiff's "Record Of" And "Regarded As" Theories Should Not Be Considered.

To begin, Plaintiff's "regarded as" and "record of" disability theories are not properly before the Court and therefore, should not be considered given that they were not pled in Plaintiff's Complaint and instead, were raised for the first time in Plaintiff's Motion nearly a year after Plaintiff filed her Complaint and without any adequate explanation for the delay. *See Astorga v. Idahoan Foods, LLC*, No. 1:18-CV-000195-DCN, 2019 WL 4120803, at *5 (D. Idaho Aug. 29, 2019) (rejecting plaintiff's "regarded as" theory introduced for the first time at summary judgment, explaining "Astorga did not actually plead a "regarded as" disability claim in her Complaint and, therefore, is precluded from raising such an argument at summary judgment…If Astorga wanted to plead a "regarded as" ADA claim, she could have done so, but she did not. She cannot do so now"), citing *Stuart v. Vilsack,* No. 2:14-CV-416, 2016 WL 6902347 *3 (E.D. Wash. 2016) (because Plaintiff had not plead a "regarded as" claim she could not argue such a theory at summary judgment); *Ruiz Rivera v. Pfizer Pharmaceuticals, LLC,* 521 F.3d 76, 85 (1st Cir. 2008) (finding "it simply will not do for a plaintiff to fail to plead with adequate specificity facts to support a regarded as claim, all-the-while hoping to play that card if her initial hand is a dud"); *see also, Lewis v. Powers*, No. 1:15-CV-02692-MEH, 2018 WL 6272259, at *13 (D. Colo. Nov. 30, 2018) (Even "[t]he liberalized pleading rules do not allow [a plaintiff] 'to wait until the last minute to ascertain and refine the theories on which [she]

intend[s] to build [her] case'") (quoting *Evans v. McDonald's Corp.,* 936 F.2d 1087, 1090–91 (10th Cir. 1991)); *Evans v. McDonald's Corp.,* 936 F.2d 1087, 1090–91 (10th Cir. 1991) ("untimeliness alone is a sufficient reason to deny leave to amend.... when the party filing the motion has no adequate explanation for the delay") (internal citation omitted).

### 5. Plaintiff Had No Record Of Impairment.

Even assuming Plaintiff's "record of" a disability theory is properly before the Court (which it is not), Plaintiff is still not entitled to summary judgment. "An individual has a record of a disability if the individual has a history of, or has been misclassified as having, a mental or physical impairment ***that substantially limits one or more major life activities.***" 29 C.F.R. § 1630.2 (emphasis added).

Plaintiff's argument that it is undisputed that Plaintiff had a record of impairment rests upon the assumption that Plaintiff's alcoholism substantially limited a major life activity, which as discussed in Sections IV.A.1-3 *infra* is insufficient. Relying on *Mestas v. Town of Evansville,* Plaintiff's citations to testimony concerning requirements for individuals participating in Frontier's self-disclosure program and Plaintiff's requests for accommodation are similarly unavailing. 186 Fed. Appx. 153 (10th Cir. 2019). *Mestas* involved a former sanitation truck driver who had been injured on the job after slipping on ice. *Id.* at 155. The plaintiff had submitted documentation from his physician stating that he was unable to work until further notice before being placed on a medical leave. *Id.* Ultimately, the plaintiff returned to work, but reinjured his back. *Id.* Although initially he did not notify his supervisor of his re-injury, he did notify his supervisor that he had scheduled a doctor's appointment for a steroid injection to relieve his back pain and requested time off to attend the appointment. *Id.* He also requested the

ability to use a snowblower rather than a shovel because of his back pain. *Id.* The following day, the plaintiff notified his supervisor that he had in fact reinjured his back and asked to be excused from shoveling snow. *Id.* at 156. The supervisor hung up on the plaintiff and when the plaintiff called him back, and fired the plaintiff, telling him that he should go "take care of [his] back or whatever." *Id.* Following the termination of his employment, the plaintiff applied for and received Social Security Disability Insurance dating back to the time he reinjured his back and had requested accommodations. *Id.* While the trial court had granted summary judgment in favor of the defendant on the plaintiff's ADA hostile work environment claim on the grounds that he had failed to establish a record of disability, the Tenth Circuit reversed on the grounds that a reasonable jury could have found that the plaintiff established a record of disability through his physician's documentation about his injured back and subsequent medical leave, his request to take time off for a steroid injection, and his request to have snow-removal accommodations because of back pain. *Id.*

In contrast, while evidence in *Mestas* suggested that the plaintiff had reinjured his back while on the job and that he needed additional accommodations for purposes of receiving treatment (i.e. steroid injections), in this case, there is no evidence indicating that Plaintiff needed any additional accommodation for purposes of receiving treatment (i.e. in-patient or out-patient rehabilitation treatment, AA meetings, and/or therapy) for alcoholism. Instead, Plaintiff herself has testified that at the time that she was requesting to be excused from flights with layovers, she had been sober for over nine (9) months, never having relapsed. *See* RSOF at ¶ 7. In addition, unlike the plaintiff in *Mestas* who had injured his back on the job and had previously experienced back pain performing a specific job function, Plaintiff testified that she had never

consumed alcohol on the job and that her alcoholism had never interfered with her ability to perform her job as a flight attendant. *See* RSOF at ¶ 7. Further, while the plaintiff's back pain was triggered when he performed certain work on jobsites during his scheduled shift, according to Plaintiff's own testimony, Plaintiff only felt tempted to drink off the job—specifically, at hotels during the course of overnight layovers. *See* RSOF ¶ 7.

To the extent that Plaintiff is trying to suggest that Frontier's drug and alcohol policies and protocols, including requirements for employees who had self-disclosed a substance abuse disorder and wanted to return to work, were part of Plaintiff's "treatment regimen" and therefore, a factor in determining whether her alcoholism is substantially limiting, she is mistaken. Plaintiff's treatment regimen was the in-patient or out-patient rehabilitation treatment, AA meetings, and/or therapy proscribed by her medical care providers. Frontier's policies and protocols applied to everyone who had self-disclosed a substance abuse disorder and therefore, considering them could not be useful for purposes of determining whether Plaintiff's alcoholism substantially limited Plaintiff's ability to perform daily life activities. *See Ramsay v. Nat'l Bd. of Med. Examiners,* No. 19-CV-2002, 2019 WL 7372508, at *10 (E.D. Pa. Dec. 31, 2019), *aff'd,* 968 F.3d 251 (3d Cir. 2020) ("The determination of whether an impairment substantially limits a major life activity requires an individualized assessment."); *Burch,* 119 F.3d at 315 (testimony concerning alcoholics as a class shed no light on the individualized inquiry required by the ADA for purposes of determining whether the plaintiff's alcoholism substantially limited his ability to perform a major life activity).

### 6.   Plaintiff Was Not Regarded As Disabled.

Similarly, even if Plaintiff's "regarded as" theory is properly before the Court (which it is

not), Plaintiff is still not entitled to summary judgment. As explained by the Supreme Court, the "regarded as" claim protects those individuals who are subjected to employer misconceptions that "result from stereotypic assumptions not truly indicative of individual ability." *Rakity v. Dillon Companies, Inc.,* 302 F.3d 1152, 1162 (10th Cir. 2002) (internal citation and quotation omitted). "An employer runs afoul of the ADA when it makes an employment decision based on a physical or mental impairment, real or imagined, that is regarded as substantially limiting a major life activity." *Briggs v. Delta Air Lines, Inc.,* 353 F. Supp. 3d 641, 648 (E.D. Mich. 2019), quoting *Sutton v. United Air Lines*, *Inc.,* 527 U.S. 471, 490, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999), *overturned due to legislative action* (U.S. Pub. L. 110-325 January 1, 2009). Therefore, the "regarded as" theory results from one of the following two scenarios: "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Sutton*, 527 U.S. at 489; *see also, Adair,* 823 F.3d at 1305–06 (An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited by the ADA because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity so long as the impairment is not transitory or minor"), citing § 12102(3)(A), (B), (C) (A transitory impairment is an impairment with an actual or expected duration of 6 months or less.).

According to Plaintiff, "Defendant **was aware of and therefore perceived the impairment** [presumably, Plaintiff's alcoholism] at the time of the alleged discriminatory action," citing to a letter from Frontier regarding her completion of her Substance Abuse

Program ("SAP"). Dkt. No. 36 (Plaintiff's Motion) at p. 23 (emphasis added). However, to prevail on a "regarded as claim," Plaintiff must demonstrate not just that Frontier was aware of her alcoholism, but that Frontier ***regarded her alcoholism as substantially limiting one or more of her major life activities***. *See e.g., Moore v. Centralized Mgmt. Servs., LLC,* No. CV 19-1592, 2020 WL 972711, at *7 (E.D. La. Feb. 28, 2020), *reconsideration denied,* No. CV 19-1592, 2020 WL 2037191 (E.D. La. Apr. 28, 2020) ("the fact that a person is perceived to be a drug addict does not necessarily mean that person is perceived to be disabled under the ADA," but he "must also show that [the employer] regarded [his] addiction as substantially limiting one of [his] major life activities."); *Cause of Action to Recover Damages Under ADA (42 U.S.C.A. §§ 12101, et seq.) for Employment Discrimination for Having a "Record of" a Disability or Being "Regarded as Disabled,"* 16 Causes of Action 2d 153 (Nov. 2020 Update) ("Under the Americans with Disabilities Act (ADA), the mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that that perception caused the adverse employment action") (citing *Kruger v. Hamilton Manor Nursing Home,* 10 F. Supp. 3d 385 (W.D. N.Y. 2014)); *Id.* (citing *Walker v. U.S. Secretary of the Air Force,* 7 F. Supp. 3d 438 (D.N.J. 2014)) ("That the Air Force was aware of civilian employee's impairment following traumatic brain injury, and gave him two hours to respond to a suspension notice, and that human resources official used the word "disability" in referring to employee did not show that the Air Force regarded employee as substantially limited in any major life activities, and thus, Air Force did not regard him as being disabled within the meaning of the ADA"); *see also, Kitchen,* 343 F. Supp. 3d at 689 ("In an effort to avoid summary judgment, Kitchen argues that he was "regarded by [BASF] as having a

disability" because BASF knew he was recovering alcoholic, allowed him to participate in an Employee Assistance Program, and required him to submit to alcohol tests...If the Court accepts Kitchen's theory, "every employee ever subjected to alcohol testing or placed on leave for drinking at work necessarily would be disabled under the statute... That is an absurd result that finds no support in the case law").

Further, Plaintiff's insistence that Frontier repeatedly refused to accommodate her—failing to recognize the severity of her alcoholism—undermines any claim that Frontier regarded Plaintiff's alcoholism as substantially limiting. In addition, for the reasons described in Section IV.A.3 *supra,* Plaintiff's own testimony that she had been sober for over a year at the time that Frontier terminated her employment, that alcoholism had never impacted her ability to do her job as a flight attendant demonstrates that her alcoholism was not in fact actually substantially limiting. RSOF at ¶ 7. Therefore, Plaintiff cannot prevail on a "regarded as" theory under the ADAAA. *See Burch,* 119 F.3d at 322 ("[T]he evidence [is] insufficient to support a finding that [the employer] regarded [the employee] as anything other than what he actually was: an alcoholic whose alcoholism did not substantially impair any major life activity, including the major life activity of working.").

Regardless, even if Plaintiff was "regarded as" disabled for purposes of the ADAAA (which she was not), she was not subjected to an action prohibited under the ADAAA, and therefore cannot prevail on her ADAAA claims on a "regarded as" theory. Regarding Plaintiff's failure to accommodate claim, Plaintiff cannot prevail under her "regarded as" theory because an employer is not required to accommodate an employee based solely upon a perceived disability. *See Brownwood v. Wells Trucking,* LLC, No. 16-CV-01264-PAB-NYW, 2017 WL 3621830, at

*3 (D. Colo. Aug. 22, 2017), citing 29 C.F.R. § 1630.2(o)(4). Further, as discussed in Frontier's Motion for Summary Judgment (Dkt. No. 38), Frontier *did* provide Plaintiff with reasonable accommodations and was not required to excuse Plaintiff from performing an essential function of her job as a flight attendant (i.e. handling flights with layovers) as an accommodation or required to provide unreasonable accommodations that would violate the terms of the CBA or infringe upon the seniority rights of other flight attendants.[5] Regarding Plaintiff's discrimination claim, the record clearly reflects that Frontier did not deny Plaintiff's requests for accommodation or terminate her employment because it perceived her alcoholism as substantially limiting Plaintiff's ability to perform daily life activities, but rather because she admittedly violated Frontier's attendance policy. *See* Dkt. No. 38 at pp. 27-29; *see also, Manna v. Phillips 66 Co.,* 820 F. App'x 695, 705 (10th Cir. 2020) (the same evidence that demonstrates causation under § 12102(3)(A) also demonstrates causation under the *McDonnell Douglas* prima facie demonstration of disability discrimination.); RSOF at ¶¶ 2, 21.

### B.    Plaintiff Was Not Qualified To Perform Her Job As A Flight Attendant.

Plaintiff's claim that the undisputed material facts demonstrate that Plaintiff was a "qualified individual" within the meaning of the ADAAA also ignores both the law and the record, including Plaintiff's own testimony. For the reasons set forth below and those set forth in Frontier's Motion for Summary Judgment (Dkt. No. 38)[6], which Frontier incorporates by reference, the Court should deny Plaintiff's Motion because no reasonable jury could conclude based on the evidence that Plaintiff could perform the essential functions of her job as a flight attendant with or without a reasonable accommodation.

---

[5] Frontier incorporates by reference Dkt. No. 38 at pp. 26-28.
[6] Frontier incorporates by reference Dkt. No. 38 at pp. 20-27.

Determining whether a plaintiff is a qualified individual such that he can bring a disability-discrimination claim, requires "a two-part analysis." *Adair,* 823 F.3d at 1307 (internal citations and quotations omitted). First, the Court asks "whether the plaintiff can perform the essential functions of the job, *i.e.,* "functions that bear more than a marginal relationship to the job at issue." *Id.* (alterations and quotation marks omitted). Evidence considered in determining whether a particular function is essential includes: (1) the employer's judgment as to which functions are essential; (2) written job descriptions; (3) the time spent performing the particular function; (4) the consequences if the individual cannot perform the function; (5) any collective-bargaining agreement; (6) the work experience of those in the position in the past; and (7) the current work experience of those in similar positions. *Adair,* 823 F.3d at 1307, citing 29 C.F.R. § 1630.2(n)(3). Second, if the Court concludes that Plaintiff is *not* able to perform the essential functions of the job, it must determine whether any reasonable accommodation by the employer would enable him to perform those functions. *Id.* (internal citation and quotation omitted).

### 1. Plaintiff Admits That Flights With Layovers Were An Essential Function Of Her Job As A Flight Attendant And That She Could Not Perform That Function.

Plaintiff contends that "[t]he undisputed factual record demonstrates that Ms. Brigham had no difficulty completing the essential functions of her job as a flight attendant until she required a reasonable accommodation" and that "the accommodations requested by Ms. Brigham would have allowed her to comply with her treatment plan as well as the terms of Defendant's self-disclosure program, i.e., Ms. Brigham's requested accommodations would have permitted her to perform the essential functions of her job." Dkt. No. 36 (Plaintiff's Motion) at p. 18.

Compliance with Plaintiff's individualized treatment plan and Frontier's self-disclosure program, however, were not essential functions of Frontier's flight attendant position. [7] As explained in Frontier's Motion for Summary Judgment, "Essential functions" are "the fundamental job duties of the employment position." Dkt. No. 38 at p. 20, citing 29 C.F.R. § 1630.2(n)(1). Evidence considered in determining whether a particular function is essential includes: (1) the employer's judgment as to which functions are essential; (2) written job descriptions prepared before advertising or interviewing applicants for the job; (3) the amount of time spent on the job performing the function; (4) the consequences of not requiring the incumbent to perform the function; and (5) the work experience of past incumbents in the job. *Id.,* citing 29 C.F.R. § 1630.2(n)(3); *Wells v. Shalala,* 228 F.3d 1137, 1144 (10th Cir. 2000).

It is undisputed that handling flights requiring layovers, including overnight layovers was an essential function of Frontier's flight attendant position. *See* RSOF ¶ 9. According to Plaintiff, however, layovers jeopardized her sobriety and therefore, to do her job as a flight attendant, she needed to be excused from them as an accommodation. *See* RSOF ¶ 9.

**2.     The Accommodation Plaintiff Requested Would Not Have Enabled Plaintiff To Fly Flights With Layovers And Was Unreasonable.**

The accommodation Plaintiff requested—relief from flights with layovers—was not a reasonable or even plausible because relief from an essential function of a position is not reasonable or even plausible accommodation as a matter of law. *See Gardenhire v. Manville,* 722 Fed. Appx. 835, 839 (10th Cir. 2018) (An employee's request to be relieved from an essential function of his position is not, as a matter of law, a reasonable or even plausible

---

[7] Even if they were, as discussed in Section V.A.3 *supra,* neither prohibited Plaintiff from the job function she sought to avoid—overnight flights. *See also* RSOF ¶ 12.

accommodation."); *see also, Ruiz v. Woodward, Inc.,* No. 17-CV-03046-MSK-KLM, 2019 WL 6893039, at *8 (D. Colo. Dec. 18, 2019) ("The 10th Circuit has repeatedly made clear that a proposed accommodation that reallocates or removes essential functions from an employee's job is not, as a matter of law, a "reasonable" accommodation").

Further, inherent in *all* flights is the risk of experiencing inclement weather and/or mechanical issues, which could require a layover. Therefore, even if the accommodation Plaintiff requested was reasonable and all flights with layovers were removed from Plaintiff's flight schedule, given that flight schedules are inevitably impacted by inclement weather and airplane mechanical issues, Frontier could never have guaranteed that Plaintiff would never be required to handle a flight with a layover.

Therefore, given Plaintiff's testimony that she could not handle flights with layovers and maintain her sobriety, Plaintiff's request, would not have enabled her to perform the essential functions of her job as a flight attendant, precluding her ability to demonstrate that she was a "qualified individual with a disability" for purposes of the ADAAA as a matter of law. *See e.g., US Airways, Inc. v. Barnett,* 535 U.S. 391, 400 (2002) ("An *ineffective* 'modification' or 'adjustment' will not *accommodate* a disabled individual's limitations."); *Santiago v. Executive Airlines*, 41 F. Supp. 2d 129, 137 (D. Puerto Rico 1999) (plaintiff's demand for an accommodation allowing her only to fly in aircrafts with pressurized cabins "was not viable" because "unforeseen circumstances may force last minute changes from a scheduled pressurized flight for an unpressurized one which requires that assigned crews be qualified to work in both").

### 3.     Plaintiff Rejected Reasonable Alternative Accommodations.

Even assuming, *arguendo*, that Plaintiff could somehow demonstrate that she is a qualified individual with a disability under the ADAAA, Plaintiff lost that status and disqualified herself from the protection offered by the ADAAA as a matter of law when she rejected alternative reasonable accommodations proposed by Frontier, including transferring to another internal position within the company, applying for additional IFMLA, or taking a continuous leave of absence until she felt more secure in her sobriety. *See* Dkt. No. 38 at p. 25, citing *Kuehl v. Wal-Mart Stores, Inc.*, 909 F. Supp. 794, 803 (D. Colo. 1995) (holding employee lost any status she may have had under the ADA as a qualified individual with a disability by rejecting reasonable alternative accommodations offered by her employer); *see also,* Sharing the Dream: Is the ADA Accommodating All? Substance Abuse Under the ADA, U.S. Commission on Civil Rights, available at https://www.usccr.gov/pubs/ada/ch4.htm#_ftn60 ("Reasonable accommodation for an alcoholic would generally involve a modified work schedule so the employee could attend Alcoholics Anonymous meetings, or a leave of absence"), citing 42 U.S.C. § 12111(9); 29 C.F.R. § 1630.2(o)(2).

### C.     Frontier Did Not Violate The ADAAA When It Denied Plaintiff's Request For Reassignment To The GO Or Temporary Light Duty Assignment.

Plaintiff claims that her request to be transferred to the GO was a request for reassignment and therefore, plausibly reasonable. *See* Dkt. No. 36 (Plaintiff's Motion) at p. 26. Plaintiff, however, ignores the fact that to be plausibly reasonable, a request for reassignment must be to an ***existing vacant position***. *See* 42 U.S.C. § 12111(9) (providing that a reasonable accommodation may include "reassignment ***to a vacant position***") (emphasis added); *see also, Johnson v. Sedgwick Cty. Sheriff's Dep't.*, 461 Fed. Appx. 756, 758 (10th Cir. 2012) (noting

that an employee has no duty to accommodate an employee by creating a new position or a new vacancy). "A position is vacant *when a similarly situated, non-disabled employee would be able to apply for it.*" *Koessel v. Sublette Cty. Sheriff's Dep't,* 717 F.3d 736, 745 (10th Cir. 2013), citing *Duvall v. Georgia–Pacific Consumer Prods., L.P.,* 607 F.3d 1255, 1263 (10th Cir. 2010). Here, Frontier did not have any open positions at the GO for which Plaintiff was minimally qualified at the time that she sought accommodation.

Regardless, as Plaintiff herself acknowledges, a request for a plausibly reasonable accommodation "refers to those accommodations which *presently, or in the near future*, enable the employee to perform the essential functions of [their] job." *Aubrey v. Koppes,* 975 F.3d 995, 1007 (10th Cir. 2020). Plaintiff testified that at the time, she did not know when her condition would improve such that she could fly layovers and return to her position as a flight attendant. *See* RSOF ¶ 16. Further, according to Plaintiff's own testimony, at the time of her request she had been sober for approximately nine (9) months. *See* RSOF at ¶ 7; *see also, Hoskins v. Oakland County Sheriff's Dept.,* 227 F.3d 719, 729 (6th Cir. 2000) (unreasonable to require employer to assign employee to new position that became available "well over a year" after employer became aware of disability); *Sloan v. Tate & Lyle Ingredients Americas LLC,* No. 3:14-CV-406-TAV-HBG, 2016 WL 4179959, at *9 (E.D. Tenn. Aug. 5, 2016) (A "reasonable accommodation does not require the employer to wait indefinitely for an employee's medical condition to be corrected") (internal citations and quotations omitted); *Adair v. City of Muskogee,* 823 F.3d 1297, 1312 (10th Cir. 2016) (holding plaintiff's disability discrimination claim failed as a matter of law where plaintiff was unable to perform the essential functions of his job and failed to identify any possibility of reassignment to a vacant position), citing

*Donahue v. Consol. Rail Corp.*, 224 F.3d 226, 234 (3d Cir. 2000) (holding that "in a failure-to-transfer case, if, after a full opportunity for discovery, the summary judgment record is insufficient to establish the existence of an appropriate position into which the plaintiff could have been transferred, summary judgment must be granted in favor of the defendant—even if it also appears that the defendant failed to engage in good faith in the interactive process"). Further, as noted in Section IV.B.3 *supra,* Plaintiff admits Frontier *did* propose Plaintiff transfer to a vacant or soon-to-be vacant position within Frontier, but that she rejected that idea. *See* RSOF at ¶ 23; *See Aubrey,* 975 F.3d at 1007 ('[t]he interactive process [necessarily] includes good-faith communications between the employer and employee.'). Therefore, Plaintiff's request to transfer generally to the GO was unreasonable in that Plaintiff did not and could not identify any vacant position at the GO and rejected the notion of transferring to other internal positions that were in fact vacant.

Regardless, the ADAAA does not require an employer to create a new position, light duty or otherwise. *See Mannan v. Colorado*, No. 18-CV-01844-MSK-SKC, 2020 WL 533734, at *5 (D. Colo. Feb. 2, 2020) (ADAAA does not "require an employer to create a new position" or provide a permanent or indefinite light duty position). Frontier's creation of temporary light duty assignments at the GO for flight attendants injured on the job did not change that fact or somehow obligate Frontier to do the same for Plaintiff, an active flight attendant whose alcoholism did not equate to an injury on the job and therefore, did not qualify her for Frontier's OJI program.

Indeed, Frontier did not maintain open light-duty job positions for flight attendants injured on the job, nor were light duty assignments job "positions" – instead, Frontier would

temporarily assign those injured on the job to perform other employees' duties. *See* RSOF at ¶¶ 16-17. Based on well-settled case law, Frontier was not required to do the same for Plaintiff. *See Benson v. Wal-Mart Stores E., L.P.,* No. 2:16-CV-114-DBH, 2017 WL 2729491, at *3 (D. Me. June 23, 2017) (granting summary judgment on plaintiff's ADAAA claim where plaintiff failed to identify any vacant position to which she could transfer as an accommodation and relied only on the fact that defendant created a temporary position for workers injured on the job, emphasizing that an employee must demonstrate that there is an actual vacant position to which she can transfer and that an employer is not required by the ADAAA to create a new job for an employee); *Severson v. Heartland Woodcraft, Inc.,* No. 14-C-1141, 2015 WL 7113390, at *9 (E.D. Wis. Nov. 12, 2015), aff'd, 872 F.3d 476 (7th Cir. 2017) ("Heartland may voluntarily create light-duty positions for employees recovering from workplace injuries without becoming compelled to create such positions for employees who are protected by the ADA."); *see also,* Enforcement Guidance: Workers' Compensation and the ADA, Equal Employment Opportunity Commission, No. 915.002 (Sept. 3, 1996) at Question No. 27, available at https://www.eeoc.gov/laws/guidance/enforcement-guidance-workers-compensation-and-ada (if an employer creates light duty positions for employees injured on the job, it does not have do the same as an accommodation for employees who were not injured on the job); *Wade v. Brennan*, 647 F. App'x 412, 415 (5th Cir. 2016) (employer not required to exempt employee from performance of essential function of the job, to find or create a new job for employee or to disadvantage other employees as a result of reassignment).

Plaintiff also contends that it is undisputed that her request to be allowed to start each month with a "blank schedule" so that she could build her own flight schedule to avoid layovers

was reasonable. *See* Dkt. No. 36 (Plaintiff's Motion) at p. 25. To the extent that Plaintiff is claiming that such accommodation would only constitute a modification to her schedule and therefore, reasonable she is mistaken. "A proposed accommodation is not reasonable on its face if it would not enable the employee to perform the essential function at issue." *Aubrey,* 975 F.3d at 1010 (internal quotation and citation omitted); *see also,* 29 C.F.R. § 1630.2(*o*)(1)(ii)). As previously discussed, Plaintiff's request to be able to create her own schedule to avoid overnight flights would be relieving her of an essential function of the flight attendant position and therefore, was not plausible as a matter of law. *See Gardenhire v. Manville,* 722 Fed. Appx. 835, 839 (10th Cir. 2018) (An employee's request to be relieved from an essential function of his position is not, as a matter of law, a reasonable or even plausible accommodation."); *see also, Ruiz v. Woodward, Inc.,* No. 17-CV-03046-MSK-KLM, 2019 WL 6893039, at *8 (D. Colo. Dec. 18, 2019) ("The 10th Circuit has repeatedly made clear that a proposed accommodation that reallocates or removes essential functions from an employee's job is not, as a matter of law, a "reasonable" accommodation"). The same argument applies to Plaintiff's request that Frontier remove overnight trips from her schedule. *See* Dkt. No. 36 (Plaintiff's Motion) at p. 25. In addition, to the extent Plaintiff contends that the fact that Frontier had previously removed flights with layovers from her schedule "a few times prior" does not make her subsequent request that Frontier remove flights with layovers from her schedule for the indefinite future reasonable.

Further, allowing Plaintiff to skip seniority bidding as required by the CBA and create her own schedule, or requiring Frontier to remove flights with layovers from Plaintiff's schedule post-bidding would have been inconsistent with the vested rights of other flight attendants with greater seniority than Plaintiff under the CBA and therefore, not reasonable under the ADAAA

as a matter of law.[8] *Coats v. Goodyear Tire & Rubber Co.,* No. H-01-1322, 2002 WL 32123913, at *21 (S.D. Tex. Oct. 16, 2002) ("the ADA does not require an employer to take action inconsistent with the contractual rights of other workers under a collective bargaining agreement." (internal citations and quotations omitted), citing *US Airways, Inc.*, 535 U.S. at 403 ("lower courts have unanimously found that collectively bargained seniority trumps the need for reasonable accommodation in the context of the linguistically similar Rehabilitation Act"); *Eckles v. Consol. Rail Corp.,* 94 F.3d 1041, 1051 (7th Cir. 1996)("the ADA does not require disabled individuals to be accommodated by sacrificing the collectively bargained, bona fide seniority rights of other employees"); *Santiago v. Executive Airlines,* 41 F. Supp. 2d 129, 135 (D. Puerto Rico 1999) ("an employer's obligation does not extend to contravening rights secured by other employees through a collective bargaining agreement"); *Stephens v. ExpressJet Airlines, Inc., No.* 4:16-CV-0890, 2018 WL 8459309, at *6 (S.D. Tex. May 4, 2018) (plaintiff could not state a prima facie case for failure to accommodate where plaintiff's requested accommodation would violate the rules of a seniority system set forth in a collective bargaining agreement).

## V.    CONCLUSION

For the foregoing reasons, Frontier respectfully requests that this Court grant summary judgment in its favor on Plaintiff's Complaint in its entirety.

Respectfully submitted this 8th day of December, 2020.

*/s/ Danielle L. Kitson*
Danielle L. Kitson
Carolyn B. Theis
LITTLER MENDELSON, P.C.
1900 Sixteenth Street, Suite 800
Denver, CO  80202

---

[8] Defendant incorporates by reference its Motion for Summary Judgment (Dkt. No. 38) at pp. 33

Telephone: 303.629.6200
Facsimile: 303.629.0200
Email:  dkitson@littler.com
            catheis@littler.com
*Attorneys for Defendant Frontier Airlines,
Inc.*

## CERTIFICATE OF SERVICE

I certify that on this 8th day of December 2020, I filed and served the foregoing

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY**

**JUDGMENT** via CM/ECF to the following:

John R. Crone
The Law Office of John R. Crone, LLC
4550 E. Cherry Creek Drive South, #1003
Glendale, Colorado 80246
john@crone-law.com

*Attorney for Plaintiff*

*s /Joanna Fox*
Joanna Fox, Legal Secretary