# DECLARATION OF GERARDO ARELLANO

I, Gerardo Arellano, declare as follows:

1. I make this declaration based on my personal knowledge. If called to testify under oath, I could do so truthfully and competently.

2. I am employed by Frontier Airlines, Inc. ("Frontier") as the Senior Manager of Talent Acquisition and Employee Relations.

**Plaintiff's Alcoholism**

3. At the time of my deposition as Frontier's corporate representative, I was unaware that the Americans with Disabilities Act as Amended ("ADAAA") has a specific definition for the term "disability." Therefore, when Ms. Brigham's counsel questioned me regarding whether Frontier believed that alcoholism constituted a disability under the ADAAA, I answered affirmatively, under the mistaken belief that the term "disability" was synonymous with the term "impairment."

4. Based upon the medical paperwork certifying Ms. Brigham to return to work without restrictions and certifying her for Intermittent FMLA ("IFMLA"), Frontier did not believe that Ms. Brigham experienced any substantial or significant limitations as a result of her alcoholism with respect to her ability to perform daily activities, including her work as a flight attendant, after she completed her in-patient treatment program and returned to Frontier.

5. Frontier believed that Plaintiff was sober from the time that she completed in-patient rehabilitation treatment for alcoholism and returned to work through the date Frontier terminated her employment.

# EXHIBIT A

**Plaintiff's Treatment Plan**

6. Given that the flight attendant position is characterized by both safety-sensitive and security-related functions and heavily regulated by the Department of Transportation/Federal Aviation Administration ("DOT/FAA"), Frontier requires flight attendants to abide by its Drug and Alcohol Misuse Prevent Policies and Programs, which it strictly enforces.

7. As part of those policies, Frontier requires flight attendants who self-disclose a substance abuse disorder to comply with any treatment or aftercare recommended by their rehabilitation program/substance abuse medical care provider and comply with unannounced drug and alcohol testing after returning to Frontier. *See, e.g.,* Dkt. No. 36-9.

8. Frontier received a treatment plan for Ms. Brigham approximately six (6) months after Ms. Brigham had completed her in-patient rehabilitation program and returned to her job as a flight attendant for Frontier. *See* Treatment Plan attached as Exhibit 2.

9. Frontier never interpreted Plaintiff's treatment plan as requiring Ms. Brigham herself to abstain from flying layovers. Rather, Frontier interpreted the plan to mean that *Ms. Brigham* had indicated to her therapist that she felt tempted to drink during layovers and therefore, that her therapist suggested that she avoid flights requiring layovers to the extent possible.

10. Frontier never interpreted the treatment plan to impose any obligations upon Frontier.

11. Ms. Brigham's non-compliance with her treatment plan would not have required or necessarily resulted in Frontier's termination of her employment.

**Accommodations**

12. Dkt. No. 36-11 is a true and correct copy of the spreadsheet maintained by Frontier to track accommodations Frontier discussed with Frontier employees as part of the interactive process for the years 2012-2016 and 2020.

13. A true and correct copy of Defendant's Supplemental Responses to Plaintiff's Fifth Set of Discovery Requests is attached as Exhibit 1. Response to Request for Production No. 17 and Frontier Airlines (R. Brigham) – 0004809-CONFIDENTIAL accurately reflect accommodations Frontier discussed with flight attendants who were not part of Frontier's On-The-Job Injury ("OJI") Program as part of the interactive process for the years 2017 through October 2020.

14. Other than Ms. Brigham, none of the employees reflected on Dkt. No. 36-11 and Exhibit 1 were requesting accommodations for conditions involving alcoholism or substance abuse.

15. Regarding Dkt. No. 36-11, the "X" indicated in the column titled "Modify Work Schedule" indicates only that modifying the employee's work schedule as an accommodation was *discussed* with the Frontier employee as part of the interactive process. The "X" does not indicate that Frontier actually provided the employee with a modified work schedule.

16. As Dkt. No. 36-11 itself makes clear, with to respect to <u>flight attendants</u>, since 2012, Frontier has never provided light duty assignments to any flight attendant (injured on the job or not) as an accommodation, nor has Frontier placed any flight attendant (injured on the job or not) into a vacant ground position as an accommodation, although Frontier's OJI Program would have allowed for temporary light duty assignments if requested by flight attendants injured on the job *See* Dkt. No. 36-11 at Tab 2012 at Lines 12, 15, 22; Tab 2013 at Lines 11-13, 20-12; Tab 2014 at

3

18, 30; Tab 2015 at 8-13; Tab 2016 at 9-13, 16; Exhibit 1 at Response to Request for Production No. 17 and Frontier Airlines (R. Brigham) – 0004809-CONFIDENTIAL. In addition, as reflected in Dkt. No. 36-11 and Exhibit 1, since 2012, Frontier has never transferred a flight attendant to a temporary ground assignment in Frontier's General Office ("GO") as an accommodation. Further, no <u>flight attendants</u> were offered modified work schedules. *Id*. Instead, only non-comparable workers in ground positions (who were not subject to a collective bargaining agreement) were offered schedule modifications. Flight attendants' schedules are controlled exclusively by the CBA, and governed by the seniority bidding requirements of the CBA, unlike non-unionized employees working on the ground.

**David St. Hilaire**

17. Unlike Ms. Brigham who self-disclosed her alcoholism and never refused to take a drug or alcohol test for purposes of ensuring she could perform the safety-sensitive and security-related functions of his position as a flight attendant and to ensure compliance with DOT/FAA regulations, Mr. St. Hilaire initially denied his alcoholism and refused a routine sobriety test.

18. Also unlike Ms. Brigham who requested accommodations, some of which were granted and was ultimately terminated for violating Frontier's attendance policy, Mr. St. Hilaire never requested or otherwise indicate any need for accommodation and instead, voluntarily left his employment with Frontier.

19. Frontier did not unlawfully discriminate against or harass Mr. St. Hilaire.

**Christine Kernen**

20. Frontier never discussed providing Ms. Kernen with accommodations due to alcoholism.

4

21. The only accommodations Frontier discussed and provided to Ms. Kernen were leaves of absence for purposes of pregnancy and pregnancy-related conditions.

22. Ms. Kernen left her employment with Frontier voluntarily.

23. Frontier did not unlawfully deny Ms. Kernen reasonable accommodations.

*I have read this declaration and declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.*

Dated: December 8, 2020

/s/ Gerardo Arellano
Gerardo Arellano