1

**FRONTIER AIRLINES / GERARDO ARELLANO - July 13, 2020**

```
         IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF COLORADO

Civil Action No.:  19-cv-03417-WJM-STV
```
_____

REBECCA BRIGHAM,

Plaintiff,

v.

FRONTIER AIRLINES, INC.,
a Colorado corporation,

Defendant.
_____

```
   VIDEOTAPED VIDEOCONFERENCE 30(B)(6) DEPOSITION OF
               FRONTIER AIRLINES, INC.,
        THROUGH THE TESTIMONY OF GERARDO ARELLANO
                    July 13, 2020
```
_____

PURSUANT TO NOTICE and the Federal Rules of Civil Procedure, the videotaped videoconference 30()b)(6) deposition of FRONTIER AIRLINES, through the testimony of GERARDO ARELLANO, whose identity has been verified by the court reporter, was taken on behalf of the Plaintiff on July 13, 2020, commencing at 9:01 a.m., before Jill S. Nielsen, Registered Professional Reporter and Notary Public within the state of Colorado.

(The reporter, Jill S. Nielsen, appearing remotely via videoconference.)

**ROCKY MOUNTAIN REPORTING**
**(720) 872-9910**

# EXHIBIT B

FRONTIER AIRLINES / GERARDO ARELLANO - July 13, 2020

1  Q. And do you recall whether Frontier granted
2  that request?
3  A. We did not.
4  Q. And why was that?
5  A. Due to the collective bargaining agreement.
6  Q. So Frontier thought if -- if Ms. Brigham
7  was allowed to modify her schedule, that would
8  violate the terms of the collective bargaining
9  agreement?
10  A. I agree, yes.
11  Q. Okay. Do you recall Adrienne Prince
12  communicating to Frontier that it would not violate
13  the terms of the collective bargaining agreement?
14  A. I do not.
15  Q. And sorry. I'm going to go back just a
16  little bit.
17      Did Frontier think that transferring
18  Ms. Brigham to the GO, reassigning her would violate
19  the terms of the collective bargaining agreement, or
20  was that due to the OGI -- or OJI work comp issue?
21  A. It was the OJI work comp. She was just not
22  eligible. At the time, she wasn't part of the work
23  comp program.
24  Q. Okay. Does Frontier's opinion change at
25  all today about whether a modified schedule would

1  program, two cases, because she wasn't -- she hadn't
2  sustained an injury that removed her from service,
3  and the other piece is it was only awarded to
4  those -- that -- reassignment was only offered to
5  individuals on a work comp status.
6       Q.   Okay.  Okay.
7       A.   It all determines on that status of the
8  individual.  It's hard to --
9       Q.   Okay.
10      A.   So yeah.
11      Q.   Yeah, and I think -- I think we're covering
12 some ground we already covered, so I think we --
13 we've closed that loop.
14      A.   Okay.
15      Q.   I -- I appreciate the explanation.
16      A.   Yeah.
17      Q.   I -- the last question on -- on this topic:
18 When -- in the interactive process that you outlined
19 for me --
20      A.   Yeah.
21      Q.   -- and you had said, you know, we have to
22 take into consideration the CBA, is that what you're
23 talking about, what you just described here?  So
24 you -- you looked at Ms. Brigham's request, and then
25 the issue with the work comp and OJI is taking into

1  consideration the collective bargaining agreement; is
2  that fair?
3       A.   In -- in one moment -- in one factor, I
4  should say, but it's also looking at her status.
5  We have to look at her status to make that
6  determination.  And her status goes, then, back to
7  the contract.  If she's an active employee per the
8  collective bargaining agreement, she's required to
9  submit a bid.
10      Q.   Okay.
11      A.   And if she then doesn't submit a bid, then
12 other pieces then kick in.  And so it's kind of a --
13 that's how we need to determine -- it all goes back
14 to what was her status at the time?
15      Q.   Yeah.
16      A.   So if she was on intermittent FMLA leave,
17 she was not considered to be on a leave of absence;
18 therefore, making her an active individual, an active
19 bidder.
20      Q.   Okay.  Do you happen to know -- can you
21 recall what other provisions of the collective
22 bargaining agreement are then triggered by this
23 request?
24      A.   Yes.  The -- basically, it comes out to
25 eligible to bid.  If she's eligible to bid, then at

FRONTIER AIRLINES / GERARDO ARELLANO - July 13, 2020

1       Does that mean the date Frontier was first
2  notified about the existence of her disability or the
3  request for a reasonable accommodation or something
4  else?
5       A.   Let me -- let me read the notes.
6       Q.   Sure.  Thank you.
7       A.   Typically, it's down in the notes.
8       Q.   Yeah.  No problem.
9       A.   I would have to look at the date when HR
10 was aware; not when the company was notified.
11      Q.   Okay.
12      A.   Because I think she had notified the
13 supervisors prior to that.
14      Q.   Okay. All right.  So this is -- so that
15 Date Filed column means date HR is aware?
16      A.   Yes.
17      Q.   Okay. All right.  And then at -- for
18 Rebecca Brigham again, so staying on Line -- or Row
19 12 --
20      A.   Okay.
21      Q.   -- at Column Q, it says -- that's the
22 Modify Work Schedule column under the reasonable
23 accommodation umbrella.  Do you see where I'm at
24 there?
25      A.   Yes.

FRONTIER AIRLINES / GERARDO ARELLANO - July 13, 2020

1  Q. And in Rebecca's column there, it says N/A.
2  Do you see that?
3  A. I do.
4  Q. Do you know why it says N/A there?
5  A. Typically, N/A, not applicable, since it
6  wasn't necessarily associated with a work comp claim
7  or OJI, on-the-job injury.
8  Q. Okay. I don't see N/A in that column for
9  any other employee on any other tab for any year in
10  this spreadsheet.
11  Can you explain why it's only in
12  Rebecca Brigham's row?
13  A. If you give me a second, let me just kind
14  of review that.
15  Q. Yeah.
16  A. Honestly, I don't know.
17  Q. Okay. But you -- you -- you did fill in
18  this information because you're noted as the client
19  manager. Jerry, in -- in Column G, that's you,
20  right?
21  A. Yes.
22  Q. Okay.
23  A. The only piece with this, because of the
24  case that had been -- it was a long case for Rebecca.
25  There were different responsibilities, so at one

REPORTER'S CERTIFICATE

STATE OF COLORADO )
) ss.
COUNTY OF DENVER )

      I, JILL S. NIELSEN, do hereby certify that I am a Registered Professional Reporter and Notary Public within the State of Colorado; that previous to the commencement of the examination, the witness was duly sworn by me to testify to the truth.

      I further certify this deposition was taken remotely in shorthand by me at the time herein set forth, and that it was thereafter reduced to typewritten form, and that the foregoing constitutes a true and correct transcript.

      I further certify that I am not related to, employed by, nor of counsel for any of the parties or attorneys herein, nor otherwise interested in the result of the within action.

      IN WITNESS WHEREOF, I have hereunto affixed my hand and seal this 22nd day of July, 2020.

      My commission expires July 7, 2023.

_____
JILL S. NIELSEN, RPR
Notary Public in and for the
State of Colorado

JILL S. NIELSEN
Notary Public
State of Colorado
Notary ID # 19994018652
My Commission Expires 07-07-2023