## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-03417-WJM-STV

REBECCA BRIGHAM,

     Plaintiff,

v.

FRONTIER AIRLINES, INC.,

     Defendant.

---

## DEFENDANT FRONTIER AIRLINES, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

---

Defendant Frontier Airlines, Inc. ("Defendant" or "Frontier"), respectfully submits this Reply in Support of its Motion for Summary Judgment [Dkt. No. 38], stating as follows:

### I.    INTRODUCTION

The Americans with Disabilities Act as Amended ("ADAAA") does not require an employer to prevent an employee from experiencing circumstances outside (or even inside) the workplace that may aggravate an employee's underlying medical condition. That is precisely what Plaintiff asked of Frontier—to excuse her from certain job functions (i.e. layovers and the bidding requirements set forth in Frontier's collective bargaining agreement with Plaintiff's flight attendant union) so that she could avoid off-duty situations during layovers (i.e. bars and hotel rooms) that might tempt her to consume alcohol and therefore, jeopardize her sobriety. Similarly, the ADAAA does not require an employer to continue to engage in the interactive process so long as the employer provides a reasonable accommodation. Therefore, Plaintiff's claim for failure to engage

in the interactive process in good faith should be dismissed. Regardless, Plaintiff's own evidence makes clear that Frontier not only engaged in the interactive process in good faith, but proposed a means of providing Plaintiff with the accommodation she claimed she needed and in fact requested. Plaintiff rejected the proposal, disqualifying herself from any protection she claims she had under the ADAAA.

Finally, Plaintiff failed to identify any evidence in the record aside from her own conclusory, speculative, and subjective testimony to sustain her burden of demonstrating that she was experiencing specific and substantial limitations in comparison to the average person as a result of her alcoholism at the time that she requested accommodation from Frontier, that her Substance Abuse Provider ("SAP") prohibited her from flying layovers as part of her treatment for alcoholism, and that handling flights with layovers was *not* an essential function of the Frontier flight attendant position. Accordingly, summary judgment should be granted in Frontier's favor and Plaintiff's claims should be dismissed in their entirety.

## II.   REPLY CONCERNING UNDISPUTED FACTS

1.     The fact that the term "layover" is absent from the Frontier flight attendant job description is immaterial. The ability to handle layovers is inherently required to perform the job of any flight attendant and inherently required to be able to work the "flexible hours/schedules including, nights, weekends and holidays" and "to travel to all current and future international destinations served by Frontier Airlines" as expressly reflected in the job description. Dkt. No. 38-2; *see, e.g. Collins v. Abbott Labs., Inc.*, No. 17-CV-4534 (NEB/SER), 2019 WL 2718323, at *6 (D. Minn. June 28, 2019), aff'd, 972 F.3d 976 (8th Cir. 2020), citing *Dropinski v. Douglas Cnty., Neb.*, 298 F.3d 704, 708–09 (8th Cir. 2002) (finding certain job functions were essential, even

though they were not listed in the written job description, because they were inherently required to perform the written job functions). The requirement that flight attendants be willing and able to fly is also absent from the job description, but no one would argue that flying is not a fundamental part of the flight attendant position.

7.      The fact that flight attendants returning from intermittent leave could pick up Open Time to replace the trip if the original trip had been scheduled using Open Time does not alter the fact that all active/eligible flight attendants (i.e. all flight attendants not on a continuous leave of absence during the bid period) are <u>required</u> to bid. Nor is it disputed that Plaintiff was on active/eligible status at the time that she requested to be excused from bidding. *See* Dkt. No. 38-5 at Frontier Airlines (R. Brigham – 919); *see also,* Dkt. No. 38-22 at 20:15-21. There are no facts in the record supporting the notion that flight attendants using IFMLA were excused from the bidding process.

8.      Plaintiff's opinion as to whether compliance with the policy actually demonstrated "dependability" is immaterial. *See Latham v. High Mesa Commc'ns,* No. 17-CV-2118-JLK-GPG, 2019 WL 8267700, at *2 (D. Colo. Dec. 19, 2019), report and recommendation adopted, No. 17-CV-02118-JLK-GPG, 2020 WL 1317394 (D. Colo. Jan. 14, 2020) ("Conclusory statements, unsupported allegations, and testimony based merely on conjecture or subjective belief are insufficient evidence to support summary judgment.").

9.      This distinction is immaterial given that Plaintiff is claiming that she should not have incurred Occurrences for her absences at *all* and not disputing how Occurrences were calculated.

10.    Despite Plaintiff's denial, there appears to be no dispute—both parties agree that the CBA required flight attendants ***who were unable to report for work because of illness or off-the-job injury*** to notify Crew Scheduling at least two (2) hours prior to their assigned report time. SUMF ¶ 10 does not state that the Dependability Policy was part of the CBA as Plaintiff suggests and regardless, whether or not it was is immaterial.

17.    When shown the warnings/coaching and counseling documents referenced in SUMF ¶ 17, which the Handbook refers to as "corrective action" during her deposition, Plaintiff did not dispute that she had received them and conceded that she was subject to "several disciplinary actions because of attendance." *See* Dkt. No. 36-3 at 48:7-9; 33:10-13. Plaintiff's opinion about whether the warnings/coaching and counseling documents she received from Frontier evidences a pattern of "attendance issues," is immaterial.

20.    Plaintiff fails to identify ***any*** restrictions identified by her medical care provider on the Fitness-for-Duty Certification form. *See* Dkt. No. 38-8. Frontier's requirements for employees who self-disclosed is not addressed in SUMF ¶ 20.

21.    Paragraph 21 is limited to the impact of Plaintiff's ***alcoholism*** on her ***performance as a flight attendant***—not whether Plaintiff's alcoholism was generally substantially limiting**.** Plaintiff's own Complaint states "…***Ms. Brigham's disability, alcoholism, never interfered with the performance of her job duties***" and that despite her alcoholism, Plaintiff "excelled in her position, accumulating accolades from Defendant for her superior performance." Dkt. 1 at ¶ 1 (emphasis added); *see also,* Dkt. No. 36-3 at 71:17-21; 119:15-18; 67:25-68:4; 68:17-22; 69:8-14. Plaintiff's distinction between Plaintiff's alcoholism and "use of alcohol" as a flight attendant is nonsensical and immaterial.

22.     Plaintiff's distinction between Plaintiff's alcoholism and "use of alcohol" as a flight attendant is nonsensical and immaterial.

23.     Plaintiff unequivocally testified that since getting sober on September 5, 2014, alcoholism has not impacted her daily life activities or inhibited her ability to function. *See* Dkt. No. 36-3 at 71:11-14 ("Q. …From September 5th, 2014 [the date Plaintiff got sober] to the present, alcoholism has not impacted any of your major life activities; is that right? A. Correct."). In fact, since getting sober, Plaintiff has not only been able to care for herself but also for her children and her husband's grandmother. *See* Dkt. No. 36-3 at 70:5-20. Plaintiff's reliance on her response to a written discovery request is immaterial in that the response only concerns the impact of Plaintiff's alcoholism ***prior*** to the time she sought in-patient treatment rather than at the time she was requesting accommodation from Frontier. *See* Dkt. No. 36-7.

24.     Whether or not Plaintiff specifically called out as "sick" or as needing to use, IFMLA is immaterial. Plaintiff does not dispute that she refused to handle flights with layovers and that she called into Frontier to notify the airline when she planned not to show up for a flight because it had a layover. *See* Dkt. 1 at 6 (acknowledging that Plaintiff missed work days to avoid long layovers or overnight flights); Dkt. No. 36-3 at 124:16-24 ("Q. …So every time you had an overnight trip that you could not drop through collective bargaining bidding, you called out for that trip; is that correct? A. Yes. And Frontier told me to use intermittent FMLA for that."). Plaintiff also does not dispute that when she would run out of IFMLA, her absences would be coded as "sick" and as a result, that she incurred Occurrences and corresponding points under the Dependability Policy. *See* Dkt. No. 36-3 at 39:10-11; 40:5-10; 45:2-5.

26.     *See* ¶ 26 *supra,* ¶ 52 *infra.* To the extent Plaintiff claims she was complying with the terms of her treatment plan as required by Frontier, the evidence Plaintiff identifies indicates that the treatment plan must have been prepared by Plaintiff's Department of Transportation qualified SAP. Plaintiff has failed to present any evidence demonstrating that the treatment plan she relies upon was in fact a treatment plan prepared by her SAP. *See* Letter from Mr. Arellano to Plaintiff dated Sept. 16, 2014, attached as Exhibit 1 ("When an employee discloses a drug or alcohol dependency they must…[b]e evaluated by a Department of Transportation (DOT) qualified SAP – When you contact the Benefits Department or Compliance Department with your disclosure, the D&A Program Administrator will contact Ceridian's Employee Assistance Program and request a Substance Abuse Provider in your area who is qualified to make Department of Transportation determinations"). Further, the treatment plan does not prohibit Plaintiff from flying layovers or prohibit Frontier from requiring Plaintiff handle flights with layovers and Plaintiff's own contemporaneous communications with Frontier demonstrate that Frontier never held either belief.

29.     Plaintiff does not dispute that Frontier conveyed to Plaintiff that her requested accommodation would violate the terms of the CBA, which is all that is material for purposes of SUMF ¶ 29. *See* Dkt. No. 1 at ¶ 5.

30.     When Ms. Prince formed the opinion that Plaintiff's requested accommodation would violate the CBA is not addressed in SUMF ¶ 30 because it is immaterial. Regardless, as explained by Ms. Prince herself, Ms. Prince's Declaration is entirely consistent with her deposition testimony. *See* Dkt. No. 44-2 at 51:6-57:1. To the extent Plaintiff claims that "Ms. Prince confirmed that Ms. Brigham's request to build her schedule out of Open Time would not have

violated the CBA, her unequivocal deposition testimony is to the contrary. *See* Dkt. No. 44-2 at 58:13-24 ("Q….the union would not allow her to build her [schedule from] scratch on open time, because that would have violate the Collective Bargaining Agreement, correct? A. Correct."). Further, to the extent Ms. Prince testified that Plaintiff's request to temporarily transfer to the GO was reasonable, Ms. Prince also testified that there may not have been any light-duty assignments available at the time and that even flight attendants in Frontier's OJI Program were not always provided with light-duty assignments in the GO. *See* Dkt. No. 44-2 at 126:15-17 ("A. There was a certain time that there were no light-duty or availability to flight attendants to work not flying"); 127:12-19 ("Q. Do you know if that injured flight attendant is reassigned to light duty ever? A. It depends. And like I said, sometimes they were not offered light – light assignments. There—there wasn't the ability to have that.").

31.     Plaintiff again improperly reads language into SUMF ¶ 31, which has nothing to do with seniority to attempt to create a basis for her denial. *See* SUMF ¶ 31 (specifically stating "regardless of seniority").

32.     Plaintiff again improperly reads language into SUMF ¶ 32, which does not mention "reasonable accommodations" to attempt to create a basis to deny it. The basis for Plaintiff's denial—that the undisputed accommodations Mr. Arellano proposed were not "reasonable"—is a legal conclusion, which cannot generate a genuine dispute of material fact. *See Rich v. Torain,* No. CV PX-17-1285, 2018 WL 3122453, at *4 (D. Md. June 26, 2018) (bald legal conclusions couched as fact cannot generate a genuine dispute of material fact); *Brier v. De Cay,* 719 F. App'x 1001, 1002 (11th Cir. 2018) ("A mere scintilla of evidence in the form of conclusory allegations, legal conclusions, evidence that is merely colorable or not significantly probative of

a disputed fact cannot satisfy a party's burden.") (internal citations omitted).

37.     Plaintiff does not point to any evidence to support her conclusory statements that (i) assignments to the GO were not reserved for flight attendants injured on the job, (ii) there were vacant/open positions in the GO available at the time she requested accommodation, or (iii) Frontier "routinely transferred" flight attendants to such positions. *See id.*

38.     *See* Reply in Support of SUMF ("RSSUMF") ¶ 37 *supra*. Mr. Arellano specifically testified that he was providing a "guestimate," which cannot satisfy Plaintiff's burden on summary judgment. Dkt. No. 36-2 at 66:18-23. Further, Frontier's documentation actually demonstrates that since 2012, Frontier has not provided light duty assignments to any flight attendant (injured on the job or not) as an accommodation. *See* Dkt. No. 45 at p. 9, ¶ 19.

39.     Plaintiff cannot on the one hand concede that she did not have a definite date by which she would be able to handle layovers again and simultaneously maintain that the time she needed to become secure enough in her sobriety to handle layovers was not indefinite.[1]   The IFMLA certification cited by Plaintiff does not mention layovers or any recommendation that Plaintiff be excused from flights with layovers for any period of time. Further, the last IFMLA Certification Form Plaintiff submitted indicated that she needed 30 to 31 days for "intermittent incapacitation" per month beginning October 23, 2015 and ending May 23, 2016. *See* IFMLA Certification Executed October 27, 2015, attached as Exhibit 2.

41.     *See* ¶ 26 *supra.*

46.     Plaintiff fails to demonstrate how her refusals to fly scheduled flights with layovers

---

[1] The definition of "indefinite" is "not precise" and "having no exact limits." *See* Merriam-Webster Dictionary, available at https://www.merriam-webster.com/dictionary/indefinite (last visited Dec. 18, 2020).

in order to avoid off-duty situations during layovers that could tempt her to drink constitute "treatment appointments" or "incapacitation"[2]—the only circumstances under which Plaintiff was authorized to use IFMLA pursuant to the express terms of the her IFMLA certification forms and as acknowledged by Plaintiff. *See* Dkt. No 38-9; Dkt. No. 38-12; Ex. 2 (IFMLA Certification Executed October 27, 2015).

50.    Plaintiff cannot create a dispute of fact by contradicting her own deposition testimony, which plainly states that there were vacant positions available that Plaintiff was qualified for, but not interested in and that even with respect to the positions she would have been interested in regardless of qualification, she wanted to remain a flight attendant. *See* Dkt. No. 36-3 at 177:19-25; 178:6-9; 188:10-16; Dkt. No. 38-11 at p. 14.

51.    Plaintiff's own testimony and emails plainly admit that she forgot to email LOA before the start of a four (4) day trip scheduled to begin on October 23, 2015, to notify them that she planned to use IFMLA, contacting them instead on October 26, 2015.[3] *See* Dkt. No. 38-18; Dkt. No. 38-24 at pp. 2-3; Dkt. No. 36-3 at 180:13-23; 42:18-23. Plaintiff's union representative also made note of that fact along with the fact that had Plaintiff ever disagreed with the way her absences were coded, she should have contacted LOA. *See* Exhibit 3 (AFA Notes/Comments).

52.    *See* ¶ 51 *supra*. Regardless of whether Plaintiff was required to email "as soon as practicable," two hours before report time, the same day of the absence, or even the day following the absence, Plaintiff admittedly did not notify LOA until October 26, 2015—three (3) days after the October 23, 2015 trip was scheduled to commence and therefore, was in violation of Frontier

---

[2] Plaintiff refers to "intermittent capacitation," but presumably intended to refer to "intermittent *in*capacitation."

[3] Whether or not Plaintiff intended to keep the PDX turn is immaterial.

policy. *See* Dkt. No. 38-4 at Frontier Airlines (R. Brigham) – 317; Dkt. No. 38-3 at Frontier Airlines (R. Brigham) – 304; Dkt. No. 38-5 at Frontier Airlines (R. Brigham) – 907.

      53.    *See* ¶ 52 *supra*.

      60.    *See* ¶ 7 *supra*.[4]

      61.    *See* ¶ 30 *supra*. Even assuming *arguendo* that no provision in the CBA restricts Frontier from granting Plaintiff's request for accommodation, that fact is immaterial in that it does not make the requested accommodation reasonable or change the fact that Plaintiff was not entitled to an accommodation at all.

## III.    LEGAL ARGUMENT

### A.    Failure To Engage In The Interactive Process Is Not An Independent Claim.

This Court has specifically held that "an employer's failure to follow the interactive process **is not an independent basis for liability under the ADA**." *Lucero v. Terumo BCT, Inc.,* No. 14-CV-03061-LTB-NYW, 2015 WL 3619343, at *4 (D. Colo. June 10, 2015) (emphasis added). citing *Valdez v. McGill*, 462 Fed. Appx. 814, 819 n.5 (10th Cir. 2012) (citation and quotations omitted); *see also, Lowe v. Indep. Sch. Dist. No. 1 of Logan Cty.*, 363 F. App'x 548, 557 (10th Cir. 2010) ("[T]he interactive process is merely a method of facilitating statutory goals. It is a recommendation, not a statutory requirement . . . . [A] plaintiff cannot base a reasonable accommodation claim solely on the allegation that the employer failed to engage in an interactive process. Clearly an employer could, with impunity, ignore the interactive process so long as it reasonably accommodated employee needs.") (J. O'Brien, concurring). Unlike *Lucero,* the case

---

[4] Although immaterial, Plaintiff herself explained flight attendants could only swap trips in Open Time if the Reserve Board was in the green. *See* Dkt. No. 36-3 at 95:5-13, 95:23-96:20; 97:5-25.

Plaintiff cites—*Aubrey v. Koppes*—did not actually involve a separate claim for failure to engage in the interactive process and therefore, cannot stand for the proposition that failure to engage in the interactive process can be brought as an independent claim under the ADAAA. 975 F.3d 995, 1004 (10th Cir. 2020). Plaintiff's claim that Frontier has never argued that it participated in the interactive process in good faith is contradicted by the record, which addresses the argument in the context of the claims that are actually cognizable. *See* Dkt. No. 38 at SUMF ¶¶ 27-29, 32-36; 42-49, p. 25-26; Dkt. No. 45 at p. 32.

### B.     Plaintiff Failed To Sustain Her Burden Of Identifying Her Limitations With Precision And Comparing Them To Those Of The Average Person.

Though "substantially limits" is a less demanding standard post-ADAAA, to establish a physical or mental impairment substantially limits one or more major life activities, "a plaintiff must articulate **with precision** both her impairment and the major life activity it substantially limited" and demonstrate that the impairment renders her unable or significantly restricted in her ability to perform a major life activity ***compared to the average person in the general population.***" *Ortega v. S. Colorado Clinic, P.C.,* No. 13-CV-01397-WYD-CBS, 2015 WL 269812, at *2 (D. Colo. Jan. 20, 2015) (emphasis added) (citations and quotations omitted). For example, in *Ortega v. S. Colorado Clinic, P.C.,* this Court concluded that summary judgment was appropriate where the plaintiff, who suffered fibromyalgia and intersititial cystitis, had testified that she was capable of working without substantial problems and had failed to present evidence of how her difficulties compared to those of an average person in the general population. 2015 WL 269812, at *2. The plaintiff claimed that her fibromyalgia caused her "chronic widespread severe musculoskeletal pain and severe loss of sleep, resulting in only 2-3 hours of rest at night." *Id.* While the plaintiff submitted evidence that her fibromyalgia substantially limited her sleep, including a medical chart

indicating that the plaintiff to approximately three to four hours of nonrestorative sleep, the Court reasoned that she failed to present any evidence, "*as she must*," suggesting how her difficulties sleeping "compar[ed] to those of the average person in the general population (many of whom, of course, have nightmares or trouble sleeping)." *Id.*

Similarly, here, Plaintiff unequivocally testified that since getting sober on September 5, 2014, alcoholism has not impacted her daily life activities or inhibited her ability to function. *See* RSSUMF ¶ 23 *supra*. Like the plaintiff in *Ortega* who claimed her medical condition substantially limited her ability to see, learn, read, concentrate, think and work, Plaintiff claims she had trouble caring for herself, eating, sleeping, concentrating, and working. *See* Dkt. No. 44 at RSUMF ¶ 21. However, according to Plaintiff herself, she experienced these limitations *prior* to completing in-patient treatment and prior to requesting that she be excused from flights with layovers as an accommodation. *See* Dkt. No. 36-7 at pp. 8-9; *see Crowell v. Denver Health & Hosp. Auth.,* 572 F. App'x 650, 658 (10th Cir. 2014) (plaintiff failed to establish her physical impairments substantially limited her major life activities where plaintiff offered limited testimony concerning her limitations and it was unclear whether some of it concerned her abilities at the time she should have been reasonably accommodated). In fact, after completing in-patient treatment, Plaintiff testified that her life was dramatically better with the exception of occasional sleep issues. *See* Dkt. No. 70:19-20; 225:12-16. Like the Plaintiff in *Ortega*, however, Plaintiff has not presented any evidence "*as she must*," indicating how her problems sleeping compared to those of the average person in the general population, which as this Court observed in *Ortega*, much of which also experiences trouble sleeping. *Id.* at *5. Accordingly, Frontier is entitled to summary judgment on Plaintiff's discrimination and failure to accommodate claims because Plaintiff has failed to

adduce evidence demonstrating that her alcoholism substantially limited a major life activity as compared to most people in the general population and in fact, testified unequivocally to the contrary. *See also, Chavez v. Adams Cty. Sch. Dist. No. 50*, No. 15-CV-00411-RBJ, 2016 WL 1426919, at *5 (D. Colo. Apr. 12, 2016) (concluding that "no reasonable juror could conclude that [plaintiff's] anxiety and depression constituted a 'disability' within the meaning of the ADA" where plaintiff denied either condition limited her ability to perform her job or any life activities, rejecting her claim that her ability to "sleep, concentrate, think, and communicate" were limited on the grounds that she failed to support the assertion with evidence sufficient to overcome summary judgment.).

### C.   Plaintiff Was No Longer Qualified For The Flight Attendant Position Based Upon Her Own Insistence That She Could Not Cover Flights With Layovers.

Plaintiff only points to her own self-serving deposition testimony in support of her argument that handling flights with layovers was not an essential function of her job as a flight attendant, which is insufficient for purposes of surviving summary judgment. *See Latham v. High Mesa Commc'ns,* No. 17-CV-2118-JLK-GPG, 2019 WL 8267700, at *2 (D. Colo. Dec. 19, 2019), report and recommendation adopted, No. 17-CV-02118-JLK-GPG, 2020 WL 1317394 (D. Colo. Jan. 14, 2020) ("Conclusory statements, unsupported allegations, and testimony based merely on conjecture or subjective belief are insufficient evidence to support summary judgment."); *see also, Adair v. City of Muskogee,* 823 F.3d 1297, 1309 (10th Cir. 2016) ("We are reluctant to allow employees to define the essential functions of their positions based solely on their personal viewpoint and experience…Adair offers nothing but his personal experience to argue that his role does not require him to lift heavy objects. That's not enough.") (internal citation and quotation omitted). Even assuming *arguendo* that Plaintiff's self-serving testimony was not conclusory or

subjective, for purposes of determining which functions are essential to a particular position, courts nevertheless defer to employers not employees. *See Wells v. Shalala,* 228 F.3d 1137, 1144 (10th Cir. 2000), citing 29 C.F.R. § 1630.2(n)(3) (the employer's judgment is evidence considered for purposes of determining which functions are essential to a particular position); *Adair,* 823 F.3d at 1307-09 ("[O]ur disability-discrimination caselaw explicitly incorporates the EEOC's regulations and counsels in favor of deference to an employer's judgment concerning essential functions…[T]he employer describes the job and functions required to perform that job, and we defer to the employer's description…[T]he essential function inquiry is not intended to second guess the employer…[W]e will not second guess the employer's judgment when its description is job-related, uniformly enforced, and consistent with business necessity…[I]t is not our job as a court to sit as a super personnel department that second guesses employer's business judgments…[W]e weigh heavily the employer's judgment regarding whether a job function is essential…[W]e are reluctant to allow employees to define the essential functions of their positions based solely on their personal viewpoint and experience…") (internal citations and quotations omitted).

     In contrast to Plaintiff, Frontier has pointed to significant evidence demonstrating that handling a flight schedule that included layovers was an essential function of the flight attendant position. *See* Dkt. No. 35-5 (job description); Dkt. No. 45 at p. 9, ¶ 19 (since 2012, no other Frontier flight attendant has ever been excused from handling flights with layovers as an accommodation); Dkt. No. 36-3 at 218:16-219:14 (Plaintiff's testimony that she is unaware of any flight attendant who was excused from flying layovers as an accommodation); Dkt. No. 44-2 at 58:13-24 (testimony from the flight attendants' union that excusing a flight attendant from flights with

layovers would have violated the CBA); Dkt. No. 72:14-15 (Plaintiff's testimony that without Frontier's help, she could not avoid flights with layovers); Dkt. No. 36-3 at 54:16-55:5 (Plaintiff's testimony that she did not apply to any other flight attendant position with any other airline because she would have lost all seniority and therefore, started as a Reserve whose schedule would necessarily include layovers); Dkt. No. 38-5 at Frontier (R. Brigham) - 851 (discussing minimum scheduled rest periods between duty outstations and in layover stations and layover cities); Dkt. No. 38-5 at Frontier (R. Brigham) - 851 891 (discussing hotel accommodations for multi-day Reserve assignments). The fact that the Frontier flight attendant job description does not expressly use the term "layover" does not mean that layovers were not in fact essential functions of the position. *See* Dkt. No. 38-1 (Arellano Decl.) at ¶ 7 (The nature of any flight attendant position requires the ability to handle flights with layovers given that inclement weather and maintenance issues alone could require consecutive days of travel, necessarily requiring layovers for crewmembers); *see also Wells v. Shalala,* 228 F.3d 1137, 1144 (10th Cir. 2000) (job descriptions, the work experience of past incumbents in the job, the consequences of not requiring the incumbent to perform the function, the amount of time spent on the job performing the function, and the terms of a collective bargaining agreement are all considered for purposes of determining whether a job function is essential.).

### D. The ADAAA Does Not Require An Employer To Prevent Potentially Aggravating Circumstances Outside The Workplace.

The ADAAA does not require an employer to preemptively protect employees from circumstances that may trigger or aggravate an underlying mental health condition. S*ee Powrzanas v. Jones Util. & Contracting Co.,* No. 2:17-CV-975-GMB, 2019 WL 4305612, at *7 (N.D. Ala. Sept. 11, 2019), aff'd, No. 19-14314, 2020 WL 6375108 (11th Cir. Oct. 30, 2020) ("...under the

ADA the obligation to make reasonable accommodation [does not extend] to providing an aggravation-free environment") (internal quotation omitted), citing *Cannice v. Norwest Bank Iowa, N.A.,* 189 F.3d 723, 728 (8th Cir. 1999); *Christie v. Loomis Armored US, Inc.,* No. 10-cv-02011, 2013 WL 3381268 at *8 (D. Colo. July 8, 2013) ("Neither Title VII nor the ADA is intended to…promote an alcohol-free workplace"). Accordingly, Frontier was not required to excuse Plaintiff's absences resulting from her refusal to fly flights with layovers, which she believed could aggravate her alcoholism by placing her in environments in which she previously abused alcohol as an accommodation. *See* Dkt. No. 1 at ¶ 18 (describing layovers as situations that "exacerbate[ed] her disability"); *Grillasca-Pietri v. Portorican Am. Broad. Co.,* 25 NDLR P 26, 233 F. Supp. 2d 258, 264 (D.P.R. 2002) (Preventing stress-producing situations at work is an unreasonable accommodation under ADA as a matter of law).

Plaintiff's argument that even if she was required to use IFMLA to be excused from flights with layovers, she had unused IFMLA is not only immaterial, but wrong. Plaintiff had already exceeded the number of days she was permitted to take under the FMLA[5] and even if she had not, Plaintiff *never* submitted any IFMLA Certification Form medically certifying that she could not fly flights with layovers and has failed to present any evidence indicating otherwise. Frontier was simply allowing her to use her IFMLA for that purpose as an accommodation. The IFMLA Certification forms all indicated that Plaintiff's alcoholism was ***not*** interfering with her ability to do her job as a flight attendant, that Plaintiff was able to perform all functions of her job, and certified her for a certain number of absences per month for purposes of attending "***treatment***

---

[5] Even assuming she had been granted 16 days per month as Plaintiff claims, she could not exceed the limit permitted under the FMLA.

*appointments*" or to account for episodes of "***incapacitation***"[6] resulting from her alcoholism.[7] *See* Dkt. No. 38-9; Dkt. No. 38-12; Ex. 2 (IFMLA Certification Executed October 27, 2015). Plaintiff refusal to fly scheduled flights with layovers in order to avoid off-duty situations during layovers that could tempt her to drink do not fall into either category.[8] *See Conlon v. City & Cty. of Denver, Colo.,* No. 11-CV-02039-RBJ-CBS, 2013 WL 143453, at *6 (D. Colo. Jan. 14, 2013) ("An employee's failure to provide medical information necessary to the interactive process precludes [her] from claiming that the employer violated the ADA by failing to provide reasonable accommodation.") (internal citation and quotation omitted); *see also, Brown v. E. Maine Med. Ctr.,* 514 F. Supp. 2d 104, 111 (D. Me. 2007) (distinguishing between a medical *cause* established by a medical care provider's certification for IFMLA and a true medical *need*, emphasizing that the statute and regulations require a "medical need for leave" to support intermittent entitlement). Further, if Plaintiff believed that certain absences should have been coded differently (i.e. as IFMLA rather than sick), she was required to contact LOA to refute the coding, which as indicated by her own union representative, she failed to do. *See* RSSUMF at ¶ 51.

**E.    No Juror Could Reasonably Infer From the Record That Plaintiff's SAP Prohibited Her From Flying Layovers.**

To the extent Plaintiff claims that absences to avoid flights with layovers were mis-coded or should not have counted for purposes of the Dependability Policy because they were "required" pursuant to the terms of her treatment plan, she cites no evidence in the record that actually

---

[6] Plaintiff refers to "intermittent capacitation," but presumably intended to refer to "intermittent *in*capacitation."

[7] Examples of intermittent incapacitation identified by FMLA regulations include an employee with asthma who is unable to report to work due to an asthma attack or an employee who is pregnant is unable to report to work due to severe morning sickness. *See* 29 C.F.R. § 825.115.

[8] Despite this fact, Frontier had been allowing Plaintiff to use her IFMLA as an accommodation.

supports her position.  Plaintiff is correct in that Frontier required employees who self-disclosed to comply with treatment, after-care, or support group services *recommended by their SAP* who must be DOT certified. *See* Dkt. No. 36-8; *see also*, Dkt. No. 38-4 ("Frontier requires full compliance with any additional treatment or aftercare *recommended by a Substance Abuse Provider*"); RSSUMF ¶ 26 *supra*. Plaintiff, however, has failed to point to *any* evidence in the record indicating that Marla Madrid—the author of the treatment plan Plaintiff claims prohibited her from flying layovers—was her SAP.

Regardless, even assuming Ms. Madrid was Plaintiff's SAP and that Dkt. No. 36-8 was the treatment plan Plaintiff was required to abide by, it is facially clear from the document that Ms. Madrid was not prohibiting Plaintiff to avoid flights with layovers or requiring Frontier to excuse Plaintiff from flights with layovers. Under the section titled "Additional Information," the treatment plan simply states "*Rebecca* has identified triggers to cravings and opportunities to consume alcohol and those are on overnight trips or anything longer than a given work day in her professional arena. At this time *it would not be a good idea to encourage a vulnerable situation* with a work schedule that serves as a temptation, *if possible*." *See* Dkt. No. 36-8 (emphasis added); *see also*, Dkt. No. 38-24 at BRIGHAM LM 00000045 (Plaintiff's testimony that she drank off-duty during layovers). The "Additional Information" is just that—additional information reflecting a suggestion to Frontier based upon information conveyed to Ms. Madrid by Plaintiff herself and Plaintiff's subjective belief about what could trigger her to relapse is not "competent summary judgment evidence" that can support her claim that she needed an accommodation, including the one she requested. *See Anderson v. Guar. Bank & Tr. Co.*, No. 14-CV-01508-NYW, 2015 WL 5915366, at *2 (D. Colo. Oct. 9, 2015), judgment entered, No. 14-CV-01508-NYW, 2015 WL

5915367 (D. Colo. Oct. 9, 2015) ("Conclusory statements based merely on speculation, conjecture, or subjective belief are not competent summary judgment evidence."). Further, the rest of the document, which describes Plaintiff's treatment, including modality and frequency makes no mention of avoiding flights with layovers as part of Plaintiff's "treatment" and instead, affirms that Plaintiff was **not** experiencing occupational problems as a result of her alcoholism. *See* Dkt. No. 36-8.

### F.   Plaintiff Rejected Accommodations That By Her Own Testimony She Needed To Perform Her Job As A Flight Attendant.

Plaintiff testified that she could not complete the essential functions of her job as a flight attendant without an accommodation that would allow her to get further into her recovery and become more secure in her sobriety, which she claimed would be in the near future. *See* Dkt. No. 36-3 (Pl.'s Dep. Tr.) at 224:14-22;  77:8-9;  77:2-4;  76:10-16.  Frontier offered exactly that— additional forms of leave[9] so that Plaintiff could get further along in her recovery and have the ability to handle flights with layovers. *See* Dkt. No. 32 at SUMF ¶ 31; *Aubrey v. Koppes*, 975 F.3d 995, 1007 (10th Cir. 2020) ("a request for a plausibly reasonable accommodation refers to those

---

[9] While Plaintiff claims that the leave Frontier proposed was not a reasonable accommodation because it was unpaid, she cites no case law in support. *See,* 29 C.F.R. § Pt. 1630, App. (2016) ("other accommodations could include permitting the use of accrued paid leave or providing additional **unpaid leave** for necessary treatment") (emphasis added); EEOC Enforcement Guidance, https://www.eeoc.gov/laws/guidance/enforcement-guidance-reasonable-accommodation-and-undue-hardship-under-ada (quoting same); *Jacobsen v. Dillon Companies, Inc.*, No. 10-CV-01944-LTB-BNB, 2012 WL 638122, at *7 (D. Colo. Feb. 28, 2012) (leave in order to recover from an injury or illness may be a reasonable accommodation if such a request allows the employee to perform the essential functions of the job in 'the near future'"); *Jones v. Parkview Hosp., Inc.,* No. 1:16-CV-408, 2020 WL 6291462, at *9 (N.D. Ind. Oct. 26, 2020) ("With respect to unpaid leaves, an unpaid leave may be a reasonable accommodation provided that the leave is likely to be effective in allowing the employee to return to work at the end of the leave, with or without further reasonable accommodation ...."), citing 2 C.C.R. § 11068(c).

accommodations which presently, ***or in the near future***, enable the employee to perform the essential functions of [their] job") (internal citation and quotation omitted)*; see also, Kuehl v. Wal-Mart Stores, Inc.,* 909 F. Supp. 794, 803 (D. Colo. 1995) ("[w]here the nature of the accommodation offered by an employer is undisputed and no reasonable jury could find the offered accommodation to be unreasonable, however, summary judgment is appropriate."). Plaintiff, however, rejected those proposals and instead, continued to refuse to handle flights with overnights while demanding that she be able to build her schedule from scratch, disqualifying herself from any protection she may have had under the ADAAA as a result. *See* Dkt. No. 44 at ¶¶ 33, 24 29; C.F.R. § 1630.9(d) ("…if such individual rejects a reasonable accommodation…that is necessary to enable the individual to perform the essential functions of the position held or desired, and cannot, as a result of that rejection, perform the essential functions of the position, the individual will not be considered qualified").

Plaintiff's claim that the positions Frontier encouraged her to apply to internal positions for which she was unqualified is contradicted by the record, which only shows that Frontier repeatedly encouraged Plaintiff to look at vacant opportunities posted on UltiPro and MyFrontier.org and to indicate to Frontier whether she was interested in any of them. *See* Dkt. No. 38-11 (June 4 Meeting) at p. 3, 12-13. Plaintiff testified unequivocally that she "occasionally" looked at vacant internal positions and that although she was qualified for some of them, she was not interested in those positions and was not seriously considering *any* internal transfer as an accommodation because she wanted to remain a flight attendant. *See* Dkt. No. 36-3 at 176:6-177:5; 177:20-25; *see also,* Dkt. No. 38-11 at p. 14; Dkt. No. 38-15 at p. 17-18 (reiterating request to be excused from layovers); Dkt. No. 38-25 (reiterating request to be excused from layovers).

Finally, while Plaintiff contends she *did* request additional IFMLA as Frontier proposed, she failed to do so until *after* she had already exceeded her IFMLA and accumulated more than enough attendance points to warrant her termination of employment, and as noted by Plaintiff's own union representative, failed to return the IFMLA paperwork within the required timeframe and faxed it to the wrong number. *See* Ex. 3 (AFA Notes/Comments). Retroactively excusing absences is not something the ADAAA requires of employers. *See Aman v. Dillon Companies, Inc.,* 645 F. App'x 719, 726 (10th Cir. 2016) (rejecting plaintiff's argument that his employer should have retroactively excused his absences when he submitted a doctor's note); *Brookins v. Indianapolis Power & Light Co.,* 90 F. Supp. 2d 993, 1007 (S.D. Ind. 2000) ("retroactive 'excusing' of the prior weeks of absences is not something that the ADA required [defendant] to accept.").

## IV.    CONCLUSION

For the forgoing reasons and those set forth in Frontier's Motion [Dkt. No. 38], Frontier respectfully requests that the Court grant summary judgment in its favor on Plaintiff's claims in their entirety, dismissing them with prejudice.

Respectfully submitted this 22nd day of December, 2020.

> */s/ Danielle L. Kitson*
> Danielle L. Kitson
> Carolyn B. Theis
> LITTLER MENDELSON, P.C.
> 1900 Sixteenth Street, Suite 800
> Denver, CO 80202
> Telephone: 303.629.6200
> Facsimile: 303.629.0200
> Email:  dkitson@littler.com
>         catheis@littler.com
> *Attorneys for Defendant Frontier Airlines, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 22nd day of December 2020, I filed and served the foregoing

**DEFENDANT'S REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY**

**JUDGMENT** via CM/ECF to the following:

John R. Crone
The Law Office of John R. Crone, LLC
4550 E. Cherry Creek Drive South, #1003
Glendale, Colorado 80246
john@crone-law.com

*Attorney for Plaintiff*

                                        s /Joanna Fox
                                        _____
                                        Joanna Fox, Legal Secretary

4843-8600-0084.5 057446.1017