**AFFIDAVIT OF CHRISTINE KERNEN IN SUPPORT OF CHARGES OF JO ROBY, STACY REWITZER, RENEE SCHWARTZKOPF, AND MELISSA HODGKINS AGAINST FRONTIER AIRLINES**

*Re:* Charge Nos:
Jo Roby          541-2017-01427
Stacy Rewitzer   541-2017-01430
Renee Schwartzkopf (charge number to be assigned)
Melissa Hodgkins (charge number to be assigned)

---

1. My name is Christine Kernen. I was born on December 10, 1982.

2. My address is 149 Veronica Drive, Windsor, Colorado, 80550.

3. My current email address is christine.kernen@yahoo.com

4. My current phone number is 970-381-8430.

5. I submit this affidavit in support of the Charges of Discrimination filed on May 16, 2017 by the charging parties Jo Roby and Stacy Rewitzer (the "Charging Parties") against Frontier Airlines ("Frontier").

6. I worked as a flight attendant employed by Frontier for eleven years, beginning in May 2005 and ending in July 2016.

7. Prior to working at Frontier, I was an undergraduate student; I graduated from the University of Northern Colorado in 2005.

8. I gave birth to two children while working for Frontier, the first on March 3, 2014 and the second on November 9, 2015.

9. As was true for the Charging Parties, Frontier did not provide me with appropriate workplace accommodations for pregnancy or breastfeeding.

1

BrighamR_PlaintiffRecords0820

10. With my first child, I stopped flying at 32 weeks, in late December 2013. I did not have the option to seek a temporary ground position that would have permitted me to continue working during the remainder of my pregnancy.

11. Through careful planning of my schedule and vacation days, and because I took an unpaid Company Offered Leave of Absence in February 2014, I was able to save twelve weeks of Family Medical Leave Act ("FMLA") leave for after childbirth.

12. Upon my return to work in July 2014, Frontier did not offer me any on-the-job pumping accommodations, and the company never informed me of policies related to breastfeeding accommodations.

13. I learned from another flight attendant with children that new mothers pumped in the aircraft lavatory during flights. I generally worked two-day trips with eight to ten hour shifts. I occasionally pumped in the family bathroom at the Denver Airport, but I generally did not have long enough breaks to pump on the ground at the airport between flights. Because of my medical need to express breast milk on a frequent and regular basis, at times I had no option but to pump in the aircraft lavatory during flight. I suffered from pain and engorgement when I had to delay pumping because I lacked adequate time or a convenient location to express breast milk.

14. I breastfed my first child until January 2016, when she was approximately ten-months old.

15. With my second child, I again stopped working at approximately 32 weeks and did not have the option to seek a temporary ground position that would have permitted me to continue working during the remainder of my pregnancy.

BrighamR_PlaintiffRecords0821

16. During my second pregnancy I suffered from pregnancy-related migraines and had to use approximately four weeks of my FMLA leave while pregnant to avoid accruing dependability points.

17. Frontier calculated how much FMLA leave I had remaining after my second childbirth by deducting seven days of leave for every week that I would be out, even though flight attendants are never scheduled to work more than six days per week. With the help of the flight attendants' union, the Association of Flight Attendants (AFA), I was able to secure the correct amount of FMLA leave to which I was entitled and took approximately eight weeks of FMLA leave following childbirth. I also took four accrued paid vacation days in addition to my leave.

18. After I gave birth to my second child, my doctor diagnosed me with post-partum depression, and Frontier granted me approximately eight weeks of extended unpaid medical leave, until the end of March 2016. I did not request additional leave for breastfeeding because I was unaware of any Frontier policy permitting such leave.

19. By the end of March, I no longer was experiencing post-partum depression, and it was not financially feasible for me to continue on unpaid leave.

20. I returned to flying in April 2016, when my daughter was approximately five months old. At the time, I was still breastfeeding and once again had no other option but to pump breast milk in the aircraft lavatory during flight, or in the family bathroom at the Denver Airport when feasible. I was concerned about the unsanitary conditions of pumping breast milk for my child in the aircraft lavatory.

21. Frontier again did not offer any accommodations or provide any information about pumping breast milk on the job.

3

BrighamR_PlaintiffRecords0822

22. In April 2016, I emailed Kari Thompson, Manager of InFlight Services, to ask if there were any pumping rooms available for flight attendants at the Denver Airport other than at Frontier's General Office. Ms. Thompson responded that the only place for me to pump near the airport would be the Westin Airport Hotel—an offsite, privately owned airport hotel—which had a private bathroom that I could try to access. However, a bathroom, even private, is not an adequate place to pump. And even if it were better than the airport bathrooms, the hotel is located outside of the airport, an approximate 30 minute roundtrip walk away, making it impossible to get there, pump and get back during my short breaks between flights. Further, because the hotel is not owned by Frontier, I would not have been guaranteed access.

23. In spring 2016, I was scheduled for several five-day trips with red-eye flights. Traveling away from home for five days at a time while nursing a young child would have been extremely exhausting and logistically challenging. It is difficult to keep milk stored, cold, and fresh during five consecutive days of travel. I also would struggle to find adequate break time and locations to pump while working for five consecutive days. In addition, red-eye flights exacerbated my chronic sleep deprivation, since I had to wake up every three hours to pump breast milk throughout the night.

24. Because working my scheduled five-day trips and continuing to pump breast milk on the job was not feasible, I called in sick and accrued dependability points for those trips. These points were added to my points from an existing non-pregnancy related attendance occurrence that had not yet rolled off my record due to my FMLA and medical leave following childbirth.

4

BrighamR_PlaintiffRecords0823

25. I became concerned about incurring additional dependability points if I continued to call in sick, risking disciplinary action or termination, but I could not maintain a schedule which was incompatible with my medical need to express breast milk frequently and regularly.

26. In May 2016, I called Ms. Thompson to express concerns about my scheduled five-day trips and request a leave of absence, or any other feasible alternative accommodation. Ms. Thompson denied my request.

27. Between May and July, I expressed breast milk on the job including at the hotel before a flight, in family bathrooms at outstations when possible, and in the aircraft lavatory. I often experienced pain and engorgement because I did not have adequate break time to express breast milk, and had to delay pumping until I was leaking and physically no longer able to stand the pain.

28. In July 2016, I quit my job with Frontier because the lack of accommodations meant I would continue to accrue dependability points for absences, although I was already at imminent risk of termination due to my accumulated dependability points.

29. Frontier's failure to accommodate breastfeeding mothers negatively impacted my health. On multiple instances, I suffered from pain and engorgement when I was not able to take breaks to express breast milk on the job. During that time, I either suffered from sleep deprivation when I pumped regularly throughout the night, or experienced pain and engorgement when I delayed pumping in order to get sufficient sleep to perform my duties. I was also forced to pump breast milk in unsanitary conditions, such as aircraft lavatories and family bathrooms.

30. I support the policy changes being sought by the Charging Parties, and believe those policies would have benefitted a large number of female flight attendants. I support giving flight attendants the option to seek additional unpaid leave or have a temporary ground

BrighamR_PlaintiffRecords0824

assignment while they are unable to fly due to pregnancy and while they are breastfeeding. Had I had those options, I would not have had to stop breastfeeding my first child when she was approximately 10 months old, and would not have felt forced to quit my job in order to breastfeed my second child. If I had been offered adequate on-the-job accommodations after my second child, I would have still been employed as a flight attendant when Frontier distributed $62,000 equity payouts, just nine months after I left.

31. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief. They are made voluntarily and without any benefit (actual or promised) offered in exchange for making these statements.

Executed on this 4 day of Oct, 2017.

_____
Christine Kernan

_____
Notary Public

DEANNA M. SMITH
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20064043910
MY COMMISSION EXPIRES 6-15-2020

BrighamR_PlaintiffRecords0825