**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 19-cv-3417-WJM-STV

REBECCA BRIGHAM,

     Plaintiff,

v.

FRONTIER AIRLINES, INC.,

     Defendant.

---

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

Before the Court are Defendant Frontier Airlines, Inc.'s ("Frontier") Motion for Summary Judgment ("Motion for Summary Judgment") (ECF No. 38) and Plaintiff Rebecca Brigham's ("Brigham") Motion for Partial Summary Judgment ("Motion for Partial Summary Judgment") (ECF No. 36). For the following reasons, the Motion for Summary Judgment is granted, and the Motion for Partial Summary Judgment is denied.

## I. STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). An

issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party.  *Allen v. Muskogee, Okla.*, 119 F.3d 837, 839 (10th Cir. 1997) (citing *Anderson*, 477 U.S. at 248).

The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter."  *Concrete Works, Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325)).  The nonmoving party may not rest solely on the allegations in the pleadings, but must instead "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Celotex*, 477 U.S. at 324.  The court may consider only admissible evidence when ruling on a summary judgment motion.  *See World of Sleep, Inc. v. La–Z–Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).  The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment.  *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998) (citing *Concrete Works*, 36 F.3d at 1517).

## II. BACKGROUND AND PROCEDURAL HISTORY[1]

Brigham began her employment as a flight attendant with Frontier in 2007.  On September 7, 2014, Brigham disclosed to Frontier that she had entered an inpatient

---

[1] The following factual summary is based on the parties' briefs on the Motion for Summary Judgment, the Motion for Partial Summary Judgment, and documents submitted in support thereof. These facts are undisputed unless attributed to a party or source.  All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

rehabilitation program for alcoholism.  Frontier granted Brigham continuous Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601–2654, leave to complete the 60 day inpatient program in October 2014.  In November 2014, Brigham's healthcare provider completed a Frontier Airlines Fitness for Duty Certification, in which he stated she had no restrictions whatsoever and is able to work a full, regular schedule beginning on November 17, 2014.  (ECF No. 38-8.)  Brigham has been sober since September 5, 2014.

During Brigham's employment with Frontier, flight schedules for active flight attendants were determined by a bidding process based upon seniority as set forth in the flight attendants' collective bargaining agreement with Frontier (the "CBA"), which required all active Frontier flight attendants to bid for the flights posted and accumulate a minimum of 60 credit hours.  (ECF No. 38 at 4 ¶ 2; ECF No. 38-1 ¶ 35; ECF No. 36-3 at 21; ECF No. 38-5.)  After the bidding process closed, awards were determined by seniority such that if multiple flight attendants bid for the same trip, the flight attendant with the greatest seniority was awarded the trip.  (ECF No. 38 at 4 ¶ 3; ECF No. 38-1 ¶ 36.)  After awards were determined, flight attendants had the ability to add, drop, and/or swap their scheduled flights on a first-come first-served basis using flights available in "Open Time," but they were prohibited from dropping below 45 credit hours.  (ECF No. 38 at 4 ¶ 4; ECF No. 38-1 ¶ 37.)

Pursuant to the CBA, flight attendants were considered inactive, and therefore, ineligible to bid if they have been granted Frontier-approved continuous leaves such as Leave of Absence ("LOA"), Medical Leave ("MED"), FMLA Leave, or On the Job Injury ("OJI") Leave.  (ECF No. 38 at 4–5 ¶ 5; ECF No. 38-1 ¶ 37; ECF No. 38-5 at 43–44.)  If

a flight attendant returning from a Frontier-approved leave missed the above-described bid period, the flight attendant was permitted, for the remainder of that month, to pick up Open Time to build a schedule and/or be assigned Reserve days.  (ECF No. 38 at 5 ¶ 6; ECF No. 38-1; ECF No. 38-5 at 54.)  Flight attendants returning from continuous leaves of absence, and were therefore inactive during the bidding period, were the only Frontier flight attendants who were excused from the bidding process and permitted for the remainder of that month to pick up Open Time to build a schedule.  (ECF No. 38 at 5 ¶ 7; ECF No. 38-1; ECF No. 38-5 at 54.)  A flight attendant on Intermittent FMLA ("IFMLA") leave still had to bid.  (ECF No. 38-22 at 3.)

In addition, during the time period relevant to this litigation, Frontier's attendance policy, the "Dependability Policy," applied.  (ECF No. 38-4 at 51–55.)  The Dependability Policy defines Occurrences in various ways, for example, "Absenteeism/Sick Call = 1 Occurrence," and "No Call/No Show = 2 Occurrences," and states that employees incurring eight "Occurrences" within a twelve-month period would be subject to termination.  (*Id.*)

After returning to Frontier from her rehabilitation program, Brigham began calling out as sick, incurring Occurrences under the Dependability Policy.  (ECF No. 38 at 8 ¶ 24; ECF No. 38-1 ¶ 24; ECF No. 38-6.)  However, according to Brigham, she "was complying with the terms of her treatment plan, as required by Frontier, while Frontier was simultaneously failing to accommodate [her]."  (ECF No. 44 at 10 ¶ 24.)  A few days after receiving a written warning from Frontier, Brigham obtained paperwork from her medical care provider for purposes of certifying her for IFMLA leave for four days per month.  Brigham, however, continued to call out as sick when she exceeded the number

of authorized IFMLA leave days per month and failed to abide by the two hours

minimum notice requirement.  (ECF No. 38 at 8–9 ¶ 26; ECF No. 38-1 ¶ 27.)

On June 4, 2015, Brigham met with Cassie Micklich, Drug & Alcohol Specialist at

Frontier, and Gerardo Arellano, Senior Employee/Labor Relations Manager/Special

Projects at Frontier, to discuss her continued exhaustion of IFMLA leave.  At that

meeting, Brigham made certain requests for accommodations.  Brigham asked if

Frontier could adjust her flight schedule so that she could avoid flights with layovers,

including overnight layovers, which she said tempted her to drink and thus, jeopardized

her sobriety.  (ECF No. 38 at 9 ¶ 28.)

Arellano indicated that Frontier wanted to support Brigham but could not adjust

her schedule to avoid flights with layovers or allow her to create her own schedule

because doing so would violate the CBA.  (ECF No. 38 at 9 ¶ 29; ECF No. 38-1 ¶ 33.)

Brigham disputes that Arellano mentioned her request might violate the CBA.  (ECF No.

44 at 12 ¶ 29.)  Arellano states in his declaration that flight attendants' schedules were

and remain determined by seniority-based bidding under the CBA, and Frontier does

not and did not customize trip schedules for flight attendants.  (ECF No. 38-1 ¶ 34.)

Further, Arellano states that Frontier has never excused an active flight attendant from

the seniority-based bidding rules set forth in the CBA to allow that flight attendant to

create her own schedule out of Open Time to avoid certain types of flights.  (ECF No.

38-1 ¶ 38.)

In addition, according to Arellano, it was Frontier's understanding that allowing

Brigham to build her own schedule from Open Time would necessarily penalize other

flight attendants, regardless of seniority, by taking away alternative and/or additional

flight opportunities from other flight attendants looking to modify their schedules.  (ECF No. 38-1 ¶ 39.)  Adrienne Prince,[2] a union representative, testified at her deposition that the union would not allow Brigham to build her schedule from scratch on Open Time or simply remove Brigham from overnight trips because doing so would violate the CBA. (ECF No. 48 at 6–7 ¶ 30; ECF No. 44-2 at 5, 17.)

Arellano suggested that Brigham could apply for other accommodations—though Brigham disputes the characterization of the suggestions as "accommodations"— including personal leave or non-FMLA leave, or explore other positions with Frontier. (ECF No. 38-1 ¶ 40; ECF No. 44 at 13 ¶ 32.)  However, Brigham did not want to transfer internally because she preferred being a flight attendant and did not want to relocate and/or give up her seniority rights in exchange for a new position.  (ECF No. 38-1 ¶ 41.)

Also at the June 4, 2015 meeting, Brigham asked whether she could temporarily work at the General Office ("GO") doing administrative work without losing her seniority, like Frontier employees on OJI program were permitted to do.  (ECF No. 38 at 10 ¶ 37; ECF No. 38-1 ¶ 42.)  In his declaration, Arellano explains that the CBA included a collectively-bargained for OJI provision, allowing Frontier the discretion to provide flight attendants injured on the job—but only flight attendants injured on the job—with temporary light duty assignments in the GO.  (ECF No. 38 at 10 ¶ 37; ECF No. 38-1 ¶ 43.)  He clarifies that these assignments were not open job positions; rather, when a flight attendant injured on the job was temporarily unable to work, she would be permitted to help others in the GO with their own light-duty responsibilities.  (ECF No.

---

[2] From late 2014–2015, Prince was Vice President of the Association of Flight Attendants-CWA, AFL-CIO.  (ECF No. 44-1 at 1.)  In that capacity, Prince requested accommodations from Frontier on behalf of Brigham.  (*Id.*)

38 at 10 ¶ 37; ECF No. 38-1 ¶ 43.)  Arellano states that consistent with the CBA, work at the GO was only provided as an accommodation to flight attendants in Frontier's OJI program, which he explained to Brigham.  (ECF No. 38 at 11 ¶ 38; ECF No. 38-1 ¶ 44; ECF 38-23.)

Shortly after the June 4, 2015 meeting, Brigham submitted a revised IFMLA Certification Form, increasing the number of authorized IFMLA leave from four days per month to 12.  (ECF No. 38 at 11 ¶ 40.)  According to Frontier, however, Brigham continued to exhaust her IFMLA leave and incurred Occurrences for calling out "sick." (ECF No. 38 at 11 ¶ 41.)  Brigham disputes the causes of the Occurrences, stating that her absences were directly related to the fact that Frontier required her to comply with her treatment plan but refused to reasonably accommodate her to make compliance possible.  (ECF No. 44 at 17 ¶ 41.)

On October 9, 2015, Brigham met with Jeff Varney and Kari Thompson, both Managers with Inflight Services, and Arellano.  (ECF No. 38 at 11 ¶ 42.)  Brigham reiterated how she loved being a flight attendant, particularly because of the job's flexibility and asked whether as an accommodation, she could start with a blank schedule and be responsible for building her own schedule up to 60 hours.  (ECF No. 38 at 11 ¶ 43; ECF No. 38-1 ¶ 52.)  Arellano explained that this practice was reserved for flight attendants returning from continuous leaves of absence who had not been active flight attendants during the bidding period the month they returned from leave and therefore, could not have bid; thus, allowing Brigham to craft her own schedule would violate the CBA's seniority provisions, creating the impression that Frontier was "cherry-picking" flight attendants to have the benefit of building their own schedules

without regard to seniority.  (ECF No. 38 at 11–12 ¶ 44; ECF No. 38-1 ¶ 53.)  Brigham admits that Arellano said as much but states he was mistaken in his assertions.  (ECF No. 44 at 17–18 ¶ 44.)

According to Arellano, Frontier had already been allowing Plaintiff to use IFMLA for purposes other than those included in her certifications (*i.e.*, relapse prevention counseling and support group meetings) by allowing her to use IFMLA leave to avoid flights with overnight layovers.  (ECF No. 38 at 12 ¶ 46; ECF No. 38-1 ¶ 46.)  However, Brigham denies Arellano's characterization of her use of IFMLA leave, stating that based on the designations of use of leave for "intermittent incapacitation" and "treatment appointments," Frontier actually approved her for anywhere between eight and 16 days of leave per month.  (ECF No. 44 at 18 ¶ 46; ECF No. 38-1 ¶¶ 55–56.)  Arellano emphasized to Brigham that ultimately, Frontier needed "employees who can come to work," but reminded her that she could apply for a personal leave as a further accommodation, additional IFMLA leave, and/or for another internal position within the company.  (ECF No. 38 at 12 ¶ 47; ECF No. 38-1 ¶ 57.)  Arellano notified Brigham that a Flight Training Coordinator position was becoming available, but Brigham repeated her concerns about losing her seniority.  (ECF No. 38 at 12 ¶ 48; ECF No. 38-1 ¶ 58.)  Brigham was encouraged to check for other internal opportunities on Frontier's internal system on a weekly basis.  (ECF No. 38 at 12 ¶ 49; ECF No. 38-1 ¶ 59.)

Less than 10 days after the October 9, 2015 meeting, Brigham failed to report for a four-day trip.  (ECF No. 38 at 13 ¶ 51.)  Brigham denies as much, stating that she "kept the PDX turn on the end" of this trip, *i.e.*, that she did not fail to report for the four-day trip.  (ECF No. 44 at 19 ¶ 51.)  However, Frontier submits Brigham's October 26,

2015 e-mail to Frontier regarding the incident, in which Brigham wrote to LOA Frontier

Employees:

> I woke up this morning in a panic, I forgot to send you an
> email on Friday, I had to use my intermittent Fmla on 10/23
> for a 4 day but I kept the pdx turn on the end.  Please let me
> know if this will have to be coded as sick and if so what # of
> points am I at?  Also the new fmla paperwork will be faxed
> by Tuesday. I hope you have a good day.

(ECF No. 38-17.)  As this e-mail demonstrates, Brigham failed to contact the LOA

Department for approval to use IFMLA Leave for the four-day trip until the day following

the first day of the trip in violation of Frontier policy—this was three days after the

October 23, 2015 trip was scheduled to commence.  (ECF No. 38 at 13 ¶ 52.)

According to Arellano, Brigham had exhausted her available IFMLA leave by October

19, 2015.  (ECF No. 38-1 ¶ 62; ECF No. 38-13.)  Frontier's LOA Department denied

Brigham's request to use IFMLA Leave for the four-day trip for her lack of timely notice,

though Brigham disputes that her notice was untimely.  (ECF No. 38 at 13 ¶ 53; ECF

No. 44 at 19 ¶ 53.)

On October 30, 2015, Frontier sent Brigham a letter indicating that pursuant to

the CBA, an Investigatory Meeting had been scheduled for November 3, 2015 for her to

attend to discuss her violations of the Dependability Policy.  (ECF No. 38 at 13 ¶ 54.)

On November 3, 2015, Brigham, Stephanie Coppedge, Supervisor of Inflight Services at

Frontier, Andrea Warfield, Senior Human Resource Manager at Frontier, and Prince

met to discuss Brigham's violations of the Dependability Policy.  (ECF No. 38 at 13 ¶

55.)  During that meeting Brigham admitted that she had forgotten to email Frontier's

LOA Department immediately regarding her decision to call out "sick" for the four-day

trip beginning October 23, 2015 as required by company policy.  (ECF No. 38 at 13 ¶

56.)  Brigham reiterated her request to avoid flights with layovers or to allow her to build her own schedule out of Open Time.  (ECF No. 38 at 13 ¶¶ 57–59.)  Frontier again explained that these requests would violate the CBA; Brigham disputes as much.  (ECF No. 38 at 13 ¶¶  60–62; ECF No. 44 at 20 ¶ 60; ECF No. 48 at 6 ¶ 30.)

On November 11, 2015, Frontier informed Brigham that it was terminating her employment effective immediately for incurring 10 Occurrences within a 12-month period in violation of the Dependability Policy under which eight Occurrences subjected an employee to termination.  (ECF No. 38 at 15 ¶ 64; ECF No. 38-20.)  Brigham does not dispute that she was absent on more than eight occasions within the 12-month period preceding her discharge, though she does dispute whether those absences should have counted under the Dependability Policy because she "only accrued [them] due to Frontier's failure to accommodate her disability."  (ECF No. 38 at 15 ¶ 65; ECF No. 44 at 23 ¶ 65.)

On May 10, 2016, Brigham filed a Charge of Discrimination with the Colorado Civil Rights Division, and her charge was transferred to the United States Equal Employment Opportunity Commission ("EEOC").  (ECF No. 1 ¶ 15.)  On June 4, 2019, the EEOC issued a determination in Brigham's favor.  (*Id.* ¶ 22.)  The parties were nonetheless unable to resolve the dispute after the EEOC's determination.  (*Id.* ¶ 23.)

On December 4, 2019, Brigham filed her Complaint.  (ECF No. 1.)  She brings four claims against Frontier, including: (1) failure to accommodate in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, *et seq.* (the "ADA"); (2) failure to engage in the interactive process in violation of the ADA; (3) retaliation in violation of the ADA; and (4) discrimination in violation of the ADA.  (*Id.*)

On February 3, 2020, Frontier filed its Answer.  (ECF No. 12.)

On November 17, 2020, Brigham filed her Motion for Partial Summary Judgment, arguing that there are no disputed issues of material fact between the parties regarding: (1) whether she was a qualified individual with a disability under the ADA; or (2) whether Frontier violated the ADA when it denied her request to be temporarily reassigned as a reasonable accommodation.  (ECF No. 36 at 1.)  Frontier responded in opposition (ECF No. 45), and Brigham replied (ECF No. 47).

Also on November 17, 2020, Frontier filed its Motion for Summary Judgment, arguing that it is entitled to summary judgment on all claims.  (ECF No. 38 at 1.) Brigham responded in opposition (ECF No. 44), and Frontier replied (ECF No. 48).

### III. ANALYSIS[3]

#### A.      Failure to Engage in the Interactive Process (Count II)

In her Complaint, Brigham alleges that Frontier violated the ADA by failing to engage in the interactive process.  (ECF No. 1 ¶¶ 30–35.)  In connection with this claim, she alleges that the "ADA requires that employers . . . engage in a good faith interactive process with employees to determine the nature of possible reasonable accommodations . . . ."  (*Id.* ¶ 33.)  She further alleges that her "many requests for a reasonable accommodation were denied; [and that] Frontier refused to engage in the interactive process in good faith . . . ."  (*Id.* ¶ 34.)

Frontier is entitled to summary judgment on Brigham's putative claim for failure to engage in the interactive process as a matter of law.  The Tenth Circuit has held that

---

[3] The parties both moved for summary judgment on numerous claims, asserting numerous theories; however, the Court limits its analysis to those issues which are dispositive of all claims in this case and will not address the parties' remaining arguments.

the failure to engage in the interactive process is not independently actionable under the ADA.  *See Valdez v. McGill*, 462 F. App'x 814, 819 (10th Cir. 2012) (affirming the trial court's decision to grant the defendant's motion for summary judgment on the plaintiff's claim for failure to engage in the interactive accommodation process on the grounds that such failure "is not actionable discrimination" under the ADA); *Lucero v. Terumo BCT, Inc.*,  2015 WL 3619343, at *4 (D. Colo. June 10, 2015) ("an employer's failure to follow the interactive process is not an independent basis for liability under the ADA"). To the extent Brigham disputes as much by relying on *Aubrey v. Koppes*, 975 F.3d 995, 1007 (10th Cir. 2020), Frontier correctly points out that *Aubrey* did not involve a separate claim for failure to engage in the interactive process, rendering Brigham's argument unavailing.  Accordingly, the Court will grant summary judgment in favor of Frontier on her putative claim for failure to engage in the interactive process.

## B.     Discrimination (Count IV) and Retaliation (Count III)[4]

The ADA prohibits discrimination "against a qualified individual on the basis of disability."  42 U.S.C. § 12112(a).  Thus, to establish a prima facie case of discrimination under the ADA, a plaintiff must show that (1) she is disabled as defined under the ADA; (2) she is qualified, with or without reasonable accommodation by the employer, to perform the essential functions of the job; and (3) she was discriminated

---

[4] In her response, Brigham characterizes Frontier's arguments regarding her retaliation claim as follows: "Frontier's argument in this regard is limited solely to: 'Plaintiff has not and cannot show any causal connection between Plaintiff's requests for accommodation and the termination of her employment.' . . .  But Defendant's facts cited in support of this argument are incorrect and incomplete, and Plaintiff has produced adequate evidence showing causation. *See supra* p. 35-36 (detailing facts in support of causation and Plaintiff's request for intermittent leave)."  (ECF No. 44 at 40.)  Thus, Brigham does not make a separate argument in response to Frontier's arguments concerning her retaliation claim and refers to her prior arguments in connection with her discrimination claim.  Because Brigham herself states that the same arguments apply to her discrimination and retaliation claims, the Court addresses these claims together in this section.

against because of her disability.  *See Adair v. City of Muskogee*, 823 F.3d 1297, 1304 (10th Cir. 2016) (citing *Hawkins v. Schwan's Home Serv., Inc.*, 778 F.3d 877, 883 (10th Cir. 2015)).

ADA discrimination claims generally follow the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

> Under that analysis, a plaintiff carries the burden of raising a genuine issue of material fact on each element of his prima facie case.  If plaintiff establishes a prima facie case, the burden shifts to the defendant to offer a legitimate nondiscriminatory reason for its employment decision.  If defendant articulates a nondiscriminatory reason, the burden shifts back to plaintiff to show a genuine issue of material fact as to whether the defendant's reason for the adverse employment action is pretextual.

*Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1189 (10th Cir. 2003) (citations omitted).

In general, the ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  *Punt v. Kelly Servs.*, 862 F.3d 1040, 1047–48 (10th Cir. 2017) (quoting 42 U.S.C. § 12112(a)).  "Because the statute only prohibits discrimination 'on the basis of disability,' there must be a nexus between the disability and the adverse employment action."  *Id.* at 1048.  The Tenth Circuit has stated that "it is not enough that an adverse employment action is suffered by an individual with a disability; rather, the disabled individual must show that the adverse action was 'on the basis of' the disability."  *Id.*

In most types of ADA cases, this is done by proving the employer acted with discriminatory intent.  *Id.*  Such discriminatory intent can be shown either through direct evidence—that is, "evidence, which if believed, proves the existence of a fact in issue

without inference or presumption"—or through circumstantial evidence, which is evaluated under the *McDonnell Douglas* burden-shifting framework to determine whether a reasonable factfinder could infer that the employer's motivation was discriminatory and that any proffered nondiscriminatory business reason for the decision was merely pretextual.  *Id.*

To establish a prima facie case of ADA retaliation, a plaintiff must prove that (1) she "engaged in a protected activity"; (2) she was "subjected to [an] adverse employment action subsequent to or contemporaneous with the protected activity"; and (3) there was "a causal connection between the protected activity and the adverse employment action."  *Foster v. Mountain Coal Co., LLC*, 830 F.3d 1178, 1186–87 (10th Cir. 2016).

Assuming *arguendo* that Brigham has met the first two elements of her prima facie burden for discrimination and retaliation, for the following reasons, the Court finds that she has failed to satisfy the third element of both claims, which requires her to demonstrate that Frontier terminated her employment on the basis of her disability (for discrimination) or that there is a causal connection between her requests for accommodations and her termination (for retaliation).

"[A] termination for misconduct is not converted into a termination because of a disability just because the instigating misconduct somehow relates to a disability." *Curry v. MillerCoors, Inc.*, 2013 WL 4494307, at *3 (D. Colo. Aug. 21, 2013).  However, by arguing that her termination was because of her alcoholism and requests for accommodations in connection with that condition, and not because she exceeded the allowed number of Occurrences in a 12-month period under the Dependability Policy,

Brigham is attempting to do just that—convert her termination for the violating the Dependability Policy into termination because of her disability.

Here, Frontier has demonstrated that it terminated Brigham's employment because she violated the Dependability Policy.  Brigham failed to report for the four-day trip and admittedly failed to notify the LOA Department that she was choosing to use IFMLA leave.  (ECF No. 38-1 ¶¶ 60–61.)  Nevertheless, Brigham exhausted her available IFMLA leave by October 19, 2015 (ECF No. 38-1 ¶ 62), and the LOA Department denied her request to use IFMLA leave for her lack of timely notice (ECF No. 38-1 ¶¶ 63–64; ECF No. 38-18; ECF No. 38-24).  The language in Brigham's e-mail informing the LOA Department that she had missed the four-day trip, in which she asked the LOA Department whether "this will have to be coded as sick," demonstrates that Brigham herself was aware she did not have enough IFMLA leave to cover this absence.  (ECF No. 38-17.)

An Investigatory Meeting was held on November 3, 2015 in accordance with the CBA to address Brigham's violations of the Dependability Policy.  (ECF No. 38-1 ¶ 65; ECF No. 38-19.)  On November 11, 2015, Frontier informed Brigham in a letter that it was terminating her employment effective immediately for incurring 10 Occurrences within a 12-month period in violation of the Dependability Policy, under which eight Occurrences subjected an employee to termination.  (ECF No. 38-1 ¶¶ 66–67; ECF No. 38-6; ECF No. 38-13; ECF No. 38-20.)  In his declaration, Arellano noted that in addition to Brigham's violation of the Dependability Policy, Brigham's policy violations concerning use of IFMLA leave and the CBA's requirements for "Sick Calls" contributed to her termination because "Frontier believed that [Brigham] was not a dependable or

reliable employee."  (ECF No. 38-1 ¶ 66.)

In response, Brigham argues that she has presented more than adequate evidence to meet her "not onerous" duty to show her termination was due to her disability.  (ECF No. 44 at 36.)  The Court addresses each of her arguments.

First, Brigham argues that Frontier required her to comply with her treatment plan for alcoholism then terminated her when she did so.  (*Id.*)  For the following reasons, the Court finds her argument unavailing.  The evidence shows that Frontier requires employees who self-disclose their alcoholism to comply with treatment, aftercare, or support group services recommended by their Substance Abuse Provider ("SAP"), who must be Department of Transportation certified.  (ECF No. 48 at 18; ECF No. 36-8; ECF No. 38-4 ("Frontier requires full compliance with any additional treatment or aftercare recommended by a Substance Abuse Provider").)  However, Brigham has not pointed to any evidence indicating that Marla Madrid, the Primary Therapist who signed her Treatment Plan, was her SAP.  (ECF No. 48 at 18.)  Regardless, even assuming Madrid was Brigham's SAP, the Treatment Plan does not require Brigham to avoid overnight trips with layovers which, according to Brigham, jeopardize her sobriety.  Brigham's Treatment Plan provides:

> Estimated Length of Treatment, Modality, and Frequency:
>
> 1.  Individual treatment, one to two times monthly for six months (to be evaluated at that time).
>
> 2.  Group therapy, weekly for six months (to be evaluated at that time).

(ECF No. 36-8 at 1.)  The Additional Information section of the Treatment Plan provides:

> *Rebecca* has identified triggers to avoid cravings and opportunities to consume alcohol and those are on overnight

16

> trips or anything longer than a given work day in her
> professional arena.  At this time *it would not be a good idea
> to encourage a vulnerable situation* with a work schedule
> that serves as a temptation, *if possible*.  Her treatment plan
> and progress towards goals will be reviewed every 90 days.

(*Id.* at 2 (emphasis added).)  The Additional Information section demonstrates that it is a suggestion, not a requirement, that Brigham avoid overnight trips.  Therefore, to the extent that Brigham argues that Frontier terminated her because she was complying with her Treatment Plan when she missed the four-day trip and incurred more Occurrences, her argument is without merit.

Next, Brigham argues that Frontier "did regularly grant requests for reasonable accommodation in the form [of] modified schedules or light duty, just not for Plaintiff and not for alcoholics."  (ECF No. 44 at 36.)  As an initial matter, this argument and accompanying evidence does not refute the fact that Frontier terminated Brigham because she violated the Dependability Policy, not because she is an alcoholic and not because she requested certain accommodations.  Regardless, the CBA's OJI provisions allow for light-duty assignments only for flight attendants injured on the job.  (ECF No. 38-5 at 108–09.)  According to Arellano, Frontier did not maintain open light-duty job positions for flight attendants injured on the job, nor were light duty assignments job "positions"; instead, Frontier would temporarily assign those injured on the job to perform other employees' duties.  (ECF No. 38-1 ¶ 43.)  The Tenth Circuit has found that it is "not reasonable to require an employer to create a new job for the purpose of reassigning an employee to that job."  *Duvall v. Georgia-Pac. Consumer Prod., L.P.*, 607 F.3d 1255, 1261 (10th Cir. 2010).

Frontier provides a spreadsheet which demonstrates that since 2012, with

respect to flight attendants, Frontier has never provided light duty assignments to any flight attendant (injured on the job or not) as an accommodation, nor has Frontier placed any flight attendant (injured on the job or not) into a vacant ground position as an accommodation, although the OJI program would have allowed for temporary light duty assignments if requested by flight attendants injured on the job.  (ECF No. 45 at 9 ¶ 19; ECF No. 36-11.)  Additionally, since 2012, Frontier has never transferred a flight attendant to a temporary ground assignment in the GO as an accommodation.  (*Id.*) And no flight attendants have been offered modified work schedules.  (*Id.*)  Instead, Frontier shows that only non-comparable workers in ground positions (not subject to a CBA) were offered schedule modifications.  (*Id.*; ECF No. 45-1 ¶ 16.)  To the extent Brigham disputes as much (ECF No. 47 at 4 ¶¶ 19–20), Frontier has shown that Brigham is not similarly situated to non-union employees who were offered temporary light duty assignments or modified schedules because Brigham did not have a temporary on the job injury and she was a flight attendant subject to the CBA.  (ECF No. 45-1 ¶ 16.)  Further, other than Brigham, none of the employees reflected in the spreadsheet were requesting accommodations for conditions involving alcoholism or substance abuse.  (ECF No. 45-1 ¶ 14.)  Therefore, Brigham's argument is unavailing.

Third, Brigham argues that Arellano stated that her requested accommodations would have amounted to "making exceptions" and that Frontier would not make a "separate accommodation."  (ECF No. 44 at 36.)  Again, this argument is not evidence that Brigham's disability, or her requests for accommodation, caused her termination. Moreover, for support, Brigham merely cites the transcript of her October 9, 2015 meeting.  (*Id.*)  She makes no further argument on this point.  Therefore, Brigham's

argument on this point is also without merit.

Fourth, Brigham argues that she had not "actually violated the Dependability Policy as Frontier had previously granted her at least 16 days of intermittent FMLA time per month." (ECF No. 44 at 36 (citing "Def.'s Ex. 10 to Ex. A at 4-5").) She provides no additional evidence or argument in support. She also argues that she "did request additional intermittent FMLA time during the period that Frontier failed to reasonably accommodate her and prior to her termination, but Defendant denied this request and terminated [her]." (ECF No. 44 at 35.)

The Court has reviewed what appears to be the cited exhibit.[5] As an initial matter, this document appears to be a form concerning "Certification of Health Care Provider for Employee's Serious Health Condition (Family and Medical Leave Act) Intermittent Leave of Absence." (ECF No. 38-12.) It appears as though Madrid completed this form on May 28, 2015 and stated that Brigham would require 12 days of IFMLA leave from May 1, 2015 to November 1, 2015. (*Id.* at 4.) The Court does not see a signature from a Frontier employee approving the leave or an indication that Frontier approved 16 days of IFMLA leave, as Brigham states in her response. (ECF No. 44 at 36.) Therefore, this exhibit does not demonstrate that Frontier ever previously granted Brigham 16 days of IFMLA leave.

Nonetheless, even if Frontier *had* previously granted Brigham 16 days of leave— which Brigham has not demonstrated based on evidence in the record —it would not change the fact that when she failed to report for the four-day trip on October 23, 2015,

---

[5] Brigham did not provide a citation to the entry on CM/ECF. Nevertheless, the Court believes Brigham was citing Exhibit 10 to Frontier's Motion for Summary Judgment, which is located on the docket at ECF No. 38-12.

she had already exhausted her IFMLA leave for the month.  (ECF No. 38-1 ¶ 62; ECF No. 38-13 at 77.)  In an e-mail to Arellano, Frontier's Supervisor of Disability Program Management said:

> Rebecca Brigham did request FMLA for 10/23/2015-10/26/2015 but it was not until 10/26/2015 11:37am.  She had already exhausted her IFM allowance for the month of October by the 19th so because it was late and she had exceeded her approval the dates were denied.
>
> As for the 10/30/2015 trip- again she did request the time as FMLA and it was within 24 hours but she is only approved for up to 12 days per month and those were exhausted on 10/19/2015.  The dates of 10/30-10/31/2015 were denied and the November dates of 11/1/2015 and 11/2/2015 will be coded according to the IFM approval, which I have completed.
>
> I did look at the fitness for duty that was provided for her RTW and it does not state any restrictions.  I don't see that we have received anything stating that she was not able to work overnight trips.
>
> Hope this helps.

(ECF No. 38-13 at 77.)  Thus, Brigham's argument that she had previously obtained 16 days of IFMLA leave is unsupported and unavailing.

Fifth, Brigham argues that she "was not the only alcoholic at Frontier during the relevant time period to suffer discrimination at the hands of Mr. Arellano and Ms. Leyner."  (ECF No. 44 at 36 (citing Pl.'s Mot. at 13).)  For support, she relies on the experiences of David St. Hilaire.  She quotes his declaration, which Frontier objects to on the basis that it is inadmissible at trial.  (ECF No. 45 at 11 ¶ 22.)  While this is likely the case, the Court rejects Brigham's arguments on its merits because St. Hilaire is not similarly situated to her.

"When deciding whether a plaintiff's claim survives summary judgment, the court

must determine whether plaintiff had adduced enough evidence to support a finding that the [other employee] and plaintiff were sufficiently similarly situated to support an inference of discrimination." *Fisher v. Basehor-Linwood Unified Sch. Dist. No. 458*, 460 F. Supp. 3d 1167, 1200 (D. Kan. 2020), *aff'd*, 851 F. App'x 828 (10th Cir. 2021) (internal quotation marks omitted) (quoting *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1117 (10th Cir. 2007)).  "Individuals are considered similarly-situated when they (1) have dealt with the same supervisor; (2) were subjected to the same work standards; and (3) had engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct of the employer's treatment of them for it."  *Id.* (citation omitted); *see also Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1232 (10th Cir. 2000) ("An employee is similarly situated to the plaintiff if the employee deals with the same supervisor and is subject to the same standards governing performance evaluation and discipline." (citation and internal quotation marks omitted)).  "A court should also compare the relevant employment circumstances, such as work history and company policies, applicable to the plaintiff and the intended comparable employees in determining whether they are similarly situated."  *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997) (citation omitted).

According to St. Hilaire's declaration, he was supervised by Christopher Benedict, lied to Frontier about the fact that he had received treatment for alcoholism from a treatment facility, was required by Frontier to take routine drug tests, refused a drug test in violation of Frontier policy, never requested an accommodation, and voluntarily left Frontier in April 2016, approximately five months after the termination of Brigham's employment.  (ECF No. 36-12 ¶¶ 6–7, 12, 14.)  By contrast, Brigham was not

supervised by Benedict, self-disclosed her alcoholism and treatment, did not refuse to take a drug test, requested accommodations, and was terminated involuntarily for attendance infractions. (ECF No. 45 at 11 ¶ 22; ECF No. 38-1 ¶¶ 18–19.) Therefore, the Court finds that St. Hilaire and Brigham are not similarly situated and that Brigham's argument on this issue fails as a result.

Finally, Brigham argues that she was not the only Frontier flight attendant to be denied reasonable accommodations during the relevant time period. (ECF No. 44 at 36 (citing Pl.'s Mot. at 13-14).) This argument incorporates her arguments regarding St. Hilaire, which the Court has just rejected. Brigham also points to the experiences of former Frontier flight attendant Christine Kernen.[6] (ECF No. 36 at 13–14 ¶ 23.) However, Kernen's complaints regarding Frontier's treatment of her are in connection with requests for accommodations related to pregnancy and breastfeeding,[7] not alcoholism. (ECF No. 36-13.) Kernen and Brigham are not similarly situated for a variety of other reasons, including that the accommodation Kernen claims she requested (a leave of absence) was offered to but rejected by Brigham, Kernen did not suffer from the same medical condition, Kernen did not request the same accommodations as Brigham, and Kernen was not terminated by Frontier due to attendance infractions but instead voluntarily left Frontier in July 2016. (ECF No. 45-1 ¶¶ 20–23.) Therefore, the Court finds this argument, too, is without merit.

For the reasons stated above, the Court finds that Brigham has failed to

---

[6] Frontier makes the same objections regarding Kernen's declaration regarding its inadmissibility at trial. (ECF No. 45 at 12 ¶ 23.)

[7] Frontier points out that pregnancy and breastfeeding are not disabilities under the ADA. (ECF No. 45 at 12 ¶ 23.)

demonstrate that a genuine issue of material fact exists regarding whether Frontier terminated her on the basis of her disability or her requests for accommodations. Therefore, because Brigham has failed to meet her prima facie burden in connection with her discrimination and retaliation claims, the Court will grant summary judgment in favor of Frontier on those claims.

## C.  Failure to Accommodate (Count I)

The Court next turns to Brigham's failure to accommodate claim.  Under the ADA, disability discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the [employer's business] operation[s]."  42 U.S.C. § 12112(b)(5)(A).  This claim "does not require any evidence of discriminatory intent, whether direct or circumstantial."  *Punt*, 862 F.3d at 1048.  This is because "the only reason an accommodation is required is because of the disability, and thus the failure to provide a reasonable accommodation to a qualified employee with a disability is inherently 'on the basis of [the] disability,' 42 U.S.C. § 12112(a), regardless of the employer's motivation."  *Id.*

If challenged at summary judgment, a failure to accommodate claim proceeds as follows:

> [T]he employee must make an initial showing that (1) she is disabled; (2) she is otherwise qualified; and (3) she requested a plausibly reasonable accommodation.  Once the employee produces evidence sufficient to make a facial showing on her prima facie case, the burden of production shifts to the employer to present evidence either (1) conclusively rebutting one or more elements of plaintiff's prima facie case or (2) establishing an affirmative defense, such as undue hardship or one of the other affirmative

defenses available to the employer.  If the employer does either of the above, summary judgment will be appropriate for the employer unless the employee then presents evidence establishing a genuine dispute regarding the affirmative defenses and/or rehabilitates any challenged elements of her prima face case sufficiently to establish at least a genuine dispute of material fact as to such challenged elements.

*Id.* at 1050 (internal quotation marks and citations omitted; alterations incorporated).

For the following reasons, the Court finds that Brigham has failed to meet the third element of her prima facie burden to demonstrate that she requested a plausibly reasonable accommodation.

First, Brigham requested an exemption from flights with layovers or overnight trips, or that she be allowed to build her own schedule from Open Time, as accommodations.  (ECF No. 36 at 25.)  However, if Frontier had granted the accommodations Brigham sought, it would have required excusing Brigham from the mandatory, seniority-based bidding process set forth in the CBA.  (ECF No. 38-1 ¶ 35.) Arellano told Brigham as much at the June 4, 2015 meeting.  (ECF No. 38-1 ¶ 29.) Additionally, Prince confirmed that the union would not have authorized Frontier to grant these accommodations because it would have violated the CBA, testifying:

Q. Okay. And did you understand that Ms. Brigham wanted to just have her overnight trips removed?
A. Yes.
Q. And did you understand that Ms. Brigham just wanted to build her own schedule from scratch out of open time or the TradeBoard?
A. Yes.
Q. Okay. And the union would not allow her to build her schedule from scratch on open time, because that would have violated the Collective Bargaining Agreement, correct?
A. Correct.
Q. Okay. So it was not the union's intention to grant this accommodation, correct?
A. Correct.

> Q. Okay. And the idea of "just remove me from the overnights," that would have violated the seniority bidding provisions of the Collective Bargaining Agreement to just do that for her, correct?
> A. Correct.
> Q. So that's not an accommodation that the union intended to grant to her, correct?
> A. Correct.

(ECF No. 44-2 at 17.)[8]

As Frontier emphasizes, allowing Brigham to be excused from flights with layovers would have "encroach[ed] upon the vested rights of other flight attendants with more seniority than Plaintiff and violat[ed] the CBA's requirements that all active flight attendants bid for flights and accumulate a minimum of 60 credit hours, and that flight attendants never drop below 45 credit hours when making schedule adjustments using Open Time."  (ECF No. 38 at 35.)  The Tenth Circuit has stated that the ADA does not require an employer to transfer an employee to a job as a reasonable accommodation if doing so would violate the seniority provisions of a collective bargaining agreement, observing that "[t]his is not required by the ADA."  *See Aldrich v. Boeing Co.*, 146 F.3d 1265, 1272 n.5 (10th Cir. 1998); *Milton v. Scrivner, Inc.*, 53 F.3d 1118, 1125 (10th Cir. 1995) (holding transfer to another job that would violate seniority rights under collective bargaining agreement unreasonable).

Further, Frontier denied Brigham's request to build her schedule from Open Time

---

[8] Brigham disputes that Prince's declaration is consistent with her deposition testimony. (ECF No. 44 at 12 ¶ 30.)  However, the above-quoted testimony demonstrates that her declaration and deposition testimony are, as Frontier argues, in fact consistent.  (ECF No. 48 at 6–7 ¶ 30.)  To the extent Brigham argues that Prince confirmed that Brigham's request to build her schedule out of Open Time would not have violated the CBA, the deposition testimony quoted above shows that is incorrect: "Q. Okay. And the union would not allow her to build her schedule from scratch on open time, because that would have violated the Collective Bargaining Agreement, correct? A. Correct."  (ECF No. 44-2 at 17.)

because it "would necessarily penalize other flight attendants, regardless of seniority, by taking away alternative and/or additional flight opportunities from other flight attendants looking to modify their schedules."  (ECF No. 38-1 ¶ 39.)  Arellano states that "Frontier has never excused an active flight attendant from the seniority-based bidding rules set forth in the CBA to allow that flight attendant to create their own schedule out of Open Time to avoid certain types of flights."  (ECF No. 38-1 ¶ 38.)  Brigham was on active/eligible status when she requested to be excused from bidding.  (ECF No. 38-5 at 105; ECF No. 38-22 at 2–3.)  Under the CBA, all active/eligible flight attendants (*i.e.*, all flight attendants not on a continuous leave of absence during the bid period) are required to bid.  (ECF No. 38-1; ECF No. 38-5 at 54.)  Moreover, Prince testified at her deposition that someone on IFMLA still had to bid.  (ECF No. 38-22 at 3.)

Given the foregoing, even if allowing Brigham to build her schedule from Open Time would not necessarily violate the seniority rights of other employees under the CBA, her requested accommodation would still be inconsistent with the contractual rights of other workers under the CBA, which require someone in Brigham's position to engage in the bidding process.  The Tenth Circuit has cited with approval opinions from other circuit courts which conclude that the ADA does not require an employer to take actions to accommodate a plaintiff which would violate the contractual rights of other workers under a collective bargaining agreement.  *See Aldrich*, 146 F.3d at 1272 n.5 (citing *Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 810 (5th Cir. 1997) ("Following the other circuits which have considered this issue, we hold that the ADA does not require an employer to take action inconsistent with the contractual rights of other workers under a collective bargaining agreement."); *Benson v. Nw. Airlines, Inc.*, 62

F.3d 1108, 1114 (8th Cir. 1995) ("The ADA does not require that [the employer] take action inconsistent with the contractual rights of other workers under a collective bargaining agreement.")).

The Court agrees with Frontier that Brigham's request to be excused from layovers or build her schedule from Open Time is unreasonable for an additional reason.  Frontier contends that regardless of whether or not Brigham's requested accommodation violated the terms of the CBA, Frontier could not have promised Brigham that she would never end up with a layover.  (ECF No. 38 at 36.)  As Frontier describes, "inherent in *all* flights is the risk of experiencing inclement weather and/or mechanical issues, which could require a layover." (*Id.* at 21 (emphasis in original).)  Given Brigham's position that she could not work as a flight attendant on flights with layovers and maintain her sobriety, her requested accommodation would not have enabled her to perform the essential functions of her job as a flight attendant, rendering the request unreasonable.

Finally, Brigham requested that she be permitted to work at the GO to perform administrative or other light duty work until she was more secure in her sobriety.[9]  (ECF No. 36 at 25.)  The Court agrees with Frontier that granting this request "would have resulted in the same above-described issues in that it would have excused Plaintiff, an active flight attendant, from the mandatory, seniority-based bidding process set forth in the CBA." (ECF No. 38 at 36.)  Further, Arellano stated in his declaration that the CBA included a collectively-bargained for OJI provision, allowing Frontier the discretion to

---

[9] The Court has already examined arguments related to this request and incorporates that analysis herein, but will also examine the issue now in the context of Brigham's failure to accommodate claim.  *See supra*, Part III.B.

provide flight attendants injured on the job—but only flight attendants injured on the job—with temporary light duty assignments in the GO.  (ECF No. 38-1 ¶ 43; ECF No. 38-5 at 108–09.)  Importantly, he states that these assignments were "not open job positions."  (ECF No. 38-1 ¶ 43.)  Specifically, Frontier explains that it did not maintain open light-duty job positions for flight attendants injured on the job, and the light duty assignments were not job positions; rather, Frontier merely temporarily assigned those employees who were injured on the job to perform other employees' duties.  (ECF No. 45 at 34–35.)

As noted above, the Tenth Circuit does not require an employer to create positions merely to accommodate an ADA plaintiff.[10]  *See Aldrich*, 146 F.3d at 1272 n.5 (citing *White v. York Int'l Corp.*, 45 F.3d 357, 362 (10th Cir. 1995) (noting that an employer is not required to "create a new position to accommodate the disabled worker")).  Therefore, because allowing Brigham to work in the GO office temporarily would have been inconsistent with the mandatory bidding process in the CBA and also would have required Frontier to create a position for her, the Court finds that her requested accommodation is unreasonable.

Given that none of the accommodations that Brigham requested were "plausibly reasonable accommodations," the Court will grant summary judgment in favor of Frontier on Brigham's failure to accommodate claim.

### IV. CONCLUSION

For the foregoing reasons, the Court ORDERS:

---

[10] The Court notes that Frontier suggested that Brigham transfer to other vacant or soon to be vacant positions within Frontier, but she rejected those suggestions for a variety of reasons, including that she enjoyed being a flight attendant and did not want to lose her seniority.  (ECF No. 38-1 ¶¶ 52, 58.)

1.     Defendant Frontier Airlines, Inc.'s Motion for Summary Judgment (ECF No. 38) is

       GRANTED in its entirety;

2.     Plaintiff Rebecca Brigham's Motion for Partial Summary Judgment (ECF No. 36)

       is DENIED;

3.     Defendant shall have its costs reasonably incurred in this action upon

       compliance with D.C.COLO.LCivR 54.1; and

4.     The Clerk of Court shall enter judgment in favor of Defendant and against

       Plaintiff, and shall thereafter terminate the action.


       Dated this 27th day of August, 2021.

                                           BY THE COURT:



                                           _____
                                           William J. Martinez
                                           United States District Judge