FILED
United States Court of Appeals
Tenth Circuit

January 24, 2023

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

REBECCA BRIGHAM,

    Plaintiff - Appellant,

v.

FRONTIER AIRLINES, INC.,

    Defendant - Appellee.

No. 21-1335

_____

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:19-CV-03417-WJM-STV)**

_____

John R. Crone, Law Office of John R. Crone, L.L.C., Denver, Colorado, for Plaintiff-Appellant.

David Charles Gartenberg (Danielle L. Kitson and Carolyn Bailey Theis with him on the briefs), Littler Mendelson, L.L.P., Denver, Colorado, for Defendant-Appellee.

_____

Before **BACHARACH**, **MCHUGH**, and **MORITZ**, Circuit Judges.

_____

**BACHARACH**, Circuit Judge.

_____

This case involves claims brought by Rebecca Brigham, who worked as a flight attendant for Frontier Airlines. Ms. Brigham was a recovering alcoholic who wanted to avoid overnight layovers because they tempted her

to drink. To minimize overnight layovers, Ms. Brigham asked Frontier (1) to excuse her from the airline's bidding system for flight schedules or (2) to reassign her to the General Office. Frontier rejected both requests.

Unable to bypass the bidding system or move to the General Office, Ms. Brigham missed too many assigned flights and Frontier fired her. The firing led Ms. Brigham to sue under the Americans with Disabilities Act.

We address two main issues:

1. **Relief from Frontier's Bidding System.** The first issue involves Ms. Brigham's request to bypass the bidding system for flight schedules. The bidding system was required under Frontier's collective bargaining agreement with the flight attendants' union. Under the collective bargaining agreement, Frontier assigned initial schedules through a bidding system. After bidding, all active flight attendants had a limited opportunity to swap from a pool of flights that would otherwise go to flight attendants serving in reserve. Ms. Brigham asked Frontier to excuse her from the bidding system, allowing her to pick her flights from the pool without the limitations placed on swaps.

   Would this accommodation have been plausibly reasonable even though it would have violated the collective bargaining agreement and freed Ms. Brigham from limitations imposed on every other active flight attendant? We answer *no*, concluding that this accommodation would not have been plausibly reasonable.

2. **Reassignment to the General Office.** Ms. Brigham also requested temporary reassignment to the General Office. Reassignment might have been necessary if a vacancy existed. A position would be considered vacant only if it had been reasonably available to similarly situated non-disabled employees. But the General Office was available for reassignment only if an employee had been injured on the job, and Ms. Brigham hadn't suffered an injury on the job.

> Was the General Office vacant for Ms. Brigham? We answer *no* because Ms. Brigham wasn't similarly situated to the employees eligible for reassignment to the General Office.

**1.   Frontier fired Ms. Brigham after she missed too many days.**

As a Frontier flight attendant, Ms. Brigham needed to comply with a collective bargaining agreement and an attendance policy.

Under the collective bargaining agreement, each active flight attendant had to bid on flights. Once flight attendants submitted their bids, Frontier assigned flights based on seniority. After bidding closed, Frontier assigned the initial schedules and allowed flight attendants to swap for unassigned flights through a system called "Open Time."[1] After the swaps, however, each full-time flight attendant had to end up with at least 60 monthly hours.

Active flight attendants also needed to comply with Frontier's attendance policy. Under this policy, Frontier treated a sick call as an "occurrence" and a no-show as two "occurrences." Employees could be fired if they had at least eight occurrences within a twelve-month period.

Ms. Brigham accrued at least eight occurrences within a twelve-month period, and Frontier fired her. She complains that many of the occurrences resulted from her inability to bypass the bidding system or move to the General Office.

---

[1]   Flight attendants could also swap flights through a system called the "Trade Board."

3

**2. We conduct de novo review based on the summary-judgment standard.**

The district court granted summary judgment to Frontier, and we conduct de novo review based on the same standard that applied in district court. *SEC v. GenAudio Inc.*, 32 F.4th 902, 920 (10th Cir. 2022). Under this standard, the district court must view the evidence and draw all reasonable inferences favorably to Ms. Brigham. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The district court could grant summary judgment to Frontier only in the absence of a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(a).

**3. Ms. Brigham's proposed accommodations weren't plausibly reasonable.**

An employer can incur liability under the Americans with Disabilities Act for failing to accommodate an employee's disability. 42 U.S.C. § 12112(b)(5)(A). Under the Act, the employee must request a "plausibly reasonable accommodation." *Punt v. Kelly Servs.*, 862 F.3d 1040, 1050 (10th Cir. 2017).

Ms. Brigham requested accommodations, and we must consider whether a factfinder could view them as plausibly reasonable. That inquiry entails a mixed question of law and fact. *Id.* at 1050–51.

### A. Ms. Brigham's request to bypass the bidding system wasn't plausibly reasonable.

Ms. Brigham asked Frontier if she could bypass the bidding system and build her schedule from scratch through Open Time. This request wasn't plausibly reasonable because it would have

- required Frontier to violate the collective bargaining agreement and
- interfered with the rights of other employees.

*See Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 79 (1977) (concluding that "the duty to accommodate" doesn't require an employer to "take steps inconsistent with" a collective bargaining agreement); *see also Aldrich v. Boeing Co.*, 146 F.3d 1265, 1271 n.5 (10th Cir. 1998) (concluding that an employee's request for a transfer was not reasonable because "it would have violated the seniority provisions of the collective bargaining agreement," which was "not required by the [Americans with Disabilities Act]").

Though Ms. Brigham's request would have violated the collective bargaining agreement, Ms. Brigham argues that she would only be taking flights that no one else wanted.[2] She bases this argument on the availability

---

[2] Ms. Brigham's argument assumes that Frontier had to provide an accommodation in violation of the collective bargaining agreement in the absence of prejudice to an employee with greater seniority. The Sixth Circuit rejected a similar argument when violation of the collective bargaining agreement would have affected only a more junior employee. *Virts v. Consol. Freightways Corp. of Del.*, 285 F.3d 508, 518–19 (6th Cir.

of unbid flights in Open Time. Those unbid flights opened up only after active flight attendants had obtained their initial schedules through the bidding system. After bidding closed, flight attendants could adjust their schedules by swapping for other flights available in Open Time.

Given the opportunity to swap through Open Time, the union representative urged Frontier to accommodate Ms. Brigham's request through the scheduling system mandated in the collective bargaining agreement. But the union representative opposed any violation of the collective bargaining agreement itself.[3]

---

2002). We need not address Ms. Brigham's assumption because her desired accommodation would disrupt the seniority-based scheduling system created by the collective bargaining agreement.

[3]   The union representative expressed this opposition in her declaration. Ms. Brigham argues that the declaration conflicted with the union representative's deposition testimony, but we see no conflict. In her declaration, the union representative stated that the union had asked for an accommodation "within the seniority provision" in the collective bargaining agreement, allowing Ms. Brigham "to bid for shifts within her existing seniority to avoid layovers as much as possible" and trade, swap, or drop "shifts in compliance with the collective bargaining agreement." Appellant's App'x vol. 5, at 1220. In her deposition, the union representative testified that she'd never intended an accommodation that would excuse Ms. Brigham from the bidding system:

> Q.   Okay. And you say here that you proposed that you work within that Collective Bargaining Agreement; is that correct?
>
> A.   Correct.
>
> Q.   Did you ever intend that any accommodation for Rebecca Brigham would violate the Collective Bargaining Agreement?

The union representative appeared to propose the same thing that Frontier was already providing: Ms. Brigham could bid on flights, receive an initial schedule, and swap flights through Open Time. But Ms. Brigham wanted to bypass the entire bidding system.[4]

---

    A.    No.

    Q.    Did you ever intend that Ms. Brigham should be excused from the requirement that she bid like every other flight attendant?

    A.    No, I did not intend.

    Q.    Did you ever intend that she be excused from the requirement that in the bidding process she hold 45 hours just like everyone else?

    * * *

    A.    No.

    Q.    So it was your intention, on behalf of the union, that she had comply with those rules, correct?

    A.    Correct.

    Q.    Okay. And it was your intention, on behalf of the union, that she not be allowed to get any benefit that someone more senior to her did not get, correct?

    A.    Correct.

Appellant's App'x vol. 5, at 1236.

[4]    Though flight attendants had to work at least 60 hours each month to keep full-time status, Ms. Brigham suggested in oral argument that she might benefit from a chance to dip below the minimum. But she had testified that she had wanted to stay full-time, and her appellate briefs hadn't suggested a desire to become part-time. So we decline to address Ms. Brigham's new suggestion at oral argument.

Frontier argues that if Ms. Brigham were to bypass the bidding system, she'd be taking options from flight attendants with greater seniority. Ms. Brigham responds that she'd be taking only the options that no one had picked during the bidding process. But this response suggests that Ms. Brigham could already select those flights in the bidding process. Given the alleged availability of these flights under the status quo, Ms. Brigham couldn't explain at oral argument how her requested accommodation would provide a benefit over the status quo. *See Burch v. Coca-Cola Co.*, 119 F.3d 305, 314 (5th Cir. 1997) ("In all cases a reasonable accommodation will involve a change in the status quo, for it is the status quo that presents the very obstacle that [the Americans with Disability Act's] reasonable recommendation provision attempts to address.").

In fact, exemption from the bidding process would have benefited Ms. Brigham by freeing her from Frontier's limitations on the use of Open Time. For example, Frontier pointed out at oral argument that every full-time flight attendant had to bid at least 60 hours and keep at least 45 hours during the Open Time period. So Ms. Brigham's participation in the bidding system limited her ability to swap flights. An exemption from the bidding process would free Ms. Brigham from these limitations and allow her to grab 60 hours of flights out of Open Time. This expansion of

Ms. Brigham's options could have diminished the options available to other flight attendants.

Exemption from the bidding process would also have freed Ms. Brigham from Frontier's limitations on the swaps themselves. These limitations didn't exist when Frontier had enough flight attendants available on reserve. When Frontier had enough reserve flight attendants, anyone could trade an assigned multi-day trip for multiple one-day trips posted in Open Time. But when there weren't enough reserve flight attendants, Frontier limited swaps so that flight attendants could only swap for trips of the same duration. For instance, a flight attendant could swap a three-day trip only for another trip that lasted three days; the flight attendant couldn't replace a three-day trip with three single-day trips.

This restriction existed throughout the pertinent time-period because Frontier didn't have enough flight attendants on reserve. This restriction prevented Ms. Brigham and many other active flight attendants from trading in Open Time for single-day trips.

Ms. Brigham's requested accommodation would have freed her from the restriction on swaps that applied to every other active flight attendant. Frontier did not need to give Ms. Brigham this singular advantage over every other active flight attendant.

Ms. Brigham argues that even though the accommodation would have violated the collective bargaining agreement, she would not be taking

9

flights away from more senior flight attendants. But this argument is unsupported, for Ms. Brigham acknowledged in her testimony that the senior flight attendants would usually win the bids for single-day trips.

Granted, seniority didn't entitle anyone to the flights in Open Time because they were first-come, first-serve. But when Frontier was understaffed, as it was during the relevant time-period, seniority provided flight attendants with greater flexibility in swapping for flights posted in Open Time. Because bids for the single-day trips usually went to the senior flight attendants, they were usually the only individuals who could swap in Open Time for other single-day trips. If Ms. Brigham could build her schedule from scratch in Open Time, she could have taken those flights and limited the options for more senior flight attendants.

Ms. Brigham points out that senior flight attendants had no contractual right to the options available in Open Time. But the bidding system itself rewarded flight attendants with greater seniority. So the most senior flight attendants could reasonably expect the greatest flexibility for swaps.

By freeing Ms. Brigham from the limitations on swaps, her requested accommodation would have disrupted the legitimate expectations of other employees relying on the collective bargaining agreement. *See Boersig v. Union Elec. Co.*, 219 F.3d 816, 822 (8th Cir. 2000) (classifying an accommodation as unreasonable because it would "disrupt a carefully

negotiated agreement between union and employer at the expense of other union employees who hold legitimate expectations . . . based on the governing [collective bargaining agreement]"); *see also Trans World, Inc. v. Hardison*, 423 U.S. 63, 78, 81 (1977) (treating a requested scheduling modification as unreasonable in part because it would have interfered with a system that gave a preference to senior employees for requested days off). It would be unreasonable to require Frontier to give Ms. Brigham greater flexibility for swaps at the expense of flight attendants with greater seniority.[5] *See Cook v. Chrysler Corp.*, 981 F.2d 336, 337–39 (8th Cir. 1992) (concluding that an employer was not required to accommodate an employee's schedule by freeing the employee from a seniority-based shift-bidding system combined with a first-come-first-serve procedure for requesting days off).

    Ms. Brigham points out that some flight attendants could already bypass the bidding system. But those flight attendants were inactive during

---

[5]     It might be different if Frontier hadn't consistently and uniformly required every active flight attendant to participate in the bidding system. *See US Airways, Inc. v. Barnett*, 535 U.S. 391, 405 (2002) (stating that a "[p]laintiff might show that the system already contains exceptions such that, in the circumstances, one further exception is unlikely to matter"). But Ms. Brigham doesn't question the consistency or uniformity of Frontier's adherence to the bidding system.

the bidding.[6] Their inactive status triggered a separate provision of the collective bargaining agreement, which allowed flight attendants returning from inactive status to build their schedules out of Open Time. That provision didn't apply to Ms. Brigham because her status was active—not inactive.

\* \* \*

Though Ms. Brigham was entitled to an accommodation if it was plausibly reasonable, Frontier didn't need to violate the collective bargaining agreement by allowing Ms. Brigham to take options away from flight attendants with greater seniority. So Ms. Brigham's request to bypass the bidding system was not plausibly reasonable.

### B. Temporary reassignment to the General Office was not plausibly reasonable because no vacancy existed for similarly situated employees.

Ms. Brigham requested not only a chance to avoid the bidding system but also a temporary assignment in the General Office. Under the collective bargaining agreement, Frontier allowed flight attendants with on-the-job injuries to perform light-duty work in the General Office.

Frontier may have needed to reassign Ms. Brigham if a vacancy existed in the General Office. *See Smith v. Midland Brake, Inc.*, 180 F.3d

---

[6] The collective bargaining agreement defined "inactive" flight attendants as those who were on continuous, approved leave during a monthly bidding period.

1154, 1170–71 (10th Cir. 1999) (en banc) (discussing the scope of the reassignment duty); *see also* 42 U.S.C. § 12111(9)(B) (defining "reasonable accommodation" in the Americans with Disabilities Act to include "reassignment to a vacant position"). Without a vacancy, Frontier wouldn't need to create a new position for Ms. Brigham. *See Duvall v. Georgia-Pac. Consumer Prods., L.P.*, 607 F.3d 1255, 1261–63 (10th Cir. 2010).

The parties disagree on whether a vacancy existed in the General Office. We've held that "a position is 'vacant' with respect to a disabled employee for the purposes of the [Americans with Disabilities Act] if it would be available for a similarly-situated non-disabled employee to apply for and obtain." *Id.* at 1262; *see Koessel v. Sublett Cnty. Sheriff's Dep't*, 717 F.3d 736, 745 (10th Cir. 2013) ("A position is vacant when a similarly situated, non-disabled employee would be able to apply for it.").

Under this definition, Frontier had no vacancy in the General Office. A position in the General Office was available only for employees injured on-the-job. Ms. Brigham had no on-the-job injury, so she wasn't similarly situated to the flight attendants eligible for reassignment to the General Office.

A similar situation arose in *Duvall v. Georgia-Pacific Consumer Products, L.P.*, 607 F.3d 1255 (10th Cir. 2010). There the plaintiff worked at a paper mill and requested reassignment because he had a preexisting

condition that worsened with exposure to paper dust. *Id.* at 1257–58. The plaintiff asked to work in another area that had less paper dust. *Id.* at 1257. But in that area, the paper mill used only temporary workers. *Id.* at 1264. So the paper mill declined to reassign the plaintiff, and we rejected liability based on the absence of a vacancy in the preferred area. *Id.* at 1264. Though work there was available to temporary workers, no jobs existed there for permanent employees (like the plaintiff). So the paper mill had no vacancy in the plaintiff's preferred area. *Id.*[7]

The same thing took place here. Frontier gave injured employees a chance to work in the General Office. But Frontier had no vacancy in the General Office for uninjured flight attendants like Ms. Brigham, just as the *Duvall* paper mill had no vacancy in the preferred area for permanent employees.

---

[7] Ms. Brigham points to the Equal Employment Opportunity Commission's guidance, arguing that it requires an employer to consider reassigning disabled employees lacking on-the-job injuries to light-duty positions typically reserved for employees with occupational injuries. EEOC Enforcement Guidance: Workers' Compensation and the ADA ¶ 28, available at https://www.eeoc.gov/laws/guidance/enforcement-guidance-workers-compensation-and-ada). Typically, we might consider this guidance based on the EEOC's experience and informed judgment. *Richardson v. Chi. Transit Auth.*, 926 F.3d 881, 889 (7th Cir. 2019). But the EEOC's interpretive guidance "does not carry the force of law and is not entitled to any special deference." *Pack v. Kmart Corp.*, 166 F.3d 1300, 1305 n.5 (10th Cir. 1999). Despite the EEOC's interpretive guidance, we must follow our precedent in *Duvall*.

### 4. Failure to engage in the interactive process is not independently actionable.

When an employee requests an accommodation for a qualifying disability, the Americans with Disabilities Act requires employers to participate in an "interactive process" with the employee to determine a mutually suitable accommodation. *Aubrey v. Koppes*, 975 F.3d 995, 1007 (10th Cir. 2020). Ms. Brigham claims that Frontier violated the Act by failing to engage in an interactive process.

But the failure to engage in the interactive process is not independently actionable under the Act. *See Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1207 n.29 (10th Cir. 2018) ("[O]ur case law is clear that an employee cannot maintain a failure to accommodate claim based solely on an employee's failure to engage in the interactive process."); *accord McBride v. BIC Consumer Prods. Mfg. Co., Inc.*, 583 F.3d 92, 101 (2d Cir. 2009) ("[F]ailure to engage in an interactive process does not form the basis of an [Americans with Disabilities Act] claim . . . ."); *Fjellestad v. Pizza Hut of Am., Inc.*, 188 F.3d 944, 952 (8th Cir. 1999) ("[T]here is no per se liability under the [Americans with Disabilities Act] if an employer fails to engage in an interactive process . . . ."). So Frontier can't incur liability solely for a failure to engage in the interactive process.

**5. Ms. Brigham's claims of retaliation and discrimination fail as a matter of law.**

The Act also prohibits both discrimination against disabled employees and retaliation for opposing discrimination. 42 U.S.C. §§ 12112(a) (discrimination), 12203(a) (retaliation); *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cir. 1999). Ms. Brigham asserts both kinds of claims.

For both claims, Ms. Brigham's prima facie case required a threshold showing of causation. On the discrimination claim, she needed to show discrimination "because of her disability." *Aubrey v. Koppes*, 975 F.3d 995, 1014 (10th Cir. 2020). And on the retaliation claim, she needed to show a causal link between the firing and her engagement in a protected activity. *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cir. 1999).

Both claims turn on the reason for her firing. Frontier attributed the firing to Ms. Brigham's absences. In our view, her failure to provide advance notice prevented a genuine dispute of material fact on causation.

In the briefing on summary judgment, Ms. Brigham admitted

- that during the pertinent time-period, Frontier's policy allowed eight "occurrences" within a twelve-month period and
- that she had more than eight "occurrences" within the preceding twelve months.

16

Appellant's App'x vol. 2, at 467 ¶ 65; Appellant's App'x vol. 5, at 1200 ¶ 65. She argues that she missed her assigned flights only because she needed to avoid overnight layovers. But she still accrued those absences.

Ms. Brigham also argues that she qualified for monthly intermittent leave under the Family and Medical Leave Act. But for this form of leave, Frontier required advance notice.

When Ms. Brigham had otherwise used up her eight "occurrences" within a twelve-month period, she requested four more days of intermittent leave. But she didn't ask for leave until the second day of a four-day trip, and she had already missed the first day of the trip. She explained that she'd forgotten to request the leave earlier. Whatever her reason, though, Frontier denied the request because she hadn't asked in advance. And Ms. Brigham doesn't question Frontier's right to deny that request. *See* 29 C.F.R. § 825.303(c) ("When the need for leave is not foreseeable, an employee must comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances.").

Given the undisputed evidence, Ms. Brigham incurred too many occurrences, which subjected her to firing. And she lacks any evidence that Frontier had used these occurrences as a pretext to discriminate or retaliate.

17

**6.    Frontier has a right to seal the supplemental appendix.**

Frontier has moved to seal the supplemental appendix, which contains a list of accommodations requested by current and former employees.

The common law provides that judicial documents are presumptively available to the public, but these documents may be sealed "if the right to access is outweighed by the interests favoring nondisclosure."[8] *United States v. McVeigh*, 119 F.3d 806, 811 (10th Cir. 1997). The party seeking nondisclosure faces a "'heavy'" burden; "sealing is appropriate only when the interest in confidentiality is 'real and substantial.'" *McWilliams v. DiNapoli*, 40 F.4th 1118, 1130–31 (10th Cir. 2022) (quoting *Helm v. Kansas*, 656 F.3d 1277, 1292 (10th Cir. 2011)). In our view, Frontier has met this burden.[9]

A party seeking to seal a judicial document must (1) explain why the confidential information cannot reasonably be redacted and (2) articulate a

---

[8]   The parties haven't briefed the existence of a constitutional right to access documents in the supplemental appendix.

[9]   In district court, Ms. Brigham filed the list under seal. But she can still object here to the sealing. *McWilliams v. DiNapoli*, 40 F.4th 1118, 1131 (10th Cir. 2022). After all, the right to access judicial documents belongs to the public rather than the parties. *Id.*; *accord Rudd Equip. Co. v. John Deere Const. & Forestry Co.*, 834 F.3d 589, 595 (6th Cir. 2016) (concluding that a party could not waive the public's common law right to access court filings).

substantial interest that justifies depriving the public of access. 10th Cir. R. 25.6. The list in the supplemental index contains confidential information about employees' names, medical diagnoses, discipline records, retirement plans, and severance payouts. Given the nature of this information, the privacy interests outweigh the public's right to access and redactions would largely nullify the value of the list.

Because Frontier has satisfied its burden, we grant the motion to seal.

**7.   Conclusion**

We conclude that the district court correctly granted summary judgment to Frontier, and we grant Frontier's motion to seal the supplemental appendix.